**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| PIPELINE FOODS, LLC, *et al.*[1] ) | |
| ) | Case No. 21-11002 (KBO) |
| Debtors. ) | |
| ) | (Jointly Administered) |
| ) | |
| _____ ) | |

**EMERGENCY MOTION OF ECOPURE SPECIALTIES LIMITED
FOR RELIEF FROM THE AUTOMATIC STAY**

Ecopure Specialties Limited ("Ecopure"), by and through undersigned counsel, hereby moves the Court (the "Motion"), pursuant to section 362(d)(1) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order, substantially in the form attached hereto as **Exhibit A**, granting Ecopure relief from the automatic stay in order to terminate certain contracts with Debtor Pipeline Foods, LLC ("Pipeline") and directing Pipeline to assist in transferring certain corresponding organic certifications to Ecopure. In support of the relief requested herein, Ecopure respectfully shows the Court as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* of the United States District Court for the District

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Pipeline Foods, LLC (5070); Pipeline Holdings, LLC (5754); Pipeline Foods Real Estate Holding Company, LLC (7057); Pipeline Foods, ULC (3762); Pipeline Foods Southern Cone S.R.L. (5978); and Pipeline Foods II, LLC (9653). The Debtors' mailing address is 6499 University Avenue NE, Suite 200, Fridley, MN 55432.

{05620216.DOCX.}   1

of Delaware dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The legal and statutory bases for the relief requested herein are section 362(d)(1) of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-1.

## BACKGROUND

### A. The Bankruptcy

4. On or after July 8, 2021 (the "Petition Date"), each of the Debtors in the above-captioned jointly administered cases (the "Chapter 11 Case") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  As of the date of this Motion, no committee, examiner or trustee has been appointed in the case.

### B. Overview of Business Relationship

5. Ecopure is a Delhi, India based processor and distributor of organic products, including soybeans, soya meal, and rice, among other products.  Debtor Pipeline offers supply chain solutions for organic product ingredients, and contracted with Ecopure pre-petition to purchase organic soybean and rice products, which Ecopure ships from India.

6. Each shipment of organic products to Pipeline is pursuant to a separate purchase contract (each, a "Purchase Contract," and together, the "Purchase Contracts").  The Purchase Contracts have Cash Against Documents terms, meaning that, upon arrival of each shipment at the relevant port, Pipeline is required to pay, in cash, for the shipment of products in order to receive the relevant bill of lading, and thus, for title to transfer.  Once Pipeline has the bill of lading for a particular shipment, it can retrieve the products from the carrier.  Accordingly, until Pipeline remits

payment in cash for the relevant shipment, Ecopure is not required to release documents of title, or, correspondingly, the products.

7.      Each shipment pursuant to the Purchase Contracts consists of containers with metric tons of organic products. Containers that are not timely retrieved from the port are subject to demurrage charges as follows:

| Number of Days | Cost per Container per Day |
| --- | --- |
| 0-3 | Free |
| 3-8 | $130 |
| 8 or more | $180 |

8.      On the Petition Date, Ecopure and Pipeline had several active Purchase Contracts. True and accurate copies of the active Purchase Contracts are attached hereto at **Exhibit B**.

9.      Because each Purchase Contract carries such a large volume of organic products, shipments frequently occur at varying intervals. As of the Petition Date, the status of shipments pursuant to the Purchase Contracts varied between being delivered, paid and released, unpaid and in transit, and not yet shipped.

10.     As of the Petition Date, roughly 79 containers had arrived at the relevant port, and had been paid for by Pipeline, but had not been retrieved (the "Paid Products"). As of July 17, 2021, 52 containers, valued at $1,327,997, had arrived at the relevant port, but had not been paid for by Pipeline (the "Arrived Unpaid Products"). Certain other containers (91 in number) were in transit (the "Products in Transit") and will continue to arrive at the relevant ports, and additional organic products will soon be shipped.

11. Substantial amounts of demurrage charges are continuing to accrue for both the Arrived Unpaid Products and the Paid Products. Together, the Paid Products and the Arrived Unpaid Products are incurring *daily* demurrage charges of *$23,580*. As the Products in Transit arrive, they too will begin incurring demurrage charges. Accordingly, the demurrage charges are certain to increase exponentially over the upcoming weeks, to Ecopure's detriment.

12. Additionally, the price of the organic products fluctuates frequently, such that the potential for resale changes on a daily basis. Ecopure's ability to recoup its damages thus necessitates that it be able to act swiftly to execute resales.

13. Ecopure has been advised by its logistics providers and regulatory advisors that Pipeline's assistance is required to transfer bills of lading, organic certifications, and other documentation in the event of termination of the Purchase Contracts.

14. On July 14, 2021, the Court held a First Day Hearing on emergency requests for relief in the Chapter 11 Case, and on the same date, entered the *Interim Order (I) Authorizing the Debtors to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363; (II) Granting Adequate Protection to the Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 105(a), 361, 362, 363, 503 and 507; (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b); and (IV) Granting Related Relief* [D.I. 47] (the "Interim Cash Collateral Order").

15. The Budget attached to the Interim Cash Collateral Order (the "Interim Budget") includes *no* payments to trade vendors for any additional purchases. Accordingly, Pipeline is not authorized to pay Ecopure for the Arrived Unpaid Products, the Products in Transit, the demurrage charges, or for organic products that are pending shipment (collectively, the "Outstanding Amounts"). In fact, during the First Day Hearing, the Debtors' counsel stated that the Debtors

will not be purchasing any new inventory because they "don't want to incur obligations that we don't have the ability to pay for." Tr. First Day Hrg. at 51.

16. As a result of the foregoing, Pipeline anticipatorily breached the Purchase Contracts. If it were not for the Chapter 11 Case, Ecopure would be entitled to terminate the Purchase Contracts and exercise its rights and remedies under the Uniform Commercial Code, including its ability to cover its damages by reselling the Arrived Unpaid Products, the Products in Transit, and the organic products that are pending shipment.[2]

17. Additionally, Ecopure must be able to expeditiously resell in order to stop the demurrage charges from exponentially compounding and avoid further losses in resale. As discussed above, as the Products in Transit continue to arrive at the relevant ports, and as additional organic products are shipped, demurrage charges will rapidly escalate.

## SUMMARY OF REQUESTED RELIEF

18. Ecopure seeks relief from the automatic stay for cause in order to immediately terminate the Purchase Contracts as a result of Pipeline's anticipatory breaches and inability to pay. Ecopure needs this relief in order to resell the Arrived Unpaid Products, the Products in Transit, and the organic products that are pending shipment. It must act swiftly to do so in order to minimize its losses and halt the accrual of crippling demurrage charges, which will steadily increase as the Products in Transit continue to arrive at the ports. Ecopure further requests that any order granting the requested relief authorize and direct Pipeline to assist in transferring the

---

[2] Under rules promulgated by the Grain and Feed Trade Association ("GAFTA"), Ecopure has the right to terminate the Purchase Contracts. Nothing in this Motion is intended to waive, and Ecopure expressly reserves, any argument that the Purchase Contracts are forward contracts for purposes of sections 362(b)(6) and 556 of the Bankruptcy Code. Ecopure expressly reserves any and all rights that it may have under sections 362(b)(6) and 556 of the Bankruptcy Code.

relevant bills of lading, organic certifications, and other documents related to the Purchase Contracts to Ecopure.

19.     Additionally, because the Debtors have not included any line item in the Interim Budget for paying trade vendors, such as Ecopure, Ecopure respectfully submits that lifting the automatic stay is the only possible remedy to avoid substantial damages and afford it adequate protection.

## ARGUMENT

20.     Section 362(d)(1) provides, in pertinent part, that the Court "shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay . . . for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1).

### A.    Cause Exists to Lift the Automatic Stay

21.     The Bankruptcy Code does not define what constitutes "cause" to lift the automatic stay. The Third Circuit has instructed that courts should consider "the totality of the circumstances in each particular case" to determine whether cause for stay relief exists. *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997); *see also F-Squared Inv. Mgmt., LLC*, 546 B.R. 538, 548 (Bankr. D. Del. 2016) ("'Cause' is not defined in the Bankruptcy Code; it is a flexible concept, determined on a case-by-case basis."). To establish cause, the party seeking relief from the stay must show that "the balance of hardships from not obtaining relief tips significantly in [its] favor." *Atl. Marine, Inc. v. Am. Classic Voyages, Co. (In re Am. Classic Voyages, Co.)*, 298 B.R. 222, 225 (D. Del. 2003) (quoting *In re FRG*, 115 B.R. 72, 74 (E.D. Pa. 1990)). Further, it "is a long-standing rule" that cause may arise from a debtor's "failure to make payments on property post-petition." *In re Independent Mgmt. Assocs., Inc.*, 108 B.R. 456, 464 (Bankr. D.N.J. 1989).

22. Cause exists to lift the automatic stay here, because Pipeline has anticipatorily repudiated the Purchase Contracts by acknowledging that it will not perform its obligations under the Purchase Contracts. "The law generally has acknowledged for more than one hundred years that an unequivocal statement by a promisor that he will not perform his promise gives the injured party an immediate claim to damages for total breach, in addition to discharging the remaining duties of performance." *James Cable, LLC v. Millennium Digital Media Sys., L.L.C. (In re Broadstripe, LLC)*, 435 B.R. 245, 261 (Bankr. D. Del. 2010) (quoting *Manley v. Assocs. in Obstetrics & Gynecology, P.A.*, C.A. No. 00c-06-049, 2001 WL 946489, at *6 (Del. Super. Ct. July 27, 2001)).

23. Pipeline has expressed publicly (pursuant to the Interim Budget) that it has no ability or intention of paying for such products. Pipeline also has no authority to pay Ecopure for the products under the Interim Cash Collateral Order. Accordingly, lifting the automatic stay to allow Ecopure to terminate the Purchase Contracts and resell the products will cause no harm or detriment to Pipeline, the other Debtors, or their respective estates. To the contrary, if relief from the automatic stay is denied, Ecopure will suffer significant losses.

24. If Ecopure is denied relief from the automatic stay, it will not be able to resell the Arrived Unpaid Products, the Products in Transit, or the organic products that are pending shipment to Pipeline. Ecopure will be forced to continue shipping products to Pipeline, despite Pipeline's expressed intention not to pay for such products. Moreover, the products will be sitting in storage at the relevant ports, rapidly racking up substantial amounts of demurrage charges that Ecopure will be forced to pay.

25. Ecopure's damages can be greatly offset if it is allowed relief from the automatic stay to resell such products. It is critical that Ecopure be permitted to act expeditiously to resell the products, given the frequent price fluctuations and the ever-accruing demurrage charges.

26. Finally, Ecopure's request for stay relief does not contradict the policies underlying the automatic stay. The automatic stay is "designed to relieve the debtor 'of the financial pressures that drove him into bankruptcy,' to protect the bankruptcy estate from being whittled away by creditors' lawsuits, and to implement a system where all creditors will be treated equally." *In re Continental Airlines, Inc.*, 152 B.R. 420, 426 (D. Del. 1993) (internal citations omitted). Ecopure "has not filed a suit against the bankrupt estate . . . [and] is not attempting to obtain payment from [Pipeline] to the detriment of other creditors." *Id.* Rather, Ecopure simply seeks to protect its rights in property that it owns and minimize its losses, which will ultimately benefit the Debtors' estates and other creditors by reducing its claim against Pipeline.

**B.    Ecopure Lacks Adequate Protection, and Relief from Stay is the Only Means to Afford it Adequate Protection**

27. Ecopure lacks adequate protection with respect to the Arrived Unpaid Products, the Products in Transit, and the organic products that are pending shipment. As discussed above, products are not released to Pipeline until Pipeline pays in cash for the relevant shipments. Yet, the Debtors have stated that they do not have ability to pay for such products. *See* Tr. First Day Hrg. at 51. Nor could Pipeline pay for such products, because it is not authorized by the Interim Cash Collateral Order or the Interim Budget. Accordingly, the products will remain stationary at the relevant ports while demurrage charges accrue. Without relief from the automatic stay, Ecopure will be unable to resell these products, despite its ownership thereof and Pipeline's stated

inability to pay for and acquire the products, and suffer substantial damages due to the steadily increasing demurrage charges.

28. In light of Pipeline's inability to pay for the Arrived Unpaid Products, the Products in Transit, and the organic products that are pending shipment, Ecopure lacks adequate protection. For the same reason, Pipeline is unable to offer adequate protection in the form of cash payments. Pipeline also has no equity in the products, which remain titled to Ecopure, and thus has no ability to offer replacement liens. The only means by which Ecopure can be protected is if the automatic stay is lifted so that it can cover its losses.

### BASIS FOR EMERGENCY CONSIDERATION AND REQUEST FOR WAIVER OF STAY UNDER BANKRUPTCY RULE 4001

29. As discussed in this Motion, Ecopure's shipments of organic products are idly sitting at various ports, where the demurrage charges are rapidly escalating. Meanwhile, Ecopure will be forced to begin preparing for upcoming shipments to Pipeline pursuant to the Purchase Contracts. At the same time, Pipeline has expressed no intention or ability of paying for and taking title to the products. In order to minimize its damages and halt the accrual of demurrage charges, Ecopure must be able to act expeditiously to resell the products. Ecopure's need for the ability to swiftly make decisions is enhanced by the frequent price fluctuations that affect organic products. Accordingly, Ecopure submits that emergency consideration of the Motion is warranted.

30. For the same reason, Ecopure requests that the Court waive the 14-day stay imposed by Bankruptcy Rule 4001(a)(3) for cause.

### CONCLUSION

31. For the reasons set forth herein, Ecopure requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting Ecopure relief from the automatic stay in order to terminate the Purchase Contracts with Pipeline and resell the Arrived Unpaid

Products, the Products in Transit, and the organic products that are pending shipment. Ecopure further requests that the Court direct Pipeline to assist in transferring the bills of lading, organic certifications, and other documentation for the products to Ecopure, and that the Court direct such other relief that it deems just and proper. Finally, Ecopure requests that the Court waive the provisions of Bankruptcy Rule 4001(a)(3), such that any order granting the relief requested herein be effective immediately.

Dated: July 21, 2021                              CONNOLLY GALLAGHER LLP

*/s/ Kelly M. Conlan*
Jeffrey C. Wisler (No. 2795)
Kelly M. Conlan (No. 4786)
1201 N. Market Street, 20th Floor
Wilmington, Delaware 19801
Telephone: (302) 757-7300
Email: jwisler@connollygallagher.com
Email: kconlan@connollygallagher.com

- and -

Brandy A. Sargent
K&L Gates LLP
One SW Columbia Street, Suite 1900
Portland, Oregon  97204
Telephone: (503) 226-5735
E-mail: brandy.sargent@klgates.com