# **EXHIBIT B**

# PURCHASE CONTRACT - F



| | | |
|---|---|---|
| **Contract No.** | : | 150110332 |
| **Contract Date** | : | 2/8/2021 |
| **Reference** | : | |
| **Our Trader** | : | CJ Eisler |
| **Your Contact** | : | Ecopure Specialities Limited |
| **Contact Phone No.** | : | |
| **Contact FAX No.** | : | |

Pipeline Foods, LLC
6499 University Avenue NE
SUITE 200
Minneapolis, MN 55432
United States
Phone:
Fax:

| **Purchased From** | Ecopure Specialities Limited |
|---|---|
| ECOPURIN | Unit No 134 First Floor Rectangle 1 |
| | Delhi, DE 110017 |
| | India |

| | | |
|---|---|---|
| **Commodity** | : | ORGSBM Soybean Meal-Organic |
| **Quantity** | : | 1,000.000 MT |

| **Pricing** | : | 1,000.000 MT | 830.0000 USD |
|---|---|---|---|

**Shipment Period** : Start: 3/1/2021, End: 4/30/2021

| **Ship Mode** | **Weight to Govern** | **Del. Basis/FOB Point** | |
|---|---|---|---|
| Container | Origin | CIF-DELIVERED | Baltimore, MD |

**Contract Notes:**
   Origin Optional
   For claims related to quality of the product, the buyer shall give written notice to seller within 7 days of delivery. A sample of the product will be sent to SGS at the expense of the buyer for grade analysis, which shall be binding upon each party.
   Contract written basis CIF Baltimore, MD. Price shall be applicable with no premium or discount to the following ports: Oakland, CA / Seattle, WA / Houston, TX / New Orleans, LA / Savannah, GA / Norfolk, VA Buyer shall name final destination port prior to shipment. Partial shipment shall be allowed. PACKING: Bulk in 20' containers, with liners QUANTITY: 1,000 MT, +/- 5%, Buyer to specify maximum container weight QUALITY: PROTEIN: 46% MINIMUM FAT: 7% MAXIMUM FIBER: 6% MAXIMUM MOISTURE: 7% MAXIMUM PROTEIN SOLUBILITY (KOH): 75% MINIMUM UREASE: 0.20 MAXIMUM COOL, SWEET, AND SOUND UPON ARRIVAL • Product shall be free from sour, musty, or other commercially objectionable foreign odors • Product shall be free from insects (live or dead) • Cargo cannot be shipped prior to approval of Buyer • Buyer shall appoint a surveyor to draw pre-sample shipments, Seller shall segregate shipment until Buyer approves the loading of the shipment • The rules of GAFTA 124 (Sampling) are hereby incorporated into this contract • The rules of GAFTA 123 (Weighing) are hereby incorporated into this contract • Seller guarantees that product shall clear US Customs. Seller agrees to reimburse Buyer for any costs associated with product being rejected by US Customs, FDA, USDA, or other government agency. REQUIRED DOCUMENTS: 1. Full set of negotiable on board Bill of Lading (Multi-modal transport B/L allowed) 2. Commercial Invoice 3. Certificate of Analysis Issued by GAFTA registered surveyor/laboratory 4. Certificate of Origin Issued by Government Authorities 5. Phytosanitary Certificate Issued by Government Authorities 6. Packing List 7. Weight certificate Issued by GAFTA registered surveyor 8. Container Cleanliness certificate Issued by GAFTA registered surveyor 9. NOP Certificate 10. Organic Transaction Certificate The terms and conditions of GAFTA 125 are hereby incorporated into this contract

**Trade Rules To Govern:**
**Payment Terms:** Cash Against Documents

SIGNATURE: Receipt of this confirmation by Buyer/Seller, without written notice to Seller/Buyer of objection or error within seven (7) days, is an acknowledgement of the acceptance of all conditions hereof.

Buyer: _/s/ CJ Eisler_

CJ Eisler

Seller: _/s/ Rohan Grover_

Name: **Rohan Grover**

# PURCHASE CONTRACT - F



| | | |
|---|---|---|
| **Contract No.** | : | 150110332 |
| **Contract Date** | : | 2/8/2021 |
| **Reference** | : | |
| **Our Trader** | : | CJ Eisler |
| **Your Contact** | : | Ecopure Specialities Limited |
| **Contact Phone No.** | : | |
| **Contact FAX No.** | : | |

Pipeline Foods, LLC
6499 University Avenue NE
SUITE 200
Minneapolis, MN 55432
United States
Phone:
Fax:

1. Buyer Sustainability Statement. The Buyer delivers long-term value to its suppliers and develops supply chain assurance and transparency for its customers as to organic, non-GMO, transitional and clean label value chains.
2. Cash Contract; Sale Confirmation. This is a cash contract for the sale of the Commodity from the Seller to the Buyer. The Contract contemplates that the parties sign this Contract. However, the absence of signatures shall not void or otherwise deem this Contract unenforceable. The delivery of this Contract by the Buyer to the Seller shall serve as a confirmation of the sale. To the extent the Seller disputes any terms or conditions of this Contract, the Seller shall immediately notify the Buyer in writing. Failure to dispute any terms or conditions of this Contract shall result in a binding agreement between the parties.
3. Delivery; Title.
    a. F.O.B. Point of Origin. The Commodity will be shipped to points designated by Buyer. Weights, grades, premiums and discounts at point of destination will apply at time of delivery, unless otherwise stated on this Contract.
    b. Excess Commodities. Buyer will set the price on any excess quantities of the Commodity, based on the delivery point, as follows: (i) delivery point owned, leased or managed by Buyer, Buyer's market price at time of delivery; and (ii) delivery point not owned, leased or managed by Buyer, Buyer's market price for F.O.B. point indicated at the time Buyer receives notice of the excess commodity. Notwithstanding above, the Buyer may reject any excess Commodities.
    c. Excess freight and other charges. Seller shall be responsible for any excess freight or other charges or penalties occasioned by erroneous billing and routing and/or any loading of cars, trucks or barges below minimum or over maximum weight. Seller shall pay all weighing and inspection fees. Seller shall also have sole liability for any federal, state or local taxes resulting from this Contract.
    d. Title. Title to, all rights of ownership in and risk of loss of the Commodity shall remain in Seller until physical delivery to Buyer's designated delivery point, at which time such rights shall pass to Buyer unless delivery is made to Buyer under a storage agreement, in which case such rights shall pass upon application of the commodity to a purchase contract with Buyer.
4. Representations, Warranties and Certifications of Seller.
    a. Compliance with Applicable Law; Federal Food, Drug and Cosmetic Act. Seller represents and warrants that the Commodity complies with all applicable federal and state laws including, but not limited to, the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 et seq., as may be amended, and the regulations promulgated under the Federal Food, Drug and Cosmetic Act, and specifically, that the Commodity has not been adulterated under any applicable laws.
    b. Non-GMO. To the extent the "Non-GMO" section is marked in the "Seller Certification" above, the Seller further represents, warrants and certifies that: (i) the Commodity contains no genetic material that has been modified through vitro recombinant deoxyribonucleic acid (DNA) techniques and for which the modification could not otherwise be obtained through conventional breeding or found in nature, and (ii) meets the requirements for non-bioengineered food under the Agricultural Marketing Act of 1946 and, specifically, Subtitle E "National Bioengineered Food Disclosure Standard", 7 U.S.C. § 1621 et seq., as may be amended, and the regulations promulgated under the Agricultural Marketing Act of 1946 (the "GMO Labeling Act"). Upon request, the Seller shall provide the Buyer a certification of compliance with the above requirements.
    c. Non-GMO and Organic. To the extent the "Non-GMO and Organic" section is marked in the "Seller Certification" above, the Seller further represents, warrants and certifies that: (i) the Commodity satisfies the Non-GMO requirements of Section 4(b) above; and (ii) the Commodity was "organically produced" for purposes of the Organic Food Production Act of 1990, 7 U.S.C. §§ 6501-6522, as may be amended, and the regulations promulgated under the Organic Food Production Act of 1990 (the "Organic Act"), including, but not limited to, that the Commodity was produced at a "certified organic farm," as defined in the Organic Act, and that the operations that have handled the Commodity prior to delivery to the Buyer are "certified organic handling operations," as defined in the Organic Act. Upon request, the Seller shall provide the Buyer a certification of compliance with the above requirements, its approved organic plan and the certification of compliance with the applicable organic certification program.
    d. Article 2 Warranties; No Disclaimers. Seller expressly warrants that the Seller shall convey good title to the Commodity free and clear of any and all security interest or other liens, except those for which the Seller has notified the Buyer in writing. The Seller does not disclaim any implied warranties under the Uniform Commercial Code including, but not limited to, the implied warranty of merchantability (UCC 2-314), the implied warranty of fitness for particular purpose (UCC 2-315), and the implied warranty from usage of trade (UCC 2-314). For purposes of this Section, the Seller is a "merchant", as defined by the Uniform Commercial Code.
5. Indemnification and Hold Harmless. Seller shall indemnify and hold Buyer harmless for any claims, demands, obligations, suits, actions or causes of action that arise from or relate to: (a) any liability or obligations contractually agreed to by the Seller in this Contract; and (b) any breach of the representations and warranties of the Seller under this Contract including, but not limited to, the representations and warranties under Sections 4(b) [Non-GMO] and 4(c) [Non-GMO and Organic] above.
6. Default; Damages.
    a. Event of Default. Failure to comply with the terms and conditions of this Contract including, but not limited to, the breach of any representation or warranty or the failure of the Seller to deliver the Commodity, shall be an event of default under this Contract. The Buyer may, at its election, require either: (a) specific performance and delivery of the Commodity by the Seller; or (b) payment for the replacement cost of the undelivered Commodity. If, in Buyer's sole discretion, Buyer has reason to feel insecure about Seller's performance under this Contract, the Seller shall provide adequate assurance of compliance to the Buyer and make any such required payments to the Buyer, or do such other things as required by the Buyer in the time and manner set forth by Buyer. The failure to provide adequate assurance acceptable to the Buyer shall be an event of default.
    b. Damages; Legal Fees and Costs. Seller's failure to perform on this Contract will result in contract cancellation charges to Seller, the total of which will be the difference between the Contract price and the replacement cost at the time of cancellation, plus a minimum cancellation charge of ten cents (10¢) per bushel. All contract pricing terms are part of the formula pricing of the cash delivery commitment. All futures exchange positions utilized by Buyer are for Buyer's hedging purposes only and not for Seller's account. Seller shall be liable for Buyer's legal fees and costs of collection.
    c. Acceptance by Buyer; No Waiver. Acceptance of any performance by Buyer, after default of this Contract by Seller, shall not waive any rights or remedies accruing to Buyer as a result of such default.
7. Arbitration. This Contract is made in accordance with the applicable grain trade rules of the National Grain and Feed Association except as modified by this Contract. Any disagreements or disputes arising under or related to this Contract shall be arbitrated through arbitration proceedings before the National Grain and Feed Association and pursuant to its arbitration rules. The decision and award determined through such arbitration shall be final and binding upon the Buyer and Seller. The parties may file the arbitration decision and award as a judgment and the decision and award may be enforced in any applicable court.
8. Miscellaneous.
    a. Force Majeure; Allocation of Deliveries. An event outside the control of the Seller shall not relieve the Seller of its obligations to perform on this Contract. In the event the Seller has contractually agreed to deliver like commodities to other buyers, the Seller agrees that it will not allocate production or deliveries among its buyers until which time the Seller has fully complied under this Contract.
    b. No Other Agreements. No other agreements between the parties. Any modifications of this Contract shall be in writing and signed by both parties.
    c. Disclosure of Risks. Seller acknowledges that Seller has entered into this Contract based upon Seller's own knowledge and judgment. Seller acknowledges that this Contract involves financial risks which Seller has independently evaluated, prior to executing this Contract, and that Buyer is not acting as a fiduciary in regard to this Contract.
    d. Assignment. The respective rights, obligations and liabilities of Seller are not assignable without the prior written Consent of Buyer. The Buyer may assign this Contract to its successors and assigns.
    e. Governing Law. This Contract shall be governed by the laws of the state of Minnesota and shall be binding on Seller's estate, executors, administrators, successors and assigns and shall inure to the benefit of Buyer, its successors and assigns.

# PURCHASE CONTRACT - F



| | | |
|---|---|---|
| **Contract No.** | : | 150110436 |
| **Contract Date** | : | 5/3/2021 |
| **Reference** | : | |
| **Our Trader** | : | CJ Eisler |
| **Your Contact** | : | Ecopure Specialities Limited |
| **Contact Phone No.** | : | |
| **Contact FAX No.** | : | |

Pipeline Foods, LLC  
6499 University Avenue NE  
SUITE 200  
Minneapolis, MN 55432  
United States  
Phone:  
Fax:

**Purchased From**      Ecopure Specialities Limited  
ECOPURIN      Unit No 134 First Floor Rectangle 1  
Delhi, DE 110017  
India

| | | |
|---|---|---|
| **Commodity** | : | ORGSBM Soybean Meal-Organic |
| **Quantity** | : | 1,000.000 MT |
| **Pricing** | : | 1,000.000 MT     1,195.0000 USD |
| **Shipment Period** | : | Start: 5/1/2021, End: 7/31/2021 |

| Ship Mode | Weight to Govern | Del. Basis/FOB Point | Title Passes |
|---|---|---|---|
| Container | Origin | FOB | Nhava Sheva, GU |

**Contract Notes:**

Origin Optional

For claims related to quality of the product, the buyer shall give written notice to seller within 7 days of delivery. A sample of the product will be sent to SGS at the expense of the buyer for grade analysis, which shall be binding upon each party.

PACKING: Bulk in 20' containers, with liners QUANTITY: 1,000 MT, +/- 5%, Buyer to specify maximum container weight QUALITY: PROTEIN: 46% MINIMUM FAT: 7% MAXIMUM FIBER: 6% MAXIMUM MOISTURE: 7% MAXIMUM PROTEIN SOLUBILITY (KOH): 75% MINIMUM UREASE: 0.20 MAXIMUM COOL, SWEET, AND SOUND UPON ARRIVAL • Product shall be free from sour, musty, or other commercially objectionable foreign odors • Product shall be free from insects (live or dead) • Cargo cannot be shipped prior to approval of Buyer • Buyer shall appoint a surveyor to draw pre-sample shipments, Seller shall segregate shipment until Buyer approves the loading of the shipment • The rules of GAFTA 124 (Sampling) are hereby incorporated into this contract • The rules of GAFTA 123 (Weighing) are hereby incorporated into this contract • Seller guarantees that product shall clear US Customs. Seller agrees to reimburse Buyer for any costs associated with product being rejected by US Customs, FDA, USDA, or other government agency. REQUIRED DOCUMENTS: 1. Full set of negotiable on board Bill of Lading (Multi-modal transport B/L allowed) 2. Commercial Invoice 3. Certificate of Analysis Issued by GAFTA registered surveyor/laboratory 4. Certificate of Origin Issued by Government Authorities 5. Phytosanitary Certificate Issued by Government Authorities 6. Packing List 7. Weight certificate Issued by GAFTA registered surveyor 8. Container Cleanliness certificate Issued by GAFTA registered surveyor 9. NOP Certificate 10. Organic Transaction Certificate The terms and conditions of GAFTA 125 are hereby incorporated into this contract

**Trade Rules To Govern:**  
**Payment Terms:**     Cash Against Documents

SIGNATURE: Receipt of this confirmation by Buyer/Seller, without written notice to Seller/Buyer of objection or error within seven (7) days, is an acknowledgement of the acceptance of all conditions hereof.

Buyer: *(signed)*          Seller: *(signed)*

CJ Eisler          Name:

# PURCHASE CONTRACT - F



| | | |
|---|---|---|
| **Contract No.** | : | 150110436 |
| **Contract Date** | : | 5/3/2021 |
| **Reference** | : | |
| **Our Trader** | : | CJ Eisler |
| **Your Contact** | : | Ecopure Specialities Limited |
| **Contact Phone No.** | : | |
| **Contact FAX No.** | : | |

Pipeline Foods, LLC
6499 University Avenue NE
SUITE 200
Minneapolis, MN 55432
United States
Phone:
Fax:

1. **Buyer Sustainability Statement.** The Buyer delivers long-term value to its suppliers and develops supply chain assurance and transparency for its customers as to organic, non-GMO, transitional and clean label value chains.
2. **Cash Contract; Sale Confirmation.** This is a cash contract for the sale of the Commodity from the Seller to the Buyer. The Contract contemplates that the parties sign this Contract. However, the absence of signatures shall not void or otherwise deem this Contract unenforceable. The delivery of this Contract by the Buyer to the Seller shall serve as a confirmation of the sale. To the extent the Seller disputes any terms or conditions of this Contract, the Seller shall immediately notify the Buyer in writing. Failure to dispute any terms or conditions of this Contract shall result in a binding agreement between the parties.
3. **Delivery; Title.**
    a. **F.O.B. Point of Origin.** The Commodity will be shipped to points designated by Buyer. Weights, grades, premiums and discounts at point of destination will apply at time of delivery, unless otherwise stated on this Contract.
    b. **Excess Commodities.** Buyer will set the price on any excess quantities of the Commodity, based on the delivery point, as follows: (i) delivery point owned, leased or managed by Buyer, Buyer's market price at time of delivery; and (ii) delivery point not owned, leased or managed by Buyer, Buyer's market price for F.O.B. point indicated at the time Buyer receives notice of the excess commodity. Notwithstanding above, the Buyer may reject any excess Commodities.
    c. **Excess freight and other charges.** Seller shall be responsible for any excess freight or other charges or penalties occasioned by erroneous billing and routing and/or any loading of cars, trucks or barges below minimum or over maximum weight. Seller shall pay all weighing and inspection fees. Seller shall also have sole liability for any federal, state or local taxes resulting from this Contract.
    d. **Title.** Title to, all rights of ownership in and risk of loss of the Commodity shall remain in Seller until physical delivery to Buyer's designated delivery point, at which time such rights shall pass to Buyer unless delivery is made to Buyer under a storage agreement, in which case such rights shall pass upon application of the commodity to a purchase contract with Buyer.
4. **Representations, Warranties and Certifications of Seller.**
    a. **Compliance with Applicable Law; Federal Food, Drug and Cosmetic Act.** Seller represents and warrants that the Commodity complies with all applicable federal and state laws including, but not limited to, the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 et seq., as may be amended, and the regulations promulgated under the Federal Food, Drug and Cosmetic Act, and specifically, that the Commodity has not been adulterated under any applicable laws.
    b. **Non-GMO.** To the extent the "Non-GMO" section is marked in the "Seller Certification" above, the Seller further represents, warrants and certifies that: (i) the Commodity contains no genetic material that has been modified through vitro recombinant deoxyribonucleic acid (DNA) techniques and for which the modification could not otherwise be obtained through conventional breeding or found in nature, and (ii) meets the requirements for non-bioengineered food under the Agricultural Marketing Act of 1946 and, specifically, Subtitle E "National Bioengineered Food Disclosure Standard", 7 U.S.C. § 1621 et seq., as may be amended, and the regulations promulgated under the Agricultural Marketing Act of 1946 (the "GMO Labeling Act"). Upon request, the Seller shall provide the Buyer a certification of compliance with the above requirements.
    c. **Non-GMO and Organic.** To the extent the "Non-GMO and Organic" section is marked in the "Seller Certification" above, the Seller further represents, warrants and certifies that: (i) the Commodity satisfies the Non-GMO requirements of Section 4(b) above; and (ii) the Commodity was "organically produced" for purposes of the Organic Food Production Act of 1990, 7 U.S.C. §§ 6501-6522, as may be amended, and the regulations promulgated under the Organic Food Production Act of 1990 (the "Organic Act"), including, but not limited to, that the Commodity was produced at a "certified organic farm," as defined in the Organic Act, and that the operations that have handled the Commodity prior to delivery to the Buyer are "certified organic handling operations," as defined in the Organic Act. Upon request, the Seller shall provide the Buyer a certification of compliance with the above requirements, its approved organic plan and the certification of compliance with the applicable organic certification program.
    d. **Article 2 Warranties; No Disclaimers.** Seller expressly warrants that the Seller shall convey good title to the Commodity free and clear of any and all security interest or other liens, except those for which the Seller has notified the Buyer in writing. The Seller does not disclaim any implied warranties under the Uniform Commercial Code including, but not limited to, the implied warranty of merchantability (UCC 2-314), the implied warranty of fitness for particular purpose (UCC 2-315), and the implied warranty from usage of trade (UCC 2-314). For purposes of this Section, the Seller is a "merchant", as defined by the Uniform Commercial Code.
5. **Indemnification and Hold Harmless.** Seller shall indemnify and hold Buyer harmless for any claims, demands, obligations, suits, actions or causes of action that arise from or relate to: (a) any liability or obligations contractually agreed to by the Seller in this Contract; and (b) any breach of the representations and warranties of the Seller under this Contract including, but not limited to, the representations and warranties under Sections 4(b) [Non-GMO] and 4(c) [Non-GMO and Organic] above.
6. **Default; Damages.**
    a. **Event of Default.** Failure to comply with the terms and conditions of this Contract including, but not limited to, the breach of any representation or warranty or the failure of the Seller to deliver the Commodity, shall be an event of default under this Contract. The Buyer may, at its election, require either: (a) specific performance and delivery of the Commodity by the Seller; or (b) payment for the replacement cost of the undelivered Commodity. If, in Buyer's sole discretion, Buyer has reason to feel insecure about Seller's performance under this Contract, the Seller shall provide adequate assurance of compliance to the Buyer and make any such required payments to the Buyer, or do such other things as required by the Buyer in the time and manner set forth by Buyer. The failure to provide adequate assurance acceptable to the Buyer shall be an event of default.
    b. **Damages; Legal Fees and Costs.** Seller's failure to perform on this Contract will result in contract cancellation charges to Seller, the total of which will be the difference between the Contract price and the replacement cost at the time of cancellation, plus a minimum cancellation charge of ten cents (10¢) per bushel. All contract pricing terms are part of the formula pricing of the cash delivery commitment. All futures exchange positions utilized by Buyer are for Buyer's hedging purposes only and not for Seller's account. Seller shall be liable for Buyer's legal fees and costs of collection.
    c. **Acceptance by Buyer; No Waiver.** Acceptance of any performance by Buyer, after default of this Contract by Seller, shall not waive any rights or remedies accruing to Buyer as a result of such default.
7. **Arbitration.** This Contract is made in accordance with the applicable grain trade rules of the National Grain and Feed Association except as modified by this Contract. Any disagreements or disputes arising under or related to this Contract shall be arbitrated through arbitration proceedings before the National Grain and Feed Association and pursuant to its arbitration rules. The decision and award determined through such arbitration shall be final and binding upon the Buyer and Seller. The parties may file the arbitration decision and award as a judgment and the decision and award may be enforced in any applicable court.
8. **Miscellaneous.**
    a. **Force Majeure; Allocation of Deliveries.** An event outside the control of the Seller shall not relieve the Seller of its obligations to perform on this Contract. In the event the Seller has contractually agreed to deliver like commodities to other buyers, the Seller agrees that it will not allocate production or deliveries among its buyers until which time the Seller has fully complied under this Contract.
    b. **No Other Agreements.** No other agreements between the parties. Any modifications of this Contract shall be in writing and signed by both parties.
    c. **Disclosure of Risks.** Seller acknowledges that Seller has entered into this Contract based upon Seller's own knowledge and judgment. Seller acknowledges that this Contract involves financial risks which Seller has independently evaluated, prior to executing this Contract, and that Buyer is not acting as a fiduciary in regard to this Contract.
    d. **Assignment.** The respective rights, obligations and liabilities of Seller are not assignable without the prior written Consent of Buyer. The Buyer may assign this Contract to its successors and assigns.
    e. **Governing Law.** This Contract shall be governed by the laws of the state of Minnesota and shall be binding on Seller's estate, executors, administrators, successors and assigns and shall inure to the benefit of Buyer, its successors and assigns.

# PURCHASE CONTRACT - F



| | | |
|---|---|---|
| **Contract No.** | : | 150110374 |
| **Contract Date** | : | 3/10/2021 |
| **Reference** | : | |
| **Our Trader** | : | CJ Eisler |
| **Your Contact** | : | Ecopure Specialities Limited |
| **Contact Phone No.** | : | |
| **Contact FAX No.** | : | |

Pipeline Foods, LLC
6499 University Avenue NE
SUITE 200
Minneapolis, MN 55432
United States
Phone:
Fax:

| **Purchased From** | Ecopure Specialities Limited |
|---|---|
| ECOPURIN | Unit No 134 First Floor Rectangle 1 |
| | Delhi, DE 110017 |
| | India |

| | | |
|---|---|---|
| **Commodity** | : | ORGSBM Soybean Meal-Organic |
| **Quantity** | : | 1,000.000 MT |

| **Pricing** | : | 1,000.000 MT | 975.0000 USD |
|---|---|---|---|

**Shipment Period** : Start: 3/1/2021, End: 5/31/2021

| **Ship Mode** | **Weight to Govern** | **Del. Basis/FOB Point** | **Title Passes** |
|---|---|---|---|
| Container | Origin | FOB | Nhava Sheva, GU |

**Contract Notes:**
Origin Optional
For claims related to quality of the product, the buyer shall give written notice to seller within 7 days of delivery. A sample of the product will be sent to SGS at the expense of the buyer for grade analysis, which shall be binding upon each party.
PACKING: Bulk in 20' containers, with liners QUANTITY: 1,000 MT, +/- 5%, Buyer to specify maximum container weight QUALITY: PROTEIN: 46% MINIMUM FAT: 7% MAXIMUM FIBER: 6% MAXIMUM MOISTURE: 7% MAXIMUM PROTEIN SOLUBILITY (KOH): 75% MINIMUM UREASE: 0.20 MAXIMUM COOL, SWEET, AND SOUND UPON ARRIVAL • Product shall be free from sour, musty, or other commercially objectionable foreign odors • Product shall be free from insects (live or dead) • Cargo cannot be shipped prior to approval of Buyer • Buyer shall appoint a surveyor to draw pre-sample shipments, Seller shall segregate shipment until Buyer approves the loading of the shipment • The rules of GAFTA 124 (Sampling) are hereby incorporated into this contract • The rules of GAFTA 123 (Weighing) are hereby incorporated into this contract • Seller guarantees that product shall clear US Customs. Seller agrees to reimburse Buyer for any costs associated with product being rejected by US Customs, FDA, USDA, or other government agency. REQUIRED DOCUMENTS: 1. Full set of negotiable on board Bill of Lading (Multi-modal transport B/L allowed) 2. Commercial Invoice 3. Certificate of Analysis Issued by GAFTA registered surveyor/laboratory 4. Certificate of Origin Issued by Government Authorities 5. Phytosanitary Certificate Issued by Government Authorities 6. Packing List 7. Weight certificate Issued by GAFTA registered surveyor 8. Container Cleanliness certificate Issued by GAFTA registered surveyor 9. NOP Certificate 10. Organic Transaction Certificate The terms and conditions of GAFTA 125 are hereby incorporated into this contract

**Trade Rules To Govern:**
**Payment Terms:** Cash Against Documents

SIGNATURE: Receipt of this confirmation by Buyer/Seller, without written notice to Seller/Buyer of objection or error within seven (7) days, is an acknowledgement of the acceptance of all conditions hereof.

Buyer: _[signature]_

CJ Eisler

Seller: _[signature]_

Name:

Wed, 10 Mar 2021 22:12:13 UTC                                                                                                                            Page 1 of 2

# PURCHASE CONTRACT - F



|  |  |  |
|---|---|---|
| **Contract No.** | : | 150110374 |
| **Contract Date** | : | 3/10/2021 |
| **Reference** | : |  |
| **Our Trader** | : | CJ Eisler |
| **Your Contact** | : | Ecopure Specialities Limited |
| **Contact Phone No.** | : |  |
| **Contact FAX No.** | : |  |

Pipeline Foods, LLC
6499 University Avenue NE
SUITE 200
Minneapolis, MN 55432
United States
Phone:
Fax:

1. Buyer Sustainability Statement. The Buyer delivers long-term value to its suppliers and develops supply chain assurance and transparency for its customers as to organic, non-GMO, transitional and clean label value chains.
2. Cash Contract; Sale Confirmation. This is a cash contract for the sale of the Commodity from the Seller to the Buyer. The Contract contemplates that the parties sign this Contract. However, the absence of signatures shall not void or otherwise deem this Contract unenforceable. The delivery of this Contract by the Buyer to the Seller shall serve as a confirmation of the sale. To the extent the Seller disputes any terms or conditions of this Contract, the Seller shall immediately notify the Buyer in writing. Failure to dispute any terms or conditions of this Contract shall result in a binding agreement between the parties.
3. Delivery; Title.
    a. F.O.B. Point of Origin. The Commodity will be shipped to points designated by Buyer. Weights, grades, premiums and discounts at point of destination will apply at time of delivery, unless otherwise stated on this Contract.
    b. Excess Commodities. Buyer will set the price on any excess quantities of the Commodity, based on the delivery point, as follows: (i) delivery point owned, leased or managed by Buyer, Buyer's market price at time of delivery; and (ii) delivery point not owned, leased or managed by Buyer, Buyer's market price for F.O.B. point indicated at the time Buyer receives notice of the excess commodity. Notwithstanding above, the Buyer may reject any excess Commodities.
    c. Excess freight and other charges. Seller shall be responsible for any excess freight or other charges or penalties occasioned by erroneous billing and routing and/or any loading of cars, trucks or barges below minimum or over maximum weight. Seller shall pay all weighing and inspection fees. Seller shall also have sole liability for any federal, state or local taxes resulting from this Contract.
    d. Title. Title to, all rights of ownership in and risk of loss of the Commodity shall remain in Seller until physical delivery to Buyer's designated delivery point, at which time such rights shall pass to Buyer unless delivery is made to Buyer under a storage agreement, in which case such rights shall pass upon application of the commodity to a purchase contract with Buyer.
4. Representations, Warranties and Certifications of Seller.
    a. Compliance with Applicable Law; Federal Food, Drug and Cosmetic Act. Seller represents and warrants that the Commodity complies with all applicable federal and state laws including, but not limited to, the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 et seq., as may be amended, and the regulations promulgated under the Federal Food, Drug and Cosmetic Act, and specifically, that the Commodity has not been adulterated under any applicable laws.
    b. Non-GMO. To the extent the "Non-GMO" section is marked in the "Seller Certification" above, the Seller further represents, warrants and certifies that: (i) the Commodity contains no genetic material that has been modified through vitro recombinant deoxyribonucleic acid (DNA) techniques and for which the modification could not otherwise be obtained through conventional breeding or found in nature, and (ii) meets the requirements for non-bioengineered food under the Agricultural Marketing Act of 1946 and, specifically, Subtitle E "National Bioengineered Food Disclosure Standard", 7 U.S.C. § 1621 et seq., as may be amended, and the regulations promulgated under the Agricultural Marketing Act of 1946 (the "GMO Labeling Act"). Upon request, the Seller shall provide the Buyer a certification of compliance with the above requirements.
    c. Non-GMO and Organic. To the extent the "Non-GMO and Organic" section is marked in the "Seller Certification" above, the Seller further represents, warrants and certifies that: (i) the Commodity satisfies the Non-GMO requirements of Section 4(b) above; and (ii) the Commodity was "organically produced" for purposes of the Organic Food Production Act of 1990, 7 U.S.C. §§ 6501-6522, as may be amended, and the regulations promulgated under the Organic Food Production Act of 1990 (the "Organic Act"), including, but not limited to, that the Commodity was produced at a "certified organic farm," as defined in the Organic Act, and that the operations that have handled the Commodity prior to delivery to the Buyer are "certified organic handling operations," as defined in the Organic Act. Upon request, the Seller shall provide the Buyer a certification of compliance with the above requirements, its approved organic plan and the certification of compliance with the applicable organic certification program.
    d. Article 2 Warranties; No Disclaimers. Seller expressly warrants that the Seller shall convey good title to the Commodity free and clear of any and all security interest or other liens, except those for which the Seller has notified the Buyer in writing. The Seller does not disclaim any implied warranties under the Uniform Commercial Code including, but not limited to, the implied warranty of merchantability (UCC 2-314), the implied warranty of fitness for particular purpose (UCC 2-315), and the implied warranty from usage of trade (UCC 2-314). For purposes of this Section, the Seller is a "merchant", as defined by the Uniform Commercial Code.
5. Indemnification and Hold Harmless. Seller shall indemnify and hold Buyer harmless for any claims, demands, obligations, suits, actions or causes of action that arise from or relate to: (a) any liability or obligations contractually agreed to by the Seller in this Contract; and (b) any breach of the representations and warranties of the Seller under this Contract including, but not limited to, the representations and warranties under Sections 4(b) [Non-GMO] and 4(c) [Non-GMO and Organic] above.
6. Default; Damages.
    a. Event of Default. Failure to comply with the terms and conditions of this Contract including, but not limited to, the breach of any representation or warranty or the failure of the Seller to deliver the Commodity, shall be an event of default under this Contract. The Buyer may, at its election, require either: (a) specific performance and delivery of the Commodity by the Seller; or (b) payment for the replacement cost of the undelivered Commodity. If, in Buyer's sole discretion, Buyer has reason to feel insecure about Seller's performance under this Contract, the Seller shall provide adequate assurance of compliance to the Buyer and make any such required payments to the Buyer, or do such other things as required by the Buyer in the time and manner set forth by Buyer. The failure to provide adequate assurance acceptable to the Buyer shall be an event of default.
    b. Damages; Legal Fees and Costs. Seller's failure to perform on this Contract will result in contract cancellation charges to Seller, the total of which will be the difference between the Contract price and the replacement cost at the time of cancellation, plus a minimum cancellation charge of ten cents (10¢) per bushel. All contract pricing terms are part of the formula pricing of the cash delivery commitment. All futures exchange positions utilized by Buyer are for Buyer's hedging purposes only and not for Seller's account. Seller shall be liable for Buyer's legal fees and costs of collection.
    c. Acceptance by Buyer; No Waiver. Acceptance of any performance by Buyer, after default of this Contract by Seller, shall not waive any rights or remedies accruing to Buyer as a result of such default.
7. Arbitration. This Contract is made in accordance with the applicable grain trade rules of the National Grain and Feed Association except as modified by this Contract. Any disagreements or disputes arising under or related to this Contract shall be arbitrated through arbitration proceedings before the National Grain and Feed Association and pursuant to its arbitration rules. The decision and award determined through such arbitration shall be final and binding upon the Buyer and Seller. The parties may file the arbitration decision and award as a judgment and the decision and award may be enforced in any applicable court.
8. Miscellaneous.
    a. Force Majeure; Allocation of Deliveries. An event outside the control of the Seller shall not relieve the Seller of its obligations to perform on this Contract. In the event the Seller has contractually agreed to deliver like commodities to other buyers, the Seller agrees that it will not allocate production or deliveries among its buyers until which time the Seller has fully complied under this Contract.
    b. No Other Agreements. No other agreements between the parties. Any modifications of this Contract shall be in writing and signed by both parties.
    c. Disclosure of Risks. Seller acknowledges that Seller has entered into this Contract based upon Seller's own knowledge and judgment. Seller acknowledges that this Contract involves financial risks which Seller has independently evaluated, prior to executing this Contract, and that Buyer is not acting as a fiduciary in regard to this Contract.
    d. Assignment. The respective rights, obligations and liabilities of Seller are not assignable without the prior written Consent of Buyer. The Buyer may assign this Contract to its successors and assigns.
    e. Governing Law. This Contract shall be governed by the laws of the state of Minnesota and shall be binding on Seller's estate, executors, administrators, successors and assigns and shall inure to the benefit of Buyer, its successors and assigns.



Pipeline Foods, LLC
GROM S 2255 Yaeger Dugway
Cochrane, WI  54629
United States
Phone:   608-626-2211
FAX:     Robin

REPRINTED: 3/24/2021 08:54:57
| | |
|---|---|
| Contract No. | : 252210054 |
| Contract Date | : 3/16/2021 |
| Reference | : CIF MTL |
| Our Trader | : Rick Halverson |
| Your Contact | : NATURE BIO FOODS LTD |
| Contact Phone No. | : |
| Contact FAX No. | : |

**Purchased From**
NATUREIN

**NATURE BIO FOODS LTD**
45 KM STONE
G.T. ROAD
SONIPAT, KD  131021
India

| | |
|---|---|
| **Commodity** | : ORGRCBRKN  WHITE RICE BROKEN-ORGANIC<br>Must arrive cool and sweet. |
| **Quantity** | : 253,529.000 LB |
| **Pricing/LB** | : |

| LB | Price | USD |
|---|---|---|
| 253,529.000 | 0.3200 | |

**Shipment Period** :       START: 3/1/2021    END: 4/30/2021

| Ship Mode | Weight To Govern | Del. Basis/FOB Point | Title Passes |
|---|---|---|---|
| Container | Origin | FOB | Montreal QC |

**Contract Notes:**

This agreement is between the Seller (as noted above) and Pipeline Foods, LLC (the "Buyer").  The Seller acknowledges confirmation of this purchase by Buyer.  The parties agree to the above terms and conditions and the terms and conditions of the Contract Addendum attached hereto (collectively, the "Contract").

For claims related to quality of grain, the buyer shall give written notice to seller within 7 days of delivery. A sample of the grain will be sent to a 3rd Party Lab at the expense of the buyer for grade analysis, which shall be binding upon each party.
Seller is required to provide current Organic Certificate and Crop Summary (if contract is for organic commodities).

Clean Truck/Car affidavit, including lot number, for shipments of Organic, NON-GMO or Gluten Free products shall be provided by the seller and shall accompany each shipment and be provided to Pipeline Foods upon delivery of grain.

If this product is not certified organic, Seller attests the following:  keep documentation for contracts/orders between Seller and Pipeline, have a process for assuring that products have the proper specifications per this contract, that you inspect and test your products (incoming (seed, fertilizer) and outgoing (crops)) and when shipping outbound crops, the trailer is inspected prior to loading and the product is visually inspected prior to departure.

If product is be warranted as Gluten or Allergen Free, Seller attests that planting equipment, harvesting equipment, storage and transfer equipment, transport equipment  or any other equipment used in production, storage or processing of product is cleaned and free of allergens.  Allergens are considered to be:  Fish & Shellfish, Dairy, Eggs, Sulphites, Gluten or Wheat, Peanuts, Tree Nuts, Mustard (Canada only) Soy and Sesame Seeds (Canada Only).

Grain must arrive cool, sweet and free of infestation otherwise subject to rejection.

Basis contracts must be priced by the last trade date of the option or they will be rolled at the spread plus a fee.

**Trade Rules To Govern:**  National Grain and Feed Association
**Payment Terms:**  ~~Net 30~~  CAD 100 percent
**SIGNATURE:**  Receipt of this confirmation by Buyer/Seller, without written notice to Seller/Buyer of objection or error within seven (7) days, is an acknowledgement of the acceptance of all conditions hereof.

Buyer:  _____              Seller:  _____
                                                                   Name:  _____

# PURCHASE CONTRACT - F



| | |
|---|---|
| **Contract No.** : | 150110377 |
| **Contract Date** : | 3/11/2021 |
| **Reference** : | |
| **Our Trader** : | CJ Eisler |
| **Your Contact** : | Ecopure Specialities Limited |
| **Contact Phone No.** : | |
| **Contact FAX No.** : | |

Pipeline Foods, LLC
6499 University Avenue NE
SUITE 200
Minneapolis, MN 55432
United States
Phone:
Fax:

**Purchased From**  Ecopure Specialities Limited
ECOPURIN              Unit No 134 First Floor Rectangle 1
                      Delhi, DE 110017
                      India

| | | |
|---|---|---|
| **Commodity** | : | ORGSBM Soybean Meal-Organic |
| **Quantity** | : | 1,000.000 MT |

| **Pricing** | : | 1,000.000 TON | 975.0000 USD |
|---|---|---|---|

**Shipment Period** : Start: 3/1/2021, End: 5/31/2021

| **Ship Mode** | **Weight to Govern** | **Del. Basis/FOB Point** | **Title Passes** |
|---|---|---|---|
| Container | Origin | FOB | Nhava Sheva, GU |

**Contract Notes:**
Origin Optional
    For claims related to quality of the product, the buyer shall give written notice to seller within 7 days of delivery. A sample of the product will be sent to SGS at the expense of the buyer for grade analysis, which shall be binding upon each party.
    PACKING: Bulk in 20' containers, with liners QUANTITY: 1,000 MT, +/- 5%, Buyer to specify maximum container weight QUALITY: PROTEIN: 46% MINIMUM FAT: 7% MAXIMUM FIBER: 6% MAXIMUM MOISTURE: 7% MAXIMUM PROTEIN SOLUBILITY (KOH): 75% MINIMUM UREASE: 0.20 MAXIMUM COOL, SWEET, AND SOUND UPON ARRIVAL • Product shall be free from sour, musty, or other commercially objectionable foreign odors • Product shall be free from insects (live or dead) • Cargo cannot be shipped prior to approval of Buyer • Buyer shall appoint a surveyor to draw pre-sample shipments, Seller shall segregate shipment until Buyer approves the loading of the shipment • The rules of GAFTA 124 (Sampling) are hereby incorporated into this contract • The rules of GAFTA 123 (Weighing) are hereby incorporated into this contract • Seller guarantees that product shall clear US Customs. Seller agrees to reimburse Buyer for any costs associated with product being rejected by US Customs, FDA, USDA, or other government agency. REQUIRED DOCUMENTS: 1. Full set of negotiable on board Bill of Lading (Multi-modal transport B/L allowed) 2. Commercial Invoice 3. Certificate of Analysis Issued by GAFTA registered surveyor/laboratory 4. Certificate of Origin Issued by Government Authorities 5. Phytosanitary Certificate Issued by Government Authorities 6. Packing List 7. Weight certificate Issued by GAFTA registered surveyor 8. Container Cleanliness certificate Issued by GAFTA registered surveyor 9. NOP Certificate 10. Organic Transaction Certificate The terms and conditions of GAFTA 125 are hereby incorporated into this contract

**Trade Rules To Govern:**
**Payment Terms:**

SIGNATURE: Receipt of this confirmation by Buyer/Seller, without written notice to Seller/Buyer of objection or error within seven (7) days, is an acknowledgement of the acceptance of all conditions hereof.

Buyer: _[signature]_                               Seller: _[signature]_

CJ Eisler                                          Name:

Mon, 15 Mar 2021 18:22:28 UTC                                      Page 1 of 2

# PURCHASE CONTRACT - F



|  |  |  |
|---|---|---|
| **Contract No.** | : | 150110377 |
| **Contract Date** | : | 3/11/2021 |
| **Reference** | : |  |
| **Our Trader** | : | CJ Eisler |
| **Your Contact** | : | Ecopure Specialities Limited |
| **Contact Phone No.** | : |  |
| **Contact FAX No.** | : |  |

Pipeline Foods, LLC
6499 University Avenue NE
SUITE 200
Minneapolis, MN 55432
United States
Phone:
Fax:

1. Buyer Sustainability Statement. The Buyer delivers long-term value to its suppliers and develops supply chain assurance and transparency for its customers as to organic, non-GMO, transitional and clean label value chains.
2. Cash Contract; Sale Confirmation. This is a cash contract for the sale of the Commodity from the Seller to the Buyer. The Contract contemplates that the parties sign this Contract. However, the absence of signatures shall not void or otherwise deem this Contract unenforceable. The delivery of this Contract by the Buyer to the Seller shall serve as a confirmation of the sale. To the extent the Seller disputes any terms or conditions of this Contract, the Seller shall immediately notify the Buyer in writing. Failure to dispute any terms or conditions of this Contract shall result in a binding agreement between the parties.
3. Delivery; Title.
    a. F.O.B. Point of Origin. The Commodity will be shipped to points designated by Buyer. Weights, grades, premiums and discounts at point of destination will apply at time of delivery, unless otherwise stated on this Contract.
    b. Excess Commodities. Buyer will set the price on any excess quantities of the Commodity, based on the delivery point, as follows: (i) delivery point owned, leased or managed by Buyer, Buyer's market price at time of delivery; and (ii) delivery point not owned, leased or managed by Buyer, Buyer's market price for F.O.B. point indicated at the time Buyer receives notice of the excess commodity. Notwithstanding above, the Buyer may reject any excess Commodities.
    c. Excess freight and other charges. Seller shall be responsible for any excess freight or other charges or penalties occasioned by erroneous billing and routing and/or any loading of cars, trucks or barges below minimum or over maximum weight. Seller shall pay all weighing and inspection fees. Seller shall also have sole liability for any federal, state or local taxes resulting from this Contract.
    d. Title. Title to, all rights of ownership and risk of loss of the Commodity shall remain in Seller until physical delivery to Buyer's designated delivery point, at which time such rights shall pass to Buyer unless delivery is made to Buyer under a storage agreement, in which case such rights shall pass upon application of the commodity to a purchase contract with Buyer.
4. Representations, Warranties and Certifications of Seller.
    a. Compliance with Applicable Law; Federal Food, Drug and Cosmetic Act. Seller represents and warrants that the Commodity complies with all applicable federal and state laws including, but not limited to, the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 et seq., as may be amended, and the regulations promulgated under the Federal Food, Drug and Cosmetic Act, and specifically, that the Commodity has not been adulterated under any applicable laws.
    b. Non-GMO. To the extent the "Non-GMO" section is marked in the "Seller Certification" above, the Seller further represents, warrants and certifies that: (i) the Commodity contains no genetic material that has been modified through vitro recombinant deoxyribonucleic acid (DNA) techniques and for which the modification could not otherwise be obtained through conventional breeding or found in nature, and (ii) meets the requirements for non-bioengineered food under the Agricultural Marketing Act of 1946 and, specifically, Subtitle E "National Bioengineered Food Disclosure Standard", 7 U.S.C. § 1621 et seq., as may be amended, and the regulations promulgated under the Agricultural Marketing Act of 1946 (the "GMO Labeling Act"). Upon request, the Seller shall provide the Buyer a certification of compliance with the above requirements.
    c. Non-GMO and Organic. To the extent the "Non-GMO and Organic" section is marked in the "Seller Certification" above, the Seller further represents, warrants and certifies that: (i) the Commodity satisfies the Non-GMO requirements of Section 4(b) above; and (ii) the Commodity was "organically produced" for purposes of the Organic Food Production Act of 1990, 7 U.S.C. §§ 6501-6522, as may be amended, and the regulations promulgated under the Organic Food Production Act of 1990 (the "Organic Act"), including, but not limited to, that the Commodity was produced at a "certified organic farm," as defined in the Organic Act, and that the operations that have handled the Commodity prior to delivery to the Buyer are "certified organic handling operations," as defined in the Organic Act. Upon request, the Seller shall provide the Buyer a certification of compliance with the above requirements, its approved organic plan and the certification of compliance with the applicable organic certification program.
    d. Article 2 Warranties; No Disclaimers. Seller expressly warrants that the Seller shall convey good title to the Commodity free and clear of any and all security interest or other liens, except those for which the Seller has notified the Buyer in writing. The Seller does not disclaim any implied warranties under the Uniform Commercial Code including, but not limited to, the implied warranty of merchantability (UCC 2-314), the implied warranty of fitness for particular purpose (UCC 2-315), and the implied warranty from usage of trade (UCC 2-314). For purposes of this Section, the Seller is a "merchant", as defined by the Uniform Commercial Code.
5. Indemnification and Hold Harmless. Seller shall indemnify and hold Buyer harmless for any claims, demands, obligations, suits, actions or causes of action that arise from or relate to: (a) any liability or obligations contractually agreed to by the Seller in this Contract; and (b) any breach of the representations and warranties of the Seller under this Contract including, but not limited to, the representations and warranties under Sections 4(b) [Non-GMO] and 4(c) [Non-GMO and Organic] above.
6. Default; Damages.
    a. Event of Default. Failure to comply with the terms and conditions of this Contract including, but not limited to, the breach of any representation or warranty or the failure of the Seller to deliver the Commodity, shall be an event of default under this Contract. The Buyer may, at its election, require either: (a) specific performance and delivery of the Commodity by the Seller; or (b) payment for the replacement cost of the undelivered Commodity. If, in Buyer's sole discretion, Buyer has reason to feel insecure about Seller's performance under this Contract, the Seller shall provide adequate assurance of compliance to the Buyer and make any such required payments to the Buyer, or do such other things as required by the Buyer in the time and manner set forth by Buyer. The failure to provide adequate assurance acceptable to the Buyer shall be an event of default.
    b. Damages; Legal Fees and Costs. Seller's failure to perform on this Contract will result in contract cancellation charges to Seller, the total of which will be the difference between the Contract price and the replacement cost at the time of cancellation, plus a minimum cancellation charge of ten cents (10¢) per bushel. All contract pricing terms are part of the formula pricing of the cash delivery commitment. All futures exchange positions utilized by Buyer are for Buyer's hedging purposes only and not for Seller's account. Seller shall be liable for Buyer's legal fees and costs of collection.
    c. Acceptance by Buyer; No Waiver. Acceptance of any performance by Buyer, after default of this Contract by Seller, shall not waive any rights or remedies accruing to Buyer as a result of such default.
7. Arbitration. This Contract is made in accordance with the applicable grain trade rules of the National Grain and Feed Association except as modified by this Contract. Any disagreements or disputes arising under or related to this Contract shall be arbitrated through arbitration proceedings before the National Grain and Feed Association and pursuant to its arbitration rules. The decision and award determined through such arbitration shall be final and binding upon the Buyer and Seller. The parties may file the arbitration decision and award as a judgment and the decision and award may be enforced in any applicable court.
8. Miscellaneous.
    a. Force Majeure; Allocation of Deliveries. An event outside the control of the Seller shall not relieve the Seller of its obligations to perform on this Contract. In the event the Seller has contractually agreed to deliver like commodities to other buyers, the Seller agrees that it will not allocate production or deliveries among its buyers until which time the Seller has fully complied under this Contract.
    b. No Other Agreements. No other agreements between the parties. Any modifications of this Contract shall be in writing and signed by both parties.
    c. Disclosure of Risks. Seller acknowledges that Seller has entered into this Contract based upon Seller's own knowledge and judgment. Seller acknowledges that this Contract involves financial risks which Seller has independently evaluated, prior to executing this Contract, and that Buyer is not acting as a fiduciary in regard to this Contract.
    d. Assignment. The respective rights, obligations and liabilities of Seller are not assignable without the prior written Consent of Buyer. The Buyer may assign this Contract to its successors and assigns.
    e. Governing Law. This Contract shall be governed by the laws of the state of Minnesota and shall be binding on Seller's estate, executors, administrators, successors and assigns and shall inure to the benefit of Buyer, its successors and assigns.

# PURCHASE CONTRACT



Pipeline Foods, LLC
6499 University Avenue NE
SUITE 200
Minneapolis, MN  55432
United States
Phone:
FAX:

REPRINTED: 1/26/2021 15:22:41
| | |
|---|---|
| Contract No. | : 120410044 |
| Contract Date | : 1/26/2021 |
| Reference | : |
| Our Trader | : Guillermo Mancebo |
| Your Contact | : Ecopure Specialities Limited |
| Contact Phone No. | : |
| Contact FAX No. | : |

**Purchased From**
ECOPURIN

**Ecopure Specialities Limited**
Unit No 134 First Floor Rectangle 1
Delhi, DE  110017
India

| | |
|---|---|
| Commodity | : ORGSBM  Soybean Meal-Organic |
| | Origin Grades to Apply unless otherwise noted. |
| Quantity | : 400.000 MT |
| Pricing/MT | : |

| | MT | Price | USD |
|---|---|---|---|
| | 400.000 | 730.0000 | |

**Shipment Period**  :   START: 3/1/2021   END: 4/30/2021

| Ship Mode | Weight To Govern | Del. Basis/FOB Point | Title Passes |
|---|---|---|---|
| Container | Origin | FOB | Nhava Sheva GU |

**Contract Notes:**

This contract is made upon the terms and conditions including the arbitration clauses of this contract, in contract form GAFTA 88 & 125 arbitration in force at the date of this contract, of which the parties admit that they have knowledge and notice, and the details given below shall be taken as having been written into such contract form in the appropriate place. Delivery and risk of loss are covered under Incoterms 2020. Any special terms and conditions contained herein and/or attached hereto shall be treated as if written on such contract form and shall prevail in so far as they may be inconsistent with the printed clauses of such contract form.

PRODUCT: EU Certified Organic Soybean Meal

PACKING: In big bags with heat treated pallets in 20' or 40' containers, buyer's option, and seller to specify maximum container weight

QUANTITY: 400 MT +/- 5%

SHIPMENT: 200 MT in March, 2021 and 200 MT in April, 2021

QUALITY: Protein 46% MIN, Fat 5-7%, Fiber 6% MAX, Moisture 7% MAX, Protein Solubility (KOH) 75% MIN, Ureasic Activity: 0.20 % MAX, Pesticide Residue analysis as per EU regulations. Other as per Ecopure Specialties specifications version 1.0. COOL, SWEET, AND SOUND UPON ARRIVAL • Product shall be free from sour, musty, or other commercially objectionable foreign odors • Product shall be free from insects (live or dead)

Cargo cannot be shipped prior to approval of Buyer • Buyer shall appoint a surveyor to draw pre-sample shipments, Seller shall segregate shipment until Buyer approves the loading of the shipment • The rules of GAFTA 124 (Sampling) are hereby incorporated into this contract • The rules of GAFTA 123 (Weighing) are hereby incorporated into this contract.

REQUIRED DOCUMENTS: 1. Full set of negotiable on board Bill of Lading (Multi-modal transport B/L allowed) 2. Commercial Invoice 3. Certificate of Analysis Issued by GAFTA registered surveyor/laboratory 4. Certificate of Origin Issued by Government Authorities 5. Phytosanitary Certificate Issued by Government Authorities 6. Packing List 7. Weight certificate Issued by GAFTA registered surveyor 8. Container Cleanliness certificate Issued by GAFTA registered surveyor 9. EU Organic Certificate 10. Organic Transaction Certificate
APPROPRIATION: Notice of appropriation stating the containers numbers, the vessel's name, port of shipment, date of the Bill of Lading and the quantity loaded shall, within three (3) working days from the date of the Bill of Lading, be dispatched by the Seller by fax or other method of rapid written communication to the Buyer. It is hereby agreed that notices can be served by fax and that the date and time of dispatch is, for the purposes of time limits, to be the date and time of service.

| | |
|---|---|
| **Trade Rules To Govern:** | GAFTA and Incoterms 2020 |
| **Payment Terms:** | Cash Against Documents |

**SIGNATURE:** Receipt of this confirmation by Buyer/Seller, without written notice to Seller/Buyer of objection or error within seven (7) days.

Page 1 of 2

# PURCHASE CONTRACT

**PIPELINE FOODS**

Pipeline Foods, LLC
6499 University Avenue NE
SUITE 200
Minneapolis, MN  55432
United States
Phone:
FAX:

REPRINTED: 1/26/2021 15:22:56
Contract No.      : 120410044
Contract Date    : 1/26/2021
Reference         :
Our Trader        : Guillermo Mancebo
Your Contact     : Ecopure Specialities Limite
Contact Phone No. :
Contact FAX No.   :

is an acknowledgement of the acceptance of all conditions hereof.

Buyer: _____
Guillermo Mancebo

Seller:
Name: _____
Rohan Grover- Director , Ecopure Specialities

Page 2 of 2

# PURCHASE CONTRACT - F



|  |  |
|---|---|
| **Contract No.** : | 150110286 |
| **Contract Date** : | 12/10/2020 |
| **Reference** : |  |
| **Our Trader** : | CJ Eisler |
| **Your Contact** : | Ecopure Specialities Limited |
| **Contact Phone No.** : |  |
| **Contact FAX No.** : |  |

Pipeline Foods, LLC  
6499 University Avenue NE  
SUITE 200  
Minneapolis, MN 55432  
United States  
Phone:  
Fax:

| **Purchased From** | Ecopure Specialities Limited |
|---|---|
| ECOPURIN | Unit No 134 First Floor Rectangle 1 |
|  | Delhi, DE 110017 |
|  | India |

| | |
|---|---|
| **Commodity** : | ORGSBM Soybean Meal-Organic |
| **Quantity** : | 2,500.000 MT |

| **Pricing** : | 2,500.000 MT | 655.0000 USD |
|---|---|---|

**Shipment Period** : Start: 3/1/2021, End: 7/31/2021

| **Ship Mode** | **Weight to Govern** | **Del. Basis/FOB Point** | **Title Passes** |
|---|---|---|---|
| Container | Origin | FOB | Nhava Sheva, GU |

**Contract Notes:**
Origin Optional

For claims related to quality of the product, the buyer shall give written notice to seller within 7 days of delivery. A sample of the product will be sent to SGS at the expense of the buyer for grade analysis, which shall be binding upon each party.

PACKING: Bulk in 20' containers, with liners QUANTITY: 2,500 MT, +/- 5%, Buyer to specify maximum container weight QUALITY: PROTEIN: 46% MINIMUM FAT: 7% MAXIMUM FIBER: 6% MAXIMUM MOISTURE: 7% MAXIMUM PROTEIN SOLUBILITY (KOH): 75% MINIMUM UREASE: 0.20 MAXIMUM COOL, SWEET, AND SOUND UPON ARRIVAL • Product shall be free from sour, musty, or other commercially objectionable foreign odors • Product shall be free from insects (live or dead) • Cargo cannot be shipped prior to approval of Buyer • Buyer shall appoint a surveyor to draw pre-sample shipments, Seller shall segregate shipment until Buyer approves the loading of the shipment • The rules of GAFTA 124 (Sampling) are hereby incorporated into this contract • The rules of GAFTA 123 (Weighing) are hereby incorporated into this contract • Seller guarantees that product shall clear US Customs. Seller agrees to reimburse Buyer for any costs associated with product being rejected by US Customs, FDA, USDA, or other government agency. REQUIRED DOCUMENTS: 1. Full set of negotiable on board Bill of Lading (Multi-modal transport B/L allowed) 2. Commercial Invoice 3. Certificate of Analysis Issued by GAFTA registered surveyor/laboratory 4. Certificate of Origin Issued by Government Authorities 5. Phytosanitary Certificate Issued by Government Authorities 6. Packing List 7. Weight certificate Issued by GAFTA registered surveyor 8. Container Cleanliness certificate Issued by GAFTA registered surveyor 9. NOP Certificate 10. Organic Transaction Certificate The terms and conditions of GAFTA 125 are hereby incorporated into this contract

**Trade Rules To Govern:**
**Payment Terms:** Cash Against Documents

SIGNATURE: Receipt of this confirmation by Buyer/Seller, without written notice to Seller/Buyer of objection or error within seven (7) days, is an acknowledgement of the acceptance of all conditions hereof.

Buyer: *[signature]*  
CJ Eisler

Seller: *[signature]*  
Name: **Rohan Grover - Director**  
**Ecopure specialities**

# PURCHASE CONTRACT - F



Pipeline Foods, LLC
6499 University Avenue NE
SUITE 200
Minneapolis, MN 55432
United States
Phone:
Fax:

| | | |
|---|---|---|
| **Contract No.** | : | 150110286 |
| **Contract Date** | : | 12/10/2020 |
| **Reference** | : | |
| **Our Trader** | : | CJ Eisler |
| **Your Contact** | : | Ecopure Specialities Limited |
| **Contact Phone No.** | : | |
| **Contact FAX No.** | : | |

1. Buyer Sustainability Statement. The Buyer delivers long-term value to its suppliers and develops supply chain assurance and transparency for its customers as to organic, non-GMO, transitional and clean label value chains.
2. Cash Contract; Sale Confirmation. This is a cash contract for the sale of the Commodity from the Seller to the Buyer. The Contract contemplates that the parties sign this Contract. However, the absence of signatures shall not void or otherwise deem this Contract unenforceable. The delivery of this Contract by the Buyer to the Seller shall serve as a confirmation of the sale. To the extent the Seller disputes any terms or conditions of this Contract, the Seller shall immediately notify the Buyer in writing. Failure to dispute any terms or conditions of this Contract shall result in a binding agreement between the parties.
3. Delivery; Title.
    a. F.O.B. Point of Origin. The Commodity will be shipped to points designated by Buyer. Weights, grades, premiums and discounts at point of destination will apply at time of delivery, unless otherwise stated on this Contract.
    b. Excess Commodities. Buyer will set the price on any excess quantities of the Commodity, based on the delivery point, as follows: (i) delivery point owned, leased or managed by Buyer, Buyer's market price at time of delivery; and (ii) delivery point not owned, leased or managed by Buyer, Buyer's market price for F.O.B. point indicated at the time Buyer receives notice of the excess commodity. Notwithstanding above, the Buyer may reject any excess Commodities.
    c. Excess freight and other charges. Seller shall be responsible for any excess freight or other charges or penalties occasioned by erroneous billing and routing and/or any loading of cars, trucks or barges below minimum or over maximum weight. Seller shall pay all weighing and inspection fees. Seller shall also have sole liability for any federal, state or local taxes resulting from this Contract.
    d. Title. Title to, all rights of ownership and in risk of loss of the Commodity shall remain in Seller until physical delivery to Buyer's designated delivery point, at which time such rights shall pass to Buyer unless delivery is made to Buyer under a storage agreement, in which case such rights shall pass upon application of the commodity to a purchase contract with Buyer.
4. Representations, Warranties and Certifications of Seller.
    a. Compliance with Applicable Law; Federal Food, Drug and Cosmetic Act. Seller represents and warrants that the Commodity complies with all applicable federal and state laws including, but not limited to, the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 et seq., as may be amended, and the regulations promulgated under the Federal Food, Drug and Cosmetic Act, and specifically, that the Commodity has not been adulterated under any applicable laws.
    b. Non-GMO. To the extent the "Non-GMO" section is marked in the "Seller Certification" above, the Seller further represents, warrants and certifies that: (i) the Commodity contains no genetic material that has been modified through vitro recombinant deoxyribonucleic acid (DNA) techniques and for which the modification could not otherwise be obtained through conventional breeding or found in nature, and (ii) meets the requirements for non-bioengineered food under the Agricultural Marketing Act of 1946 and, specifically, Subtitle E "National Bioengineered Food Disclosure Standard", 7 U.S.C. § 1621 et seq., as may be amended, and the regulations promulgated under the Agricultural Marketing Act of 1946 (the "GMO Labeling Act"). Upon request, the Seller shall provide the Buyer a certification of compliance with the above requirements.
    c. Non-GMO and Organic. To the extent the "Non-GMO and Organic" section is marked in the "Seller Certification" above, the Seller further represents, warrants and certifies that: (i) the Commodity satisfies the Non-GMO requirements of Section 4(b) above; and (ii) the Commodity was "organically produced" for purposes of the Organic Food Production Act of 1990, 7 U.S.C. §§ 6501-6522, as may be amended, and the regulations promulgated under the Organic Food Production Act of 1990 (the "Organic Act"), including, but not limited to, that the Commodity was produced at a "certified organic farm," as defined in the Organic Act, and that the operations that have handled the Commodity prior to delivery to the Buyer are "certified organic handling operations," as defined in the Organic Act. Upon request, the Seller shall provide the Buyer a certification of compliance with the above requirements, its approved organic plan and the certification of compliance with the applicable organic certification program.
    d. Article 2 Warranties; No Disclaimers. Seller expressly warrants that the Seller shall convey good title to the Commodity free and clear of any and all security interest or other liens, except those for which the Seller has notified the Buyer in writing. The Seller does not disclaim any implied warranties under the Uniform Commercial Code including, but not limited to, the implied warranty of merchantability (UCC 2-314), the implied warranty of fitness for particular purpose (UCC 2-315), and the implied warranty from usage of trade (UCC 2-314). For purposes of this Section, the Seller is a "merchant", as defined by the Uniform Commercial Code.
5. Indemnification and Hold Harmless. Seller shall indemnify and hold Buyer harmless for any claims, demands, obligations, suits, actions or causes of action that arise from or relate to: (a) any liability or obligations contractually agreed to by the Seller in this Contract; and (b) any breach of the representations and warranties of the Seller under this Contract including, but not limited to, the representations and warranties under Sections 4(b) [Non-GMO] and 4(c) [Non-GMO and Organic] above.
6. Default; Damages.
    a. Event of Default. Failure to comply with the terms and conditions of this Contract including, but not limited to, the breach of any representation or warranty or the failure of the Seller to deliver the Commodity, shall be an event of default under this Contract. The Buyer may, at its election, require either: (a) specific performance and delivery of the Commodity by the Seller; or (b) payment for the replacement cost of the undelivered Commodity. If, in Buyer's sole discretion, Buyer has reason to feel insecure about Seller's performance under this Contract, the Seller shall provide adequate assurance of compliance to the Buyer and make any such required payments to the Buyer, or do such other things as required by the Buyer in the time and manner set forth by Buyer. The failure to provide adequate assurance acceptable to the Buyer shall be an event of default.
    b. Damages; Legal Fees and Costs. Seller's failure to perform on this Contract will result in contract cancellation charges to Seller, the total of which will be the difference between the Contract price and the replacement cost at the time of cancellation, plus a minimum cancellation charge of ten cents (10¢) per bushel. All contract pricing terms are part of the formula pricing of the cash delivery commitment. All futures exchange positions utilized by Buyer are for Buyer's hedging purposes only and not for Seller's account. Seller shall be liable for Buyer's legal fees and costs of collection.
    c. Acceptance by Buyer; No Waiver. Acceptance of any performance by Buyer, after default of this Contract by Seller, shall not waive any rights or remedies accruing to Buyer as a result of such default.
7. Arbitration. This Contract is made in accordance with the applicable grain trade rules of the National Grain and Feed Association except as modified by this Contract. Any disagreements or disputes arising under or related to this Contract shall be arbitrated through arbitration proceedings before the National Grain and Feed Association and pursuant to its arbitration rules. The decision and award determined through such arbitration shall be final and binding upon the Buyer and Seller. The parties may file the arbitration decision and award as a judgment and the decision and award may be enforced in any applicable court.
8. Miscellaneous.
    a. Force Majeure; Allocation of Deliveries. An event outside the control of the Seller shall not relieve the Seller of its obligations to perform on this Contract. In the event the Seller has contractually agreed to deliver like commodities to other buyers, the Seller agrees that it will not allocate production or deliveries among its buyers until which time the Seller has fully complied under this Contract.
    b. No Other Agreements. No other agreements between the parties. Any modifications of this Contract shall be in writing and signed by both parties.
    c. Disclosure of Risks. Seller acknowledges that Seller has entered into this Contract based upon Seller's own knowledge and judgment. Seller acknowledges that this Contract involves financial risks which Seller has independently evaluated, prior to executing this Contract, and that Buyer is not acting as a fiduciary in regard to this Contract.
    d. Assignment. The respective rights, obligations and liabilities of Seller are not assignable without the prior written Consent of Buyer. The Buyer may assign this Contract to its successors and assigns.
    e. Governing Law. This Contract shall be governed by the laws of the state of Minnesota and shall be binding on Seller's estate, executors, administrators, successors and assigns and shall inure to the benefit of Buyer, its successors and assigns.