# EXHIBIT "A"

**Number: 2019 249**
**BK: 2019 PG: 249**
**Recorded: 2/27/2019 at 1:03:38.0 PM**
**County Recording Fee: $92.00**
**Iowa E-Filing Fee: $3.00**
**Combined Fee: $95.00**
**Revenue Tax:**
**Number of Pages: 18**
**CHERRI L. CAFFREY, RECORDER**
**Howard County, Iowa**

*Execution Copy*

## MORTGAGE,
## SECURITY AGREEMENT,
## ASSIGNMENT OF LEASES AND RENTS,
## AND FIXTURE FINANCING STATEMENT
### (Closed End)

Recorder's Cover Sheet

**Preparer Information:** (name, address and phone number)
Adam M. Nathe, Stinson Leonard Street LLP, 50 South Sixth Street, Suite 2600, Minneapolis, MN 55402, (612) 335-1593

**Taxpayer Information:** (name and complete address)
Pipeline Foods, LLC, a Delaware limited liability company, 1250 E. Moore Lake Drive, Suite #200, Minneapolis, MN  55432

**Return Document To:** (name and complete address)
Adam M. Nathe, Stinson Leonard Street LLP, 50 South Sixth Street, Suite 2600, Minneapolis, MN 55402, (612) 335-1593

**Grantors:**
PIPELINE FOODS, LLC, a Delaware limited liability company

**Grantee:**
COMPEER FINANCIAL, PCA, as administrative agent, 1921 Premier Drive, P.O. Box 4249, Mankato, Minnesota 56002-4249

**Legal Description:** Exhibit "A"

**Document or instrument number of previously recorded documents:  N/A**

*Execution Copy*

# MORTGAGE,
# SECURITY AGREEMENT,
# ASSIGNMENT OF LEASES AND RENTS,
# AND FIXTURE FINANCING STATEMENT
## (Closed End)

Recorder's Cover Sheet

**Preparer Information:** (name, address and phone number)
Adam M. Nathe, Stinson Leonard Street LLP, 50 South Sixth Street, Suite 2600, Minneapolis, MN 55402, (612) 335-1593

**Taxpayer Information:** (name and complete address)
Pipeline Foods, LLC, a Delaware limited liability company, 1250 E. Moore Lake Drive, Suite #200, Minneapolis, MN  55432

**Return Document To:** (name and complete address)
Adam M. Nathe, Stinson Leonard Street LLP, 50 South Sixth Street, Suite 2600, Minneapolis, MN 55402, (612) 335-1593

**Grantors:**
PIPELINE FOODS, LLC, a Delaware limited liability company

**Grantee:**
COMPEER FINANCIAL, PCA, as administrative agent, 1921 Premier Drive, P.O. Box 4249, Mankato, Minnesota 56002-4249

**Legal Description:** Exhibit "A"

**Document or instrument number of previously recorded documents:  N/A**

1

*Execution Copy*

**MORTGAGE,**
**SECURITY AGREEMENT,**
**ASSIGNMENT OF LEASES AND RENTS,**
**AND FIXTURE FINANCING STATEMENT**

THIS **MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS, AND FIXTURE FINANCING STATEMENT** (this "**Mortgage**") made as of February 22, 2019, by and between **PIPELINE FOODS, LLC**, a Delaware limited liability company, as mortgagor (the "**Mortgagor**"), whose mailing address is 1250 E. Moore Lake Drive, Suite #200, Minneapolis, MN  55432, and **COMPEER FINANCIAL, PCA**, a United States instrumentality, as mortgagee (the "**Mortgagee**"), whose mailing address is 1921 Premier Drive, P.O. Box 4249, Mankato, Minnesota 56002-4249.

This Mortgage shall secure the original principal amount of Twenty-Six Million and No/100 Dollars ($26,000,000.00) the "**Initial Amount of the Debt**", and this Mortgage is further intended to secure the entire "**Secured Indebtedness**" as hereinafter defined.

Mortgagor and Mortgagee entered into that certain Credit Agreement of even date herewith, executed by and among the Mortgagor and the Mortgagee in its capacity as administrative agent ("Agent") thereunder, and the banks, financial institutions and other entities from time to time parties thereto as lenders (the "Lenders") (as the same may from time to time be amended, modified, extended, renewed, refinanced or restated, the" **Credit Agreement**") and the other Loan Documents (as defined in the Credit Agreement) referenced therein. Capitalized terms used herein and not otherwise defined shall have the meanings ascribed thereto in the Credit Agreement.

To secure the performance of the covenants and commitments of the Mortgagor to the Mortgagee and the Lenders, and the payment to the Mortgagee of: (i) the Initial Amount of the Debt, as evidenced by the Term Notes of even date herewith (the "Notes"), the balance of the Notes being due and payable on or before the Maturity Date of February 22, 2025; (ii) the Credit Agreement; (iii) the Notes; and (iv) all other obligations and liabilities of Mortgagor to the Mortgagee or the Lenders pursuant to terms of this Mortgage, the Credit Agreement, the Notes, or any other Loan Documents; and for and to secure the payment to the Mortgagee, its successors and assigns, at the times demanded and with interest thereon at the Default Rate specified in the Credit Agreement, of all sums advanced in protecting the lien of this Mortgage, including all Protective Advances (all sums referred to in (i) and (iv) being collectively referred to herein as the "**Secured Indebtedness**"), and in consideration of the sum of $1.00 paid by the Mortgagee to the Mortgagor and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Mortgagor does hereby MORTGAGE, WARRANT, GRANT, BARGAIN, SELL AND CONVEY unto the Mortgagee, its successors and assigns, forever, and GRANTS A SECURITY INTEREST to the Mortgagee, its successors and assigns, in the following properties (all of the following being hereafter collectively referred to as the "**Mortgaged Property**"):

2

*Execution Copy*

## A.  Real Property

All the tracts or parcels of real property lying and being in Howard County, Iowa, as more fully described in <u>Exhibit A</u> (the "**Land**") attached hereto and made a part hereof, together with all improvements, buildings or structures owned by Mortgagor, situated, now or hereafter placed or constructed upon the Land ("**Improvements**"), all right, title, and interest of the Mortgagor in and to the Land and in and to lands lying in any and all streets, lanes, alleys, passages and roads adjoining the Land, and together with all right, title, and interest of the Mortgagor in and to all annexations, access rights, easements, rights of way or use, servitudes, licenses, tenements, hereditaments, appurtenances, minerals, mineral rights, water and water rights, now or hereafter belonging or pertaining to the Land (the "**Real Property**"); and

## B.  Personal Property

All right, title, and interest of the Mortgagor in and to all equipment, fixtures, improvements, building supplies and materials and other personal property now or hereafter attached to, located in, placed in or necessary to the use of the improvements on the Land or Improvements (the "**Personal Property**"); and

## C.  Leases, Rents, Issues and Profits

All right, title, and interest of the Mortgagor in and to all leases, accounts, rents, issues and profits now due or which may hereafter become with respect to the Mortgaged Property or any part thereof; and

## D.  Judgments and Awards

All right, title, and interest of the Mortgagor in and to any and all awards or compensation made by any governmental or other lawful authorities for the taking or damaging by eminent domain of the whole or any part of the Mortgaged Property or any rights appurtenant thereto, including any awards for a temporary taking, change of grade of streets or taking of access; and

## E.  After-Acquired Property

All right, title, and interest of the Mortgagor in and to all extensions, improvements, betterments, renewals, substitutes, and replacements of, and all additions and appurtenants to the items or types of property described in Sections A through D above, which are hereafter acquired by or released to the Mortgagor, or are hereafter constructed, assembled or placed by the Mortgagor on the Mortgaged Property, and all conversions of the security constituted thereby, immediately upon such acquisition, release, construction, assembling, placement, or conversion, as the case may be, and in each such case, without any further mortgage, conveyance, assignment, or other act by the Mortgagor, shall become subject to the lien of this Mortgage as fully and completely, and with the same effect, as though now owned by the Mortgagor and specifically described in the granting clause hereof, but at any and all times the Mortgagor will execute and deliver to the Mortgagee any and all such further assurances, mortgages, conveyances, or

3

*Execution Copy*

assignments thereof as the Mortgagee may reasonably require for the purpose of expressly and specifically subjecting the same to the lien of this Mortgage.

TO HAVE AND TO HOLD the Mortgaged Property unto the Mortgagee forever.

## ARTICLE I
## Mortgagor's
## Representations, Warranties
## Covenants and Agreements

The Mortgagor makes the following representations, warranties, covenants and agreements with the Mortgagee:

**1.1.** **First Lien Status.** The Mortgagor owns the Mortgaged Property free and clear of any and all Liens except the Liens described on **Exhibit B** attached hereto ("**Permitted Encumbrances**") and any other Permitted Liens from time to time affecting the Mortgaged Property. Except for the Permitted Encumbrances, this Mortgage creates a valid first priority lien and security interest against the Mortgaged Property. The Mortgagor shall preserve and protect the first priority lien and security interest status of this Mortgage subject to Permitted Encumbrances.

**1.2.** **Payment and Performance**. The Mortgagor shall pay the Secured Indebtedness when due under the terms of the Credit Agreement and the other Loan Documents and shall duly perform and observe all of the covenants, agreements and provisions contained in this Mortgage, the Credit Agreement and the other Loan Documents. No payment or collection of any of the Secured Indebtedness shall reduce the amount secured by this Mortgage.

**1.3.** **Care of Mortgaged Property; No Waste**. Subject to the terms of the Credit Agreement, the Mortgagor shall, at all times, keep and maintain the Mortgaged Property in good repair and operating condition, subject to ordinary wear and tear, and shall not commit, or suffer to be committed, any material waste or misuse of the Mortgaged Property, and shall repair, restore or replace, any buildings, improvements or structures now or hereafter placed or located on the Mortgaged Property which may become damaged or destroyed in accordance with the terms of this Mortgage and the Credit Agreement. The Mortgagor shall not, without the prior written consent of this Mortgagee, or except as permitted under the Credit Agreement: (i) remove or permit the removal of any material buildings, structures or other material improvements or material fixtures, or (ii) otherwise make any material alterations in any improvements which will adversely alter the basic structure or adversely affect the market value, and the Mortgagor will complete within a reasonable time any structures which are now or at any time in the process of erection in accordance with the terms of the Credit Agreement. The Mortgagor will not acquiesce in any rezoning classification, modification or public or private restriction which in any way limits or otherwise adversely affects the Mortgaged Property, or any part thereof. The Mortgagor shall not vacate or abandon the Mortgaged Property.

4

**1.4.** **Payment of Utilities and Operating Costs**. To the extent required under the Credit Agreement, the Mortgagor shall pay, or cause to be paid, when due, all charges made for electricity, gas, heat, water, sewer, and all other utilities and operating costs and expenses incurred in connection with the Mortgaged Property.

**1.5.** **Liens**. To the extent required under the Credit Agreement, the Mortgagor shall pay, from time to time when the same shall become due, all lawful claims and demands of mechanics, materialmen, laborers, and others which, if unpaid, might result in, or permit the creation of a lien on the Mortgaged Property, or any part thereof, or on the revenues, rents, issues, income and profits arising therefrom, and in general will do or cause to be done everything necessary so that the lien of this Mortgage shall be fully preserved, at the cost of the Mortgagor, without expense to the Mortgagee. The Mortgagor shall not do, or permit to be done, anything that may in anyway impair the value of the Mortgaged Property, or weaken, diminish, or impair the security of this Mortgage. Should any fixture be installed to the Mortgaged Property from or after the date hereof, the lien of this Mortgage shall immediately attach to said fixture and shall be prior and superior to all other liens or claims. The Mortgagor will promptly perform and observe, or cause to be performed or observed, all of the terms, covenants, and conditions of all Permitted Encumbrances, as set forth in Exhibit B attached hereto, the noncompliance with which may affect the security of this Mortgage, or may impose duty or obligation upon the Mortgagor or any sublessee or occupant of the Mortgaged Property or any part thereof, and the Mortgagor shall do or cause to be done all things necessary to preserve intact and unimpaired all easements, appurtenances, and other interests and rights in favor of or constituting any portion of the Mortgaged Property.

**1.6.** **Real Property Taxes and Assessments**. The Mortgagor agrees to pay all real property taxes, assessments, and other similar charges made against the Mortgaged Property in accordance with the terms and conditions of the Credit Agreement.

**1.7.** **Mortgage Taxation**. In the event of a court decree or an enactment after the date hereof by any legislative authority of any law imposing upon a mortgagee the payment of the whole or any part of the amounts herein required to be paid by the Mortgagor, or changing in any way the laws relating to the taxation of mortgages or debts secured by mortgages or a mortgagee's interest in the Mortgaged Property, so as to impose such imposition on the Mortgagee or on the interest of the Mortgagee in the Mortgaged Property, then, in any such event, the Mortgagor shall bear and pay the full amount of such imposition, provided that if for any reason payment by the Mortgagor of any such imposition would be unlawful, or if the payment thereof would constitute usury or render the Secured Indebtedness wholly or partially usurious, the Mortgagee shall pay that amount or portion of such impositions as renders the Indebtedness secured hereby unlawful or usurious, in which event the Mortgagor shall concurrently therewith pay the remaining lawful and nonusurious portion or balance of said imposition.

**1.8.** **Compliance with Laws**. The Mortgagor shall comply with all present and future laws, ordinances, regulations, covenants, conditions and restrictions affecting the Mortgaged Property or the operation thereof, and shall pay all fees or charges of any kind in connection therewith to the extent required under the Credit Agreement.

5

**1.9.** **Permitted Contests**. Notwithstanding any provision of this Mortgage to the contrary, the Mortgagor shall not be required to: (a) pay any charge referred to Section 1.4 hereof; (b) discharge or remove any lien, encumbrance or charge referred to in Section 1.5 hereof; (c) pay the tax, assessment or other charged referred to in Sections 1.6 and 1.7 hereof, or (d) comply with any statute, law, rule, regulation or ordinance referred to in Section 1.8 hereof, so long as the Mortgagor shall in good faith contest the same or the validity thereof by appropriate legal proceedings which shall operate to prevent the collection of the imposition so contested, or the sale, forfeiture or loss of the Mortgaged Property, or any part thereof to satisfy the same, and further provided that the Mortgagor shall, prior to the date such imposition is due and payable, have given the Mortgagee such reasonable security as may be reasonably demanded by the Mortgagee to ensure such payments and prevent any sale or forfeiture of the Mortgaged Property by reason of such nonpayment. Any such contest shall be prosecuted with due diligence and the Mortgagor shall, after final determination thereof, promptly pay the amount of any such imposition so determined, together with all interest and penalties which may be payable in connection therewith. Notwithstanding the provisions of this Section 1.9, the Mortgagor shall (and if the Mortgagor shall fail so to do, the Mortgagee may but shall not be required to) pay any such imposition notwithstanding such contest if, in the reasonable opinion of the Mortgagee, the Mortgaged Property shall be in jeopardy or in danger of being forfeited or foreclosed.

**1.10.** **Duty to Defend**. The Mortgagor shall promptly notify the Mortgagee of and appear in and defend any suit, action or proceeding that affects the value of the Mortgaged Property, the Secured Indebtedness, or any right or interest of the Mortgagee under this Mortgage. Mortgagee may, at its option, elect to appear in or defend any such action or proceeding, and the Mortgagor agrees to indemnify and reimburse the Mortgagee from any and all loss, damage, reasonable expense or cost arising out of, or incurred in connection with any such suit, action or proceeding, including, but not limited to, costs of evidence of title and reasonable attorneys' fees except for losses, damages or liabilities to the extent caused by the gross negligence or willful misconduct of Mortgagee.

**1.11.** **Insurance Coverage**. The Mortgagor shall obtain and keep in full force and effect during the term of this Mortgage at its sole cost and expense, the following policies of insurance:

    a.    Property insurance, in broad form covering causes of loss customarily covered in the industry of Mortgagor's business, in the amount of not less than the full insurable value or full replacement cost, without deduction for depreciation, of the improvements on the Real Property, whichever is greater, covering all buildings, structures, fixtures, personal property and other improvements now existing or hereafter erected or placed on the Real Property, which insurance shall at all times be in an amount at least equal to the unpaid Secured Indebtedness at any given time.

    b.    If the Mortgaged Property is now or hereafter located in a flood plain as defined by the Federal Insurance Administration, the Mortgagor shall obtain flood insurance in the maximum obtainable amount.

*Execution Copy*

c.    If steam boilers or similar equipment for the generation of steam are located in, on or about the Mortgaged Property, the Mortgagor shall maintain insurance against loss or damage by explosion, rupture or bursting of such equipment and appurtenances thereto, without a co-insurance clause, in an amount satisfactory to the Mortgagee.

d.    Comprehensive general public liability insurance covering the legal liability of the Mortgagor against claims for bodily injury, death or property damage occurring on, in or about the Mortgaged Property in such amounts and with such limits as the Mortgagee may reasonably require.

All such insurance shall be written on forms and with companies satisfactory to the Mortgagee, shall name as the insured parties the Mortgagor and the Mortgagee as their interests may appear, shall be in amounts sufficient to prevent the Mortgagor from becoming a co-insurer of any loss thereunder, shall name the Mortgagee as an additional insured and loss payee, shall bear a satisfactory mortgagee clause in favor of the Mortgagee, and shall contain an agreement of the insurer that the coverage shall not be terminated or materially modified without providing to the Mortgagee thirty (30) days' prior written notice of such termination or modification. All required policies of insurance or acceptable certificates thereof, together with evidence of the payment of current premiums therefor shall be delivered to the Mortgagee. The Mortgagor shall, within thirty (30) days prior to the expiration of any such policy, deliver other original policies or certificates of the insurer evidencing the renewal of such insurance together with evidence of the payment of current premiums therefor. In the event of a foreclosure of this Mortgage or any acquisition of the Mortgaged Property by the Mortgagee, all such policies and any proceeds payable therefrom, whether payable before or after a foreclosure sale, or during the period of redemption, if any, shall become the absolute property of the Mortgagee to be utilized at its discretion. In the event of foreclosure or the failure to obtain and keep any required insurance, the Mortgagor empowers the Mortgagee to effect insurance upon the Mortgaged Property at the Mortgagor's expense and for the benefit of the Mortgagee in the amounts and types aforesaid for a period of time covering the time of redemption from a foreclosure sale, and if necessary therefore, to cancel any or all existing insurance policies. The Mortgagor agrees to furnish the Mortgagee with copies of all inspection reports and insurance recommendations received by the Mortgagor from any insurer.

**1.12.    Notice of Damage**. The Mortgagor shall give the Mortgagee prompt notice of any material damage to or destruction of the Mortgaged Property and authorize the Mortgagee to make proof of loss if not made promptly by the Mortgagor. In case of loss covered by policies of insurance held (whether before or after foreclosure sale), the Mortgagee is hereby authorized at its option and without the consent of the Mortgagor to settle, adjust and compromise any claim arising out of such policies, and to collect and receive the proceeds payable therefrom. Any expense incurred by the Mortgagee in the adjustment and collection of insurance proceeds (including the cost of any independent appraisal of the loss or damage on behalf of the Mortgagee) shall be reimbursed to the Mortgagee first out of any proceeds. Notwithstanding the foregoing, provided no "Event of Default" has occurred and is continuing, Mortgagor shall have the sole right to settle,

7

adjust and compromise any claim reasonably estimated to be under $1,000,000 or less. The proceeds or any part thereof shall be applied, at the Mortgagor's option to the repair or replacement of the assets subject to such casualty or, upon or in reduction of the Secured Indebtedness or to the restoration or repair of the Mortgaged Property.

**1.13.** __Condemnation__. The Mortgagor shall give the Mortgagee prompt notice of any action, actual or threatened, in condemnation or eminent domain. The Mortgagor may in good faith contest any condemnation or eminent domain action by appropriate legal action or proceedings. Any such contest shall be prosecuted with due diligence. The Mortgagor hereby irrevocably assigns, transfers, and sets over to the Mortgagee, to the extent of the remaining unpaid Secured Indebtedness, the entire proceeds of any award, payment or claim for damages for all or any part of the Mortgaged Property taken or damaged, whether temporary or permanent, under the power of eminent domain or condemnation, and authorizes the Mortgagee to intervene in any such action in the name of the Mortgagor and to collect and receive from the condemning authorities and give proper receipts and acquaintances for such proceeds. Any expenses incurred by the Mortgagee in intervening in such action or collecting such proceeds shall be reimbursed to the Mortgagee first out of the proceeds. So long as no Event of Default exists, the proceeds or any part thereof shall be applied upon or in reduction of the Secured Indebtedness then most remotely to be paid, whether due or not, without the application of any prepayment premium, or to the restoration or repair of the Mortgaged Property, the choice of application to be solely at the discretion of the Mortgagee.

**1.14.** __Restoration of Mortgaged Property After Loss__. Should any insurance or condemnation proceeds be applied to the restoration or repair of the Mortgaged Property, the restoration or repair shall be done under the supervision of an architect reasonably acceptable to the Mortgagee, pursuant to plans and specifications reasonably approved by the Mortgagee, and in accordance in all material respects with all applicable building laws, regulations and ordinances, including, but not limited to, the Accessibility Guidelines set forth in the Americans with Disabilities Act. In such case, the proceeds shall be held by the Mortgagee for such purposes and will be disbursed by the Mortgagee to defray the costs of such restoration or repair under such safeguards and controls as the Mortgagee may reasonably require to assure completion in accordance with the approved plans and specifications and free of Liens, other than Permitted Liens. Any surplus which may remain after payment of all costs of restoration or repair may, at the option of the Mortgagee, be applied on account of the Secured Indebtedness then most remotely to be paid, whether due or not, without application of any prepayment premium, or shall be returned to the Mortgagor as its interest may appear, the choice of application to be solely at the discretion of the Mortgagee.

**1.15.** __Environmental Compliance.__ Mortgagor shall comply with all applicable Environmental Laws as required in the Credit Agreement, the Environmental Indemnity Agreement, and the other Loan Documents.

**1.16.** __Financial and Operating Statements.__ Mortgagor shall provide all Financial Statements and operating statements as required in the Credit Agreement.

*Execution Copy*

**1.17.   Mortgagee's Right of Entry**.  The Mortgagor shall permit the Mortgagee or its authorized representatives to enter the Mortgaged Property on the terms and conditions set forth in the Credit Agreement.

**1.18.   Due on Sale**.  Mortgagor shall not voluntarily or involuntarily sell, convey, transfer, further mortgage, encumber, or dispose of the Mortgaged Property, or any part thereof, or any interest therein, legal or equitable, or agree to do so, without first obtaining the written consent of the Mortgagee.  The Mortgagee's consent to any one transaction shall not be deemed to be a waiver of the requirement to receive the Mortgagee's consent to future or successive transactions.

**1.19.   Mortgagee's Right to Cure**.  If the Mortgagor shall fail to comply with any of the covenants or obligations of this Mortgage, then the Mortgagee may, but shall not be obligated to, without further demand upon or notice to the Mortgagor, and without waiving or releasing the Mortgagor from any obligation contained in this Mortgage, perform such covenants and agreements, investigate and defend against such action or proceeding, and take such other action as the Mortgagee deems reasonably necessary to protect its interest in the Mortgaged Property or this Mortgage.  Subject to the terms of the Credit Agreement, the Mortgagor agrees to repay upon demand all sums incurred by the Mortgagee in remedying any such failure, together with interest at the Default Rate.  All such sums, together with interest as aforesaid, shall become so much additional Secured Indebtedness, but no such advance shall be deemed to relieve the Mortgagor from any failure hereunder.

**1.20.   Uniform Commercial Code Security Interest**.  This Mortgage shall constitute a security agreement as defined in the Uniform Commercial Code and SHALL BE EFFECTIVE AS A FINANCING STATEMENT FILED AS A FIXTURE FILING which is to be filed in the real estate records of the County where the Mortgaged Property is situated.  The name of the record owner of said real estate is the Mortgagor set forth on page one of this Mortgage.  Information concerning the security interest created by this Mortgage may be obtained from the Mortgagee, as secured party, at its address as set forth on page one of this Mortgage.  The name and address of the Mortgagor, as debtor, and the name and address of the Mortgagee, as secured party, are as set forth on page one of this Mortgage.  This Mortgage covers goods which are, or are to become, "fixtures" as defined in the Uniform Commercial Code.  This Mortgage is sufficient as a financing statement, and as a financing statement it covers goods which are, or are to become, fixtures on the Land.  In addition, the Mortgagor shall execute and deliver to the Mortgagee, upon the Mortgagee's request, any financing statements or amendments thereto or continuation statements thereto that the Mortgagee may require to perfect a security interest in said items or types of property.  The Mortgagor shall pay all costs of filing such instruments.  All references to the Uniform Commercial Code in this Mortgage shall mean the Uniform Commercial Code as in effect in the State of Iowa.

**1.21.   Leases**.  The Mortgagor shall, at its own cost and expense, perform, comply with and discharge all of the obligations of the Mortgagor under all leases and agreements for the use of the Mortgaged Property and use reasonable efforts to enforce or secure the performance of each obligation and undertaking of the respective tenants under such leases and shall appear in and defend, at its own cost and expense, any action or proceeding arising out of or in any manner

9

*Execution Copy*

connected with the Mortgagor's interest in any leases of the Mortgaged Property. The Mortgagor shall permit no surrender nor assignment of any tenant's interest under said leases unless the right to assign or surrender is expressly reserved under the lease, nor receive any installment of rent for more than one (1) month in advance of its due date unless otherwise required pursuant to the terms of the applicable lease, nor execute any mortgage or create or permit a lien which may be or become superior to any such leases, nor permit a subordination of any lease to such mortgage or lien. The Mortgagor shall not materially modify or amend the terms of any such leases, nor borrow against or pledge the rentals from such leases, nor exercise or waive any default of the tenant thereunder without the prior consent of the Mortgagee. The Mortgagor agrees to obtain the Mortgagee's prior written approval before entering into any lease with a term of five (5) years or more. Should the Mortgagor fail to perform, comply with or discharge any material obligations of the Mortgagor under any lease or should the Mortgagee become aware of or be notified by any tenant under any lease of a material failure on the part of the Mortgagor to so perform, comply with or discharge its obligations under said lease, the Mortgagee may, but shall not be obligated to, and without further demand upon or notice to the Mortgagor, and without waiving or releasing the Mortgagor from any obligation in this Mortgage contained, remedy such failure, and the Mortgagor agrees to repay upon demand all sums incurred by the Mortgagee in remedying any such failure together with interest at the Default Rate. All such sums, together with interest as aforesaid, shall become so much additional Secured Indebtedness, but no such advance shall be deemed to relieve the Mortgagor from any Event of Default hereunder.

1.22.   **No Consent**. Nothing contained in this Mortgage shall constitute any consent or request by the Mortgagee, express or implied, for the performance of any labor or services or for the furnishing of any materials or other property in respect of the Mortgaged Property or any part thereof, nor as giving the Mortgagor or any party in interest with the Mortgagor any right, power or authority to contract for or permit the performance of any labor or services or the furnishing of any materials or other property in such fashion as would create any personal liability against the Mortgagee in respect thereof, or would permit the making of any claim that any lien based on the performance of such labor or services or the furnishing of any such materials or other property is prior to the lien of this Mortgage.

1.23.   **Further Assurances**. The Mortgagor shall execute and deliver to the Mortgagee from time to time, on demand, such further instruments, security agreements, financing statements under the Uniform Commercial Code and assurances and do such further acts as Mortgagee may reasonably require to carry out more effectively the purposes of this Mortgage and without limiting the foregoing, to make subject to the lien hereof any property agreed to be subjected hereto or covered by the granting clause hereof, or so intended to be. The Mortgagor shall pay any recording fees, filing fees, mortgage registry taxes, stamp taxes and other charges arising out of such further assurances and instruments in accordance with the terms of the Credit Agreement.

1.24.   **Miscellaneous Rights of Mortgagee**. Without affecting the liability of any party liable for payment of the Secured Indebtedness or the performance of any obligation contained herein, and without affecting the rights of the Mortgagee with respect to any security not expressly released in writing, the Mortgagee may, at any time, and without notice to or the consent of the Mortgagor or any party with an interest in the Mortgaged Property or the Notes (a) release any

10

*Execution Copy*

person or entity liable for payment of all or any part of the Secured Indebtedness or for the performance of any obligation herein, (b) make any agreement extending the time or otherwise altering the terms of payment of all or any part of the Secured Indebtedness or modifying or waiving any obligation, or subordinating, modifying or otherwise dealing with the lien or charge hereof, (c) accept any additional security, (d) release or otherwise deal with any property, real or personal, including any or all of the Mortgaged Property, including making partial releases of the Mortgaged Property, or (e) resort to any security agreements, pledges, contracts of guaranty, assignments of rents and leases or other securities, and exhaust any one or more of said securities and the security hereunder, either concurrently or independently and in such order as it may determine. No act or thing, except full payment of the Secured Indebtedness, which but for this provision could act as a release, termination, satisfaction or impairment of this Mortgage shall in any way release, terminate, satisfy or impair this Mortgage.

**1.25. <u>Other Covenants</u>**. Until this Mortgage is released (or required to be released pursuant to the terms of the Credit Agreement) and to the extent permitted by law, all of the representations, warranties and covenants of Mortgagor in the Credit Agreement, including all applicable cure and grace periods with respect to any failure to comply with the same, are incorporated herein by reference.

## ARTICLE II
## Defaults and Remedies

**2.1. <u>Events of Default</u>**. The occurrence of an Event of Default (as defined in the Credit Agreement) shall constitute an "Event of Default" hereunder.

**2.2. <u>Remedies</u>**. Upon the occurrence and during the continuance of an Event of Default, subject to the terms of the Credit Agreement the Mortgagee may, at its option, and without notice to the Mortgagor, unless otherwise provided herein, exercise any or all of the following rights and remedies, and any other rights and remedies now or then available to it, either hereunder or at law or in equity, including, without limitation, the rights and remedies provided in the assignment of rents contained herein:

        a.     Mortgagee may immediately, and without notice to the Mortgagor, declare the entire unpaid principal balance of the Notes together with all accrued interest thereon to be immediately due and payable and thereupon all such and all other Secured Indebtedness shall be and become immediately due and payable.

        b.     The Mortgagee may foreclose this Mortgage by action, and the Mortgagor hereby authorizes and fully empowers the Mortgagee to do so, with full authority to sell the Mortgaged Property at a Sheriff's Sale upon giving notice of the sale to Mortgagor in the manner required by law, and convey the same to the Purchaser in fee simple all in accordance with and in the manner prescribed by law, and out of the proceeds arising from sale and foreclosure to retain the principal and interest due on the Notes and the

*Execution Copy*

Secured Indebtedness together with all such sums of money as the Mortgagee shall have expended or advanced pursuant to this Mortgage or pursuant to statute together with interest thereon as herein provided and all costs and expenses of such foreclosure, including lawful, reasonable attorneys' fees, with the balance, if any, to be paid to the persons entitled thereto by law.

c.      The Mortgagee may collect, receive, and retain all rents, income, and profits (the "Rents") from the Mortgaged Property in accordance with applicable law, either through the appointment of a receiver or by self-help and without appointment of a receiver. The Mortgagee shall be entitled as a matter of right and without regard to the solvency or insolvency of the Mortgagor, or waste of the Mortgaged Property or adequacy of the security of the Mortgaged Property, to apply for the appointment of a receiver in accordance with applicable law; and Mortgagor does hereby irrevocably consent to such appointment. The Rents collected in accordance with this Mortgage, whether collected by a receiver appointed in accordance with applicable law or collected directly by the Mortgagee exercising self-help, shall be applied in such order as mandated by applicable Minnesota law, and to the extent not specifically covered under Iowa law, in the sole discretion of the Mortgagee according to the terms of the Credit Agreement. Nothing contained in this Mortgage and no actions taken pursuant to this Mortgage shall be construed as constituting the Mortgagee a mortgagee in possession.

d.      In addition to the rights available to a mortgagee of real property, the Mortgagee shall also have all the rights, remedies and recourse available to a secured party under the Uniform Commercial Code, including without limitation the right to proceed under the provisions of the Uniform Commercial Code governing default as to any personal property which may be included in the Mortgaged Property or which may be deemed nonrealty in a foreclosure of this Mortgage or to proceed as to such personal property in accordance with the procedures and remedies available pursuant to a foreclosure of real estate.

2.3     **Redemption**. It is agreed that if this Mortgage covers less than ten (10) acres of land, and in the event of the foreclosure of this Mortgage and sale of the property by sheriff's sale in such foreclosure proceedings, the time of one year for redemption from said sale provided by the statues of the State of Iowa shall be reduced to six (6) months provided the Mortgagee, in such action files an election to waive any deficiency judgment against Mortgagor which may arise out of the foreclosure proceedings; all to be consistent with the provisions of Chapter 628 of the Iowa Code. If the redemption period is so reduced, for the first three (3) months after sale such right of redemption shall be exclusive to the Mortgagor, and the time periods in Sections 628.5, 628.15 and 628.16 of the Iowa Code shall be reduced to four (4) months.

12

*Execution Copy*

It is further agreed that the period of redemption after a foreclosure of this Mortgage shall be reduced to sixty (60) days if all of the three following contingencies develop: (1) The real estate is less than ten (10) acres in size; (2) the Court finds affirmatively that the said real estate has been abandoned by the owners and those persons personally liable under this Mortgage at the time of such foreclosure; and (3) Mortgagee in such action files an election to waive any deficiency judgment against Mortgagor or its successors in interest in such action. If the redemption period is so reduced, Mortgagor or its successors in interest or the owner shall have the exclusive right to redeem for the first thirty (30) days after such sale, and the time provided for redemption by creditors as provided in Sections 628.5, 628.15 and 628.16 of the Iowa Code shall be reduced to forty (40) days. Entry of appearance by pleading or docket entry by or on behalf of Mortgagor shall be a presumption that the property is not abandoned. Any such redemption period shall be consistent with all of the provisions of Chapter 628 of the Iowa Code. This paragraph shall not be construed to limit or otherwise affect any other redemption provisions contained in Chapter 628 of the Iowa Code.

## ARTICLE III
### Miscellaneous

**3.1.    Mortgagor's Acknowledgment of Remedies**.  SUBJECT TO THE TERMS OF THE CREDIT AGREEMENT, UPON THE OCCURRENCE AND DURING THE CONTINUANCE OF AN EVENT OF DEFAULT, THE MORTGAGOR HEREBY CONSENTS AND AGREES TO THE FORECLOSURE AND SALE OF THE MORTGAGED PROPERTY BY ACTION PURSUANT TO IOWA CODE CHAPTER 654 (OR PURSUANT TO ANY SIMILAR OR REPLACEMENT STATUTES HEREAFTER ENACTED); AND EXCEPT AS MAY BE PROVIDED IN SAID STATUTES EXPRESSLY WAIVES ANY AND ALL RIGHTS TO A PRIOR HEARING OF ANY TYPE IN CONNECTION WITH THE SALE OF THE MORTGAGED PROPERTY.  Notwithstanding the foregoing provision, the Mortgagor's foregoing acknowledgment does not constitute a waiver of the Mortgagor's defenses to the foreclosure.  The Mortgagor further understands that upon the occurrence and during the continuance of an Event of Default, the Mortgagee may also elect its rights under the Uniform Commercial Code and take possession of the Personal Property (as defined in this Mortgage) and dispose of the same by sale or otherwise in one or more parcels provided that at least ten (10) days' prior notice of such disposition must be given, all as provided for by the Uniform Commercial Code, as hereafter amended or by any similar or replacement statute hereafter enacted. THE MORTGAGOR ACKNOWLEDGES THAT IT IS REPRESENTED BY LEGAL COUNSEL; THAT BEFORE SIGNING THIS DOCUMENT THIS PARAGRAPH AND THE MORTGAGOR'S RIGHTS WERE FULLY EXPLAINED BY SUCH COUNSEL AND THAT THE MORTGAGOR UNDERSTANDS THE NATURE AND EXTENT OF THE RIGHTS WAIVED HEREBY AND THE EFFECT OF SUCH WAIVER.

**3.2.    Continued Priority**.  Any agreement hereafter made by the Mortgagor and the Mortgagee pursuant to this Mortgage shall be superior to the rights of the holder of any intervening lien or encumbrance.

CORE/3508725.0022/150594517.4

*Execution Copy*

**3.3.    Cumulative Rights.**  Each right, power or remedy herein conferred upon the Mortgagee is cumulative and in addition to every other right, power or remedy, express or implied, now or hereafter arising, available to the Mortgagee, at law or in equity, or under the Uniform Commercial Code or other law, or under any other Loan Document, and each and every right, power and remedy herein set forth or otherwise so existing may be exercised from time to time as often and in such order as may be deemed expedient by the Mortgagee and shall not be a waiver of the right to exercise at any time thereafter any other right, power or remedy.  No delay or omission by the Mortgagee in the exercise of any right, power or remedy arising hereunder or arising otherwise shall impair any such right, power or remedy or the right of the Mortgagee to resort thereto at a later date or be construed to be a waiver of any Event of Default under this Mortgage.

**3.4.    Waiver.**  The Mortgagor hereby waives to the full extent lawfully allowed the benefit of any homestead, appraisement, evaluation, stay and extension laws now or hereafter in force.  The Mortgagor hereby waives any rights available with respect to marshaling of assets so as to require the separate sales of any portion of the Mortgaged Property, or as to require the Mortgagee or any other person to exhaust its remedies against a specific portion of the Mortgaged Property before proceeding against the other and does hereby expressly consent to and authorize the sale of the Mortgaged Property or any part thereof as a single unit or parcel.

**3.5.    Satisfaction of Mortgage.**  When all Secured Indebtedness has been paid or if otherwise required to be released pursuant to the terms of the Credit Agreement, this Mortgage and all assignments herein contained shall be void and this Mortgage shall be satisfied and released by the Mortgagee at the cost and expense of the Mortgagor.

**3.6.    Governing Law.**  THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF IOWA (WITHOUT REFERENCE TO THE CHOICE OF LAW PRINCIPLES THEREOF).

**3.7.    Binding Effect.**  This Mortgage and each and every covenant, agreement and other provision hereof shall be binding upon the Mortgagor and its successors and assigns including without limitation each and every from time to time record owner of the Mortgaged Property and any other person having an interest therein, shall run with the land and shall inure to the benefit of the Mortgagee and its successors and assigns.  As used herein the words "successors and assigns" shall also be deemed to include the heirs, representatives, administrators and executors of any natural person who is a party to this Mortgage.

**3.8.    Severability and Survival.**  The unenforceability or invalidity of any provisions hereof shall not render any other provision, or provisions herein contained unenforceable or invalid.  The foreclosure of this Mortgage will not affect or limit any remedy of the Mortgagee on account of any breach by the Mortgagor of the terms of this Mortgage occurring prior to such foreclosure, except to the extent of the amount bid at foreclosure.

**3.9.    Captions.**  The captions and headings of the various sections of this Mortgage are for convenience only and are not to be construed as confining or limiting in any way the scope or

14

*Execution Copy*

intent of the provisions hereof.  Whenever the context requires or permits the singular shall include the plural, the plural shall include the singular and the masculine, feminine and neuter shall be freely interchangeable.

**3.10.**   **Notices**.  Any notice which any party hereto may desire or may be required to give to any other party shall be in accordance with the notice provisions set forth in the Credit Agreement.

**3.11.**   **Credit Agreement**.  Notwithstanding anything in this Mortgage to the contrary, if any conflict or inconsistency exists between this Mortgage and the Credit Agreement, the Credit Agreement shall govern and control.

THE MORTGAGOR REPRESENTS, CERTIFIES, WARRANTS AND AGREES THAT THE MORTGAGOR HAS READ THIS MORTGAGE AND UNDERSTANDS ALL OF THE PROVISIONS OF THIS MORTGAGE.  THE MORTGAGOR ALSO AGREES THAT THE MORTGAGEE'S COMPLIANCE WITH THE EXPRESS PROVISIONS OF THIS MORTGAGE SHALL CONSTITUTE GOOD FAITH AND SHALL BE CONSIDERED REASONABLE FOR ALL PURPOSES.

THE UNDERSIGNED UNDERSTANDS THAT HOMESTEAD PROPERTY IS IN MANY CASES PROTECTED FROM THE CLAIMS OF CREDITORS AND EXEMPT FROM JUDICIAL SALE; AND THAT BY SIGNING THIS MORTGAGE THE UNDERSIGNED VOLUNTARILY GIVES UP THE UNDERSIGNED'S RIGHTS TO THIS PROTECTION FOR THIS MORTGAGED PROPERTY WITH RESPECT TO CLAIMS BASED UPON THIS MORTGAGE.

**[Remainder of page intentionally blank. Signature page immediately follows.]**

15

**IN WITNESS WHEREOF**, the undersigned has executed this Mortgage as of the day and year first above written.

MORTGAGOR:

**PIPELINE FOODS, LLC**, a Delaware limited liability company

By: Eric Jackson
Its:  Chief Executive Officer

STATE OF _____MN_____ )
                                              )ss.
COUNTY OF _Anoka_ )

On this __21__ day of _February_, 2019, before me the undersigned, a Notary Public in and for the said County and State, personally appeared _Eric Jackson_ being the ___CEO___ of PIPELINE FOODS, LLC a Delaware limited liability company, who is personally known to me to be the identical person whose name is affixed to the foregoing Mortgage and acknowledged the execution thereof to be his voluntary act and deed as such officer and the voluntary act and deed of said company.



Notary Public

THIS INSTRUMENT WAS DRAFTED BY:
Stinson Leonard Street
Adam M. Nathe
50 South Sixth Street
Suite 2600
Minneapolis, MN 55402

ANDREA J BILLADEAU
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2023

[Signature page to Mortgage, Security Agreement, Assignment of Leases and Rents, and Fixture Financing Statement]

16

*Execution Copy*

**EXHIBIT A**

**LEGAL DESCRIPTION**

Lot 1, except North 32 feet thereof, SE 1/4SW1/4NE1/4 of Section 22, Township 99, Range 11, Howard County, Iowa.

17

**EXHIBIT B**
**PERMITTED ENCUMBRANCES**

1.      Easement for water line and related purposes in favor of City of Cresco dated December 12, 1973, filed December 18, 1973 in Book 73 Page 194.

2.      Terms and conditions of Agreement with Howard County dated September 18 1995, filed September 26, 1995 in Book 109 Page 116.

3.      Easements for sanitary sewer, storm sewer and drain tile lines and related purposes in favor of City of Cresco dated August 30, 1983, filed September 1, 1983 in Book 87 Page 367.

4.      Easements and rights in favor of Interstate Power Company as contained in Electric Line Easement dated November 24, 1992, filed December 8, 1992 in Book 103 Page 446.