# EXHIBIT "C"



268679   Page 1 of 31
3/1/2019
Burke County Recorder

$93.00

268679
STATE OF NORTH DAKOTA  BURKE COUNTY
I hereby certify that this instrument was filed for record
on 3/1/2019 @ 12:53 PM
Lynette Nelson, County Recorder
By

# THIRD PARTY MORTGAGE
## AND
## ASSIGNMENT OF LEASES AND RENTS
## AND
## FIXTURE FINANCING STATEMENT

THIS MORTGAGE is made and delivered as of February 22, 2019, by PIPELINE FOODS REAL ESTATE HOLDING COMPANY, LLC, a Delaware limited liability company (hereinafter referred to as the "**Mortgagor**"), for the benefit of COMPEER FINANCIAL, PCA, a federally chartered instrumentality of the United States (hereinafter referred to as the "**Mortgagee**"), as administrative agent for the benefit of the Lenders under the Credit Agreement (as defined below).

WITNESSETH, that pursuant to that certain Credit Agreement dated as of February 22, 2019, among PIPELINE FOODS, LLC, a Delaware limited liability company ("**Borrower**"), the Mortgagee, as administrative agent, and the commercial, banking or financial institutions whose signatures appear on the signature pages thereof or which hereafter become parties thereto (the "**Lenders**") (such agreement, as amended, restated, supplemented or otherwise modified from time to time, the "**Credit Agreement**"), the Lenders have agree to make certain loans to the Borrower in an aggregate principal amount not to exceed Twenty-six Million and No/100 Dollars ($26,000,000.00). Capitalized terms used herein and not otherwise defined shall have the meanings ascribed thereto in the Credit Agreement (or, to the extent, noted as also used in the Credit Agreement, dated April 3, 2018, by and between the Mortgagor and Compeer Financial, FLCA (the "**Mortgagor/Compeer Credit Agreement**").

WITNESSETH, that this Mortgage is being made and given by Mortgagor as an accommodation and as additional security for Borrower's obligations to the Mortgagee under the Credit Agreement and other Loan Documents (as defined in the Credit Agreement), and is given to secure the payment and performance of Borrower's obligations to the Lenders thereunder.

WITNESSETH, that Mortgagor is an affiliate of the Borrower, due to common ownership or control, and as such will directly and indirectly benefit from the Lenders extending credit to the Borrower. Mortgagor acknowledges and agrees that it has received due and adequate consideration for the execution and delivery of this Mortgage and will not contest the enforceability or validity of this Mortgage due to lack of consideration or any other legal or equitable defense.

CORE/3508725.0022/150782438.1

WITNESSETH, that Mortgagor, in consideration of the Indebtedness (hereinafter described) and the sums advanced to Mortgagor in hand paid by Mortgagee, receipt whereof is hereby acknowledged, does hereby MORTGAGE, GRANT, BARGAIN, SELL AND CONVEY unto Mortgagee, its successors and assigns, forever, AND GRANTS TO MORTGAGEE A SECURITY INTEREST IN the following properties to secure payment of the Note (as hereinafter defined) and all amounts owing under the Note and Credit Agreement and any documents related thereto, including, without limitation, any documents securing the Note (all of the following being hereafter collectively referred to as the **"Premises"**):

GRANTING CLAUSE A:
REAL PROPERTY

All the tracts or parcels of real property lying and being in the County of Burke, State of North Dakota, all as more fully described in <u>Exhibit "A"</u> attached hereto and made a part hereof, together with all the estates and rights in and to the real property, water, mineral or oil rights and in and to lands lying in streets, alleys and roads or gores of land adjoining the real property and all buildings, structures, improvements, fixtures and annexations, access rights, easements, rights of way or use, servitudes, licenses, tenements, hereditaments and appurtenances now or hereafter belonging or pertaining to the real property and all proceeds and products derived therefrom whether now owned or hereafter acquired; and

GRANTING CLAUSE B:
IMPROVEMENTS, FIXTURES, EQUIPMENT
AND PERSONAL PROPERTY

All buildings, equipment (including Mortgagor's interest in any lease of such equipment), fixtures, improvements, building supplies and materials and personal property owned by Mortgagor now or hereafter attached to, located in, placed in or necessary to the use, operation or maintenance of the improvements on the Premises including, but without being limited to, all machinery, fittings, fixtures, apparatus, equipment or articles used to supply heating, gas, electricity, air conditioning, water, light, waste disposal, power, refrigeration, ventilation, and fire and sprinkler protection, as well as all elevators, escalators, overhead cranes, hoists and assists, and the like, and all furnishings, supplies, draperies, maintenance and repair equipment, window and structural cleaning rigs and equipment, floor coverings, appliances, screens, storm windows, blinds, awnings, shrubbery and plants (it being understood that the enumeration of specific articles of property shall in no way be held to exclude items of property not specifically enumerated), as well as renewals, replacements, proceeds, additions, accessories, increases, parts, fittings, insurance payments, awards and substitutes thereof, together with all interest of Mortgagor in any such items hereafter acquired, and all personal property which by the terms of any lease shall become the property of Mortgagor at the termination of such lease, all of which personal property mentioned herein shall be deemed fixtures and accessory to the freehold and a part of the realty and not severable in whole or in part without material injury to the Premises, but excluding therefrom the removable personal property owned by tenants in the Premises; and

GRANTING CLAUSE C:
RENTS, LEASES AND PROFITS

All rents, issues, income, revenue, receipts, fees, and profits now due or which may hereafter become due under or by virtue of and together with all right, title and interest of Mortgagor in and to any lease, license, sublease, contract or other kind of occupancy agreement, whether written or verbal, for the use or occupancy of the Premises or any part thereof together with all security therefor and all monies payable thereunder, including, without limitation, tenant security deposits, and all books and records which contain information pertaining to payments made thereunder and security therefor, subject, however, to the conditional permission herein given to Mortgagor to collect the rents, income and other normal income benefits arising under any agreements. Mortgagee shall have the right, not as a limitation or condition hereof but as a personal covenant available only to Mortgagee, at any time and from time to time, to notify any lessee of the rights of Mortgagee hereunder; and

Together with all right, title and interest of Mortgagor in and to any and all contracts for sale and purchase of all or any part of the property described in Granting Clauses (A), (B) and (C) hereof, and any down payments, earnest money deposits or other sums paid or deposited in connection therewith; and

GRANTING CLAUSE D:
JUDGMENTS, CONDEMNATION AWARDS,
INSURANCE PROCEEDS,
AND OTHER RIGHTS

All awards, compensation or settlement proceeds made by any governmental or other lawful authorities for the threatened or actual taking or damaging by eminent domain of the whole or any part of the Premises, including any awards for a temporary taking, change of grade of streets or taking of access, together with all insurance proceeds resulting from a casualty to any portion of the Premises; all rights and interests of Mortgagor against others, including adjoining property owners, arising out of damage to the property including damage due to environmental injury or release of hazardous substances; and

GRANTING CLAUSE E:
LICENSES, PERMITS, EQUIPMENT LEASES
AND SERVICE AGREEMENTS

All right, title and interest of Mortgagor in and to any licenses, permits, regulatory approvals, government authorizations, franchise agreements and equipment or chattel leases, service contracts or agreements, tradenames, any and all other intangibles, including general intangibles, and all proceeds therefrom, arising from, issued in connection with or in any way related to the use, occupancy, operation, maintenance or security of the Premises, together with all replacements, additions, substitutions and renewals thereof, which may be assigned pursuant to agreement or law; and

GRANTING CLAUSE F:
PROCEEDS

All sale proceeds, refinancing proceeds or other proceeds, including deposits and down payments derived from or relating to the property described in A through E above.

AND MORTGAGOR for itself, and its administrators, personal representatives, successors and assigns, covenants with Mortgagee, its successors and assigns, that Mortgagor is lawfully seized of the Premises and has good right to sell and convey the same; that the Premises are free from all encumbrances except as may be set forth in Schedule B of that certain Mortgagee's Policy of Title Insurance issued to Mortgagee in connection herewith, certain Permitted Leases, other Permitted Liens, the Project Lease (as defined in the Mortgagor/Compeer Credit Agreement, the Farm Lease Agreement, dated November 30, 2017, by and between Mortgagor and Dan Folske, and other Permitted Liens (as that term is defined under the Mortgagor/Compeer Credit Agreement; that Mortgagee, its successors and assigns, shall quietly enjoy and possess the Premises; and that Mortgagor, its successors and assigns, will WARRANT AND DEFEND the title to the same against all lawful claims not specifically excepted in this Mortgage.

TO HAVE AND TO HOLD THE SAME, together with the possession and right of possession of the Premises, unto the Mortgagee, its successors and assigns, forever.

PROVIDED NEVERTHELESS, that if Borrower shall pay to Mortgagee, its successors or assigns, the sum of $26,000,000, according to the terms of those certain Term Notes (as defined in the Credit Agreement) in said aggregate principal amount dated of even date herewith executed by Borrower and payable to Lenders (as amended, restated, supplemented or otherwise modified from time to time, the **"Note"**), the terms and conditions of which are incorporated herein by reference and made a part hereof, together with any extensions or renewals thereof, due and payable with interest thereon as provided therein and in the Credit Agreement, the balance of said principal sum together with interest thereon being due and payable in any event on February 22, 2025, and shall repay to Mortgagee, its successors or assigns, at the times demanded and with interest thereon at the rates specified in the Credit Agreement, all Loan Obligations, including, without limitation, all sums advanced in protecting the lien of this Mortgage, in payment of taxes, assessments, charges, claims, fines, and impositions on the Premises, in payment of insurance premiums covering improvements thereon, in payment of principal and interest on other liens, encumbrances and interests affecting the Premises, in payment of expenses and attorneys' fees herein provided for and all sums advanced for any other purpose authorized herein, in the Credit Agreement or in any other Loan Document (as defined in the Credit Agreement) (the principal balance of the Note, any other Obligations, and all such sums, together with interest thereon, being hereinafter collectively referred to as the **"Indebtedness"**), and shall keep and perform all of the covenants and agreements herein contained, then this Mortgage shall become null and void, and shall be released at Mortgagor's expense.

AND IT IS FURTHER COVENANTED AND AGREED AS FOLLOWS:

## ARTICLE 1.
## GENERAL REPRESENTATIONS AND WARRANTIES

SECTION 1.1 Representations and Warranties.

Mortgagor represents and warrants to Mortgagee, its successors and assigns, that, as of the date hereof:

(a)   There are no (i) bankruptcy proceedings involving Mortgagor, any affiliate of Mortgagor, any member of Mortgagor or any Guarantor, as defined below, and none is contemplated; (ii) dissolution proceedings involving Mortgagor, any affiliate of Mortgagor, any member of Mortgagor or any Guarantor and none is contemplated; (iii) unsatisfied judgments of record against Mortgagor, any affiliate of Mortgagor, any member of Mortgagor or any Guarantor; or (iv) tax liens filed against Mortgagor, any affiliate of Mortgagor, any member of Mortgagor or any Guarantor.

(b)   The Premises are free from any mechanics' or materialmen's liens or claims.

(c)   The Mortgagor has no notice, information or knowledge of any change contemplated in any applicable law, ordinance, regulation or restriction, or any judicial, administrative, governmental or quasi-governmental action, or any action by adjacent land owners, or natural or artificial condition existing upon the Premises which would limit, restrict or prevent the contemplated or intended use and purpose of the Premises.

(d)   There is no pending condemnation or similar proceeding affecting the Premises, or any portion thereof nor, to the best knowledge of the Mortgagor, is any such action being presently contemplated.

(e)   No part of the Premises is being used or will be used principally, or at all, for residential purposes.

(f)   The Premises are undamaged by fire, windstorm or other casualty.

(g)   Neither Mortgagor nor any Guarantor has been the subject of foreclosure or insolvency proceedings.

(h)   Mortgagor has complied with all requirements of the Americans with Disabilities Act, 42 U.S.C. Sections 12101-12213, as the same may be amended from time to time.

(i)   Neither Mortgagor, any affiliate of Mortgagor, any member of Mortgagor nor any Guarantor is or will become a Person described by Section 1 of The Anti-Terrorism Executive Order 13,224 of September 23, 2001 blocking property and prohibiting transactions with Persons who commit, threaten to commit, or support terrorism, 66 Fed. Reg. 49,049 (2001), or described in any rule or regulation implementing the same and, to the best knowledge and belief of the Mortgagor after due and adequate diligence, neither Mortgagor, any affiliate of Mortgagor, any member of Mortgagor nor any Guarantor engages or will engage in any dealings or transactions, or be otherwise associated with, any such Persons.

(j)   Mortgagor, all affiliates of Mortgagor, all members of Mortgagor and all Guarantors are in compliance, and will remain in compliance, with the Uniting

and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (USA PATRIOT ACT).

(k)     Storm and sanitary sewers, water, gas, electrical power, telephone and other public utilities are available for the benefit of the Premises in adequate capacity.

The term "affiliate," as used herein, shall mean as to any person or entity, any other person or entity that, directly or indirectly, is in control of, is controlled by or is under common control with such person or entity or is a director or officer of such person or entity or of an affiliate of such person or entity. As used herein, the term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of management, policies or activities of a person or entity, whether through ownership of voting securities, by contract or otherwise.

SECTION 1.2 Continuing Obligation.

Mortgagor further warrants and represents that all statements made hereunder are true and correct and that all financial statements, data and other information provided to Mortgagee by Mortgagor relating to or provided in connection with this transaction has not and does not contain any statement which, at the time and in the light of the circumstances under which it was made, would be false or misleading with respect to any material fact, or would omit any material fact necessary in order to make any such statement contained therein not false or misleading in any material respect, and since such statement, data or information was provided there has been no material change thereto or to the condition of Mortgagor. Should Mortgagor subsequently obtain knowledge that such representation was or is untrue, Mortgagor shall immediately notify Mortgagee as to the untrue nature of said representation and agrees to take action as may be necessary to cause such representation to become true.

ARTICLE 2.
COVENANTS AND AGREEMENTS

SECTION 2.1 [Reserved].

SECTION 2.2 Maintenance; Repairs.

Mortgagor agrees that it will keep and maintain the Premises in good, first class condition, repair and operating condition free from any waste or misuse, and will comply with all requirements of law, municipal ordinances and regulations, restrictions and covenants affecting the Premises and their use, and will promptly repair or restore any buildings, improvements or structures now or hereafter on the Premises, which may become damaged or destroyed, to their condition prior to any such damage or destruction. Mortgagor further agrees that without the prior written consent of Mortgagee, it will not remove or expand any improvements on the Premises, erect any new improvements or make any material alterations in any improvements which will alter the basic structure, adversely affect the market value or change the existing architectural character of the Premises, except as approved by Mortgagee, and agrees that any other buildings, structures and improvements now or hereafter constructed on or in the Premises or repairs made to the Premises shall be completed in a good and workmanlike manner, in accordance with all

applicable governmental laws, regulations, requirements and permits and in accordance with Project Plans previously delivered to, and approved in advance and in writing by Mortgagee. Mortgagor agrees not to acquiesce in any rezoning classification, modification or restriction affecting the Premises without the written consent of Mortgagee. Mortgagor agrees that it will not abandon or vacate the Premises. Mortgagor agrees that it will provide, improve, grade, surface and thereafter maintain, clean, repair and adequately light all parking areas within the Premises, together with any sidewalks, aisles, streets, driveways, curb cuts and sidewalks and sufficient paved areas for ingress and right-of-way to and from the adjacent public thoroughfare necessary or desirable for the use thereof and maintain all landscaping thereon.

SECTION 2.3 <u>Payment of Operating Costs, Liens, and Indebtedness.</u>

Mortgagor agrees that it will pay, or cause to be paid, all operating costs and expenses of the Premises; keep the Premises free from mechanics' liens, materialmen's liens, judgment liens and other liens, executions, attachments, levies or other Liens (collectively defined herein to include the defined term "Liens" as used in the Credit Agreement and the defined term "Liens" as used in the Mortgagor/Compeer Credit Agreement), except the Permitted Leases (collectively as defined herein to include the defined term "Permitted Leases" as used in the Credit Agreement and leases permitted under the Mortgagor/Compeer Credit Agreement) and the Permitted Liens (collectively defined herein to include the defined term "Permitted Liens" as used in the Credit Agreement and the defined term "Permitted Liens" as used in the Mortgagor/Compeer Credit Agreement); and will pay when due all permitted indebtedness which may be secured by a mortgage, lien or charge on the Premises, whether prior to, subordinate to or of equal priority with the lien hereof, and, upon request, will exhibit to Mortgagee satisfactory evidence of such payment and discharge.

SECTION 2.4 <u>Payment of Impositions.</u>

Mortgagor will pay when due and before any penalty or interest attaches because of delinquency in payment, all taxes, installments of assessments, water charges, sewer charges, and other fees, taxes, charges and assessments of every kind and nature whatsoever assessed or charged against or constituting a lien on the Premises or any interest therein or the Indebtedness (hereinafter collectively referred to as the **"Impositions"**); and will upon demand furnish to Mortgagee proof of the payment of any such Impositions. In the event of a court decree or an enactment after the date hereof by any legislative authority of any law imposing upon a mortgagee the payment of the whole or any part of the Impositions herein required to be paid by Mortgagor, or changing in any way the laws relating to the taxation of mortgages or debts secured by mortgages or a mortgagee's interest in mortgaged premises, so as to impose such Imposition on Mortgagee or on the interest of Mortgagee in the Premises, then, in any such event, Mortgagor shall bear and pay the full amount of such Imposition, provided that if for any reason payment by Mortgagor of any such Imposition would be unlawful, or if the payment thereof would constitute usury or render the Indebtedness wholly or partially usurious, Mortgagee, at its option, may declare the whole sum secured by this Mortgage with interest thereon to be immediately due and payable, or Mortgagee, at its option, may pay that amount or portion of such Imposition as renders the Indebtedness unlawful or usurious, in which event Mortgagor shall concurrently therewith pay the remaining lawful and non-usurious portion or balance of said Imposition.

SECTION 2.5 <u>Contest of Liens and Impositions.</u>

Mortgagor shall not be required to pay, discharge or remove any Liens or Impositions so long as such Liens are Permitted Liens or Mortgagor shall in good faith contest the same or the validity thereof by appropriate legal proceedings which shall operate to prevent the collection of the Liens or Impositions so contested and the sale of the Premises, or any part thereof to satisfy the same, provided that Mortgagor shall, prior to any such contest, have given such security as may be required by Mortgagee to insure such payments and prevent any sale or forfeiture of the Premises by reason of such nonpayment. Any such contest shall be prosecuted in accordance with the laws and rules pertaining to such contests and in all events with due diligence and Mortgagor shall promptly after final determination thereof pay the amount of any such Liens or Impositions so determined, together with all interest and penalties, which may be payable in connection therewith. Notwithstanding the provisions of this Section, Mortgagor shall (and if Mortgagor shall fail so to do, Mortgagee, may but shall not be required to) pay any such Liens or Impositions notwithstanding such contest if in the opinion of Mortgagee, the Premises shall be in jeopardy or in danger of being forfeited or foreclosed.

SECTION 2.6 <u>Protection of Security.</u>

Mortgagor agrees to promptly notify Mortgagee of and appear in and defend any suit, action or proceeding that affects the value of the Premises, the Indebtedness or the rights or interest of Mortgagee hereunder. Mortgagee may elect to appear in or defend any such action or proceeding and Mortgagor agrees to indemnify and reimburse Mortgagee from any and all loss, damage, expense or cost arising out of or incurred in connection with any such suit, action or proceeding, including costs of evidence of title and attorneys' fees.

SECTION 2.7 <u>Additional Assurances.</u>

Mortgagor agrees upon request by Mortgagee to execute and deliver such further instruments, financing statements and/or continuation statements under the Uniform Commercial Code and assurances and will do such further acts as may be necessary or proper to carry out more effectively the purposes of this Mortgage and without limiting the foregoing, to make subject to the lien hereof any property agreed to be subjected hereto or covered by the granting clause hereof, or intended so to be. Mortgagor agrees to pay any recording fees, filing fees, stamp taxes or other charges arising out of or incident to the filing, the issuance and delivery of the Note, the filing or recording of this Mortgage or the delivery and recording of such further assurances and instruments as may be required pursuant to the terms of this Section 2.7.

SECTION 2.8 <u>Due on Sale or Mortgaging, Etc.</u>

In the event that without the written consent of Mortgagee being first obtained: (a) Mortgagor sells, conveys, transfers, further mortgages, changes the form of ownership, or encumbers or disposes of the Premises, or any part thereof, or any interest therein, or agrees so to do; or (b) any member interest in Mortgagor is sold, conveyed, transferred, pledged or encumbered or there is an agreement so to do, except as otherwise permitted under the Mortgagor/Compeer Credit Agreement; such event described in (a) or (b) above is voluntary,

involuntary or by operation of law, then at Mortgagee's sole option, Mortgagee may declare the Indebtedness immediately due and payable in full and call for payment of the same at once.

SECTION 2.9 [Reserved]

SECTION 2.10 Compliance with Americans with Disabilities Act.

Mortgagor covenants and agrees that it will comply with the requirements of the Americans with Disabilities Act, as the same may be amended from time to time, during the entire term of this Mortgage and that it will comply with any requirements established by any federal, state or local governmental authorities having jurisdiction over such matters. All future maintenance, renovation, repair and construction conducted on the Premises shall all be completed in accordance with the Americans with Disabilities Act. Failure to comply with the provisions of the Americans with Disabilities Act shall constitute an Event of Default under the terms of this Mortgage and shall entitle the Mortgagee to exercise all remedies available to it hereunder.

ARTICLE 3.
INSURANCE

SECTION 3.1 Insurance.

The Mortgagor shall obtain and keep in full force and effect, or cause to be obtained and kept in full force and effect, during the term of this Mortgage at its sole cost and expense the following insurance:

(a) All Risk Insurance against loss by fire, lightning and risk customarily covered by standard extended coverage endorsement, including the cost of debris removal, together with a vandalism and malicious mischief endorsement, or all perils endorsements, all in the amount of not less than the full replacement cost of the improvements, pursuant to the appraisal submitted to and approved by the Mortgagee, on the Premises, and together with an inflation-guard endorsement, an agreed-amount endorsement, a replacement cost endorsement and a waiver of subrogation endorsement;

(b) Broad Form Boiler and Machinery Insurance on all equipment and pressure-fired vehicles or apparatus situate on the Premises, and providing for full repair and replacement cost coverage;

(c) To the extent within a flood plain as defined by the Federal Insurance Administration, flood insurance in the maximum amount available at any time during the term of this Mortgage;

(d) Rental Insurance covering risk of loss due to the occurrence of any hazards insured against under the policies required in Subsections (a), (b) and (c) and (d) hereof in an amount equal to: (i) rental for a twelve (12) month period, plus (ii) real estate taxes, special assessments, insurance premiums and other expenses

required to be paid by the tenants under each lease of the Premises for such twelve (12) month period;

(e)     Comprehensive General Public Liability Insurance covering the legal liability of the Mortgagor against claims for bodily injury, death or property damage occurring on, in or about the Premises in (such minimal amounts and with such minimal limits as the Mortgagee may require);

(f)     Sprinkler Insurance, if applicable; Builder's Risk Insurance and Worker's Compensation Insurance during the making of any alterations or improvements to the Premises;

(g)     such other forms of insurance as may be required to be maintained under the terms of the Mortgagor/Compeer Credit Agreement; and

(h)     such other forms of insurance as the Mortgagee may require or as may be required by law.

Such insurance policies shall be written by insurance companies licensed to do business in the State of North Dakota, and otherwise satisfactory to the Mortgagee. Such insurance policies and endorsements shall be manually signed, shall be satisfactory to the Mortgagee, shall name as the insured parties the Mortgagor and the Mortgagee as their interests may appear, shall be in amounts sufficient to prevent the Mortgagor from becoming a co-insurer of any loss thereunder, shall bear a satisfactory mortgagee clause in favor of the Mortgagee with loss proceeds under any such policies to be made payable to the Mortgagee and shall contain such other endorsements as the Mortgagee may require. All required policies of insurance or acceptable certificates thereof, together with evidence of the payment of current premiums therefore, shall be delivered to the Mortgagee and shall provide that the Mortgagee shall receive at least thirty (30) days' advance written notice prior to cancellation, amendment or termination of any such policy of insurance. The Mortgagor shall, within thirty (30) days prior to the expiration of any such policy, deliver other original policies of the insurer evidencing the renewal of such insurance together with evidence of the payment of current premiums therefore. The Mortgagor shall at its expense furnish evidence of the replacement value of the improvements on the Premises in form satisfactory to the Mortgagee on renewal of insurance policies or upon request of the Mortgagee. Insurance coverage must at all times be maintained in proper relationship to such replacement value and must always provide for agreed amount coverage. Failure to maintain proper insurance shall be an Event of Default hereunder. In the event of a foreclosure of this Mortgage or any acquisition of the Premises by the Mortgagee, all such policies and any proceeds payable therefrom, whether payable before or after a foreclosure sale, or during the period of redemption, if any, shall become the absolute property of the Mortgagee to be utilized at its discretion. In the event of foreclosure or the failure to obtain and keep any required insurance, the Mortgagor empowers the Mortgagee to effect insurance upon the Premises at the Mortgagor's expense and for the benefit of the Mortgagee in the amounts and types aforesaid for a period of time covering the time of redemption from foreclosure sale, and if necessary therefore, to cancel any or all existing insurance policies. The Mortgagor agrees to furnish the Mortgagee copies of all inspection reports and insurance recommendations

received by the Mortgagor from any insurer. The Mortgagee makes no representations that the above insurance requirements are adequate protection for a prudent company.

ARTICLE 4.
UNIFORM COMMERCIAL CODE

SECTION 4.1 Security Agreement.

This Mortgage shall constitute a security agreement as defined in the Uniform Commercial Code (hereinafter referred to as the **"Code"**), and, to secure payment of the Indebtedness and all amounts due and owing under the terms of the Note, the Credit Agreement and all other Loan Documents, the Mortgagor hereby grants to the Mortgagee a security interest within the meaning of the Code in favor of the Mortgagee on the Improvements, Fixtures, Equipment and Personal Property, the Rents, Leases and Profits, the Judgments, Condemnation Awards and Insurance Proceeds, the Licenses, Permits, Equipment Leases and Service Agreements, and the Proceeds, and the Construction Contracts, Plans and Specifications and Building Supplies described in Granting Clauses B, C, D, E, F, G, H and I of this Mortgage (hereinafter referred to as the **"Collateral"**).

SECTION 4.2 Fixture Filing.

As to those items of Collateral described in this Mortgage that are, or are to become fixtures related to the real estate mortgaged herein, it is intended as to those items that THIS MORTGAGE SHALL BE EFFECTIVE AS A FINANCING STATEMENT FILED AS A FIXTURE FILING from the date of its filing in the real estate records of the County where the Premises are situate. The name of the record owner of said real estate is the Mortgagor set forth in page one to this Mortgage. Information concerning the security interest created by this instrument may be obtained from the Mortgagee, as secured party, at its address as set forth in Section 10.6 of this Mortgage. The address of the Mortgagor, as debtor, is as set forth in Section 10.6 of this Mortgage. This document covers goods which are or are to become fixtures. Mortgagor is a limited liability company organized under the laws of the State of Delaware. Mortgagor's organizational identification number is 6520496. The real property to which the Collateral relates is described in Exhibit "A" attached hereto.

SECTION 4.3 Representations and Agreements.

(a) The Mortgagor is and will be the true and lawful owner of the Collateral, subject to no liens, charges, security interest and encumbrances other than the lien hereof, the Permitted Leases and the Permitted Liens; (b) the Collateral is to be used by the Mortgagor solely for business purposes being installed upon the Premises for the Mortgagor's own use or as the equipment and furnishings leased or furnished by the Mortgagor, as landlord, to tenants of the Premises; (c) the Collateral will not be removed from the Premises without the consent of the Mortgagee except in accordance with Section 4.4 hereof; (d) unless stated otherwise in this Mortgage the only persons having any interest in the Collateral are the Mortgagor and the Mortgagee and no financing statement covering any such property and any proceeds thereof is on file in any public office except pursuant hereto; (e) the remedies of the Mortgagee hereunder are cumulative and separate, and the exercise of any one or more of the remedies provided for herein or under the Code shall

not be construed as a waiver of any of the other rights of the Mortgagee including having such Collateral deemed part of the realty upon any foreclosure thereof; (f) if notice to any party of the intended disposition of the Collateral is required by law in a particular instance, such notice shall be deemed commercially reasonable if given at least ten (10) days prior to such intended disposition and may be given by advertisement in a newspaper accepted for legal publications either separately or as part of a notice given to foreclose the real property or may be given by private notice if such parties are known to the Mortgagee; (g) the Mortgagor will from time to time provide the Mortgagee on request with itemizations of all such Collateral on the Premises; (h) the filing of a financing statement pursuant to the Code shall never impair the stated intention of this Mortgage that all Improvements, Fixtures, Equipment and Personal Property described in Granting Clause B hereof are, and at all times and for all purposes and in all proceedings both legal or equitable shall be regarded as part of the real property mortgaged hereunder irrespective of whether such item is physically attached to the real property or any such item is referred to or reflected in a financing statement; (i) the Mortgagor will on demand deliver all financing statements that may from time to time be required by the Mortgagee to establish and perfect the priority of the Mortgagee's security interest in such Collateral; (j) the Mortgagor shall give at least thirty (30) days written notice of any proposed change in Mortgagor's name, identity, state of registration for a registered organization, principal place of business, or structure and authorizes Mortgagee to file prior to or concurrently with such change all additional financing statements that the Mortgagee may require to establish and perfect the priority of the Mortgagee's security interest in the Collateral; and (k) by signing this Mortgage, Mortgagor authorizes Mortgagee to file such financing statements, either before, on or after the date hereof, as Mortgagee determines necessary or desirable to perfect the lien of Mortgagee's security interest in the Collateral. Mortgagor further authorizes Mortgagee to file such amendments or continuation statements as Mortgagee determines necessary or desirable from time to time to perfect or continue the lien of Mortgagee's security interest in the Collateral.

SECTION 4.4 Maintenance of Premises.

Subject to the provisions of this Section, in any instance where the Mortgagor in its discretion determines that any item subject to a security interest under this Mortgage has become inadequate, obsolete, worn out, unsuitable, undesirable or unnecessary for the operation of the Premises, the Mortgagor may, at its expense, remove and dispose of it and substitute and install other items of comparable quality to that being replaced, not necessarily having the same function, provided, that such removal and substitution shall not impair the operating utility and unity of the Premises. All substituted items shall become a part of the Premises and subject to the lien of this Mortgage. Any amounts received or allowed the Mortgagor upon the sale or other disposition of the removed items of property shall be applied only against the cost of acquisition and installation of the substituted items. Nothing herein contained shall be construed to prevent any tenant or subtenant from removing from the Premises trade fixtures, furniture and equipment installed by it and removable by tenant under its terms of the lease, on the condition, however, that the tenant or subtenant shall at its own cost and expense, repair any and all damages to the Premises resulting from or caused by the removal thereof.

ARTICLE 5.
APPLICATION OF INSURANCE AND AWARDS

SECTION 5.1 <u>Damage or Destruction of the Premises.</u>

Mortgagor will give Mortgagee prompt notice of damage to or destruction of the Premises, and in case of loss covered by policies of insurance, Mortgagee (whether before or after foreclosure sale) is hereby authorized at its option to settle and adjust any claim arising out of such policies and collect and receipt for the proceeds payable therefrom, provided, if Mortgagor is not in default hereunder, Mortgagor may itself adjust and collect for any losses arising out of a single occurrence aggregating not in excess of Five Thousand and 00/100 Dollars ($5,000.00), except as permitted under the Credit Agreement and the Mortgagor/Compeer Credit Agreement. Any expense incurred by Mortgagee in the adjustment and collection of insurance proceeds (including the cost of any independent appraisal of the loss or damage on behalf of Mortgagee) shall be reimbursed to Mortgagee first out of any such insurance proceeds. The insurance proceeds or any part thereof shall be applied to reduction of the Indebtedness then most remotely to be paid, whether due or not, or to the restoration or repair of the Premises, the choice of application to be solely at the discretion of Mortgagee.

SECTION 5.2 <u>Condemnation.</u>

Mortgagor will give Mortgagee prompt notice of any action, actual or threatened, in Condemnation (as defined herein) or eminent domain and hereby assigns, transfers, and sets over to Mortgagee the entire proceeds of any award or claim for damages for all or any part of the Premises taken or damaged under the power of eminent domain or condemnation (herein referred to as **"Condemnation"**), Mortgagee being hereby authorized to intervene in any such action and to collect and receive from the condemning authorities and give proper receipts and acquittances for such proceeds. Mortgagor will not enter into any agreements with the condemning authority permitting or consenting to the taking of the Premises unless prior written consent of Mortgagee is obtained. Any expenses incurred by Mortgagee in intervening in such action or collecting Condemnation proceeds (including the cost of any independent appraisal) shall be reimbursed to Mortgagee first out of the Condemnation proceeds prior to other payments or disbursements. Mortgagor shall deliver all Condemnation proceeds to Mortgagee within five (5) days of receipt thereof and shall at Mortgagee's request direct the condemning authority to deliver the Condemnation proceeds to Mortgagee. The Condemnation proceeds or any part thereof shall be applied upon or in reduction of the Indebtedness then most remotely to be paid, whether due or not, or to the restoration or repair of the Premises, the choice of application to be solely at the discretion of Mortgagee.

SECTION 5.3 <u>Disbursement of Insurance and Condemnation Proceeds.</u>

Should any insurance or condemnation proceeds be applied to the restoration or repair of the Premises in accordance with this Article 5, the restoration or repair shall be done under the supervision of an architect acceptable to the Mortgagee and pursuant to site and building plans and specifications approved by the Mortgagee. The proceeds shall be held by the Mortgagee for such purposes and will from time to time be disbursed by the Mortgagee through a title company acceptable to the Mortgagee to defray the costs of such restoration or repair under such safeguards and controls as the Mortgagee may require and in accordance with standard construction loan procedures. All costs and expenses associated with the disbursement of such proceeds shall be paid by the Mortgagor. Prior to the payment or application of insurance

proceeds or a condemnation or eminent domain award to the repair or restoration of the improvements upon the Premises, the Mortgagee shall be entitled to receive the following:

(a) Evidence that no Event of Default exists under any of the terms, covenants and conditions of this Mortgage, the Note, the Credit Agreement, or any other Loan Document.

(b) Evidence that all leasing requirements for the Premises as established by the Mortgagee have been met.

(c) Satisfactory proof that such improvements have been fully restored, or that the expenditure of money as may be received from such insurance proceeds or eminent domain award will be sufficient to repair, restore or rebuild the Premises, free and clear of all liens, except the lien of this Mortgage. In the event such insurance proceeds or eminent domain award shall be insufficient to repair, restore or rebuild the said improvements, the Mortgagor or its lessee shall deposit with the Mortgagee, or a title company designated by the Mortgagee, funds equaling such deficiency, which, together with the insurance proceeds or eminent domain award, shall be sufficient to restore, repair and rebuild the Premises.

(d) A statement of the Mortgagor's architect, certifying the extent of the repair and restoration completed to the date thereof, and that such repairs, restoration and rebuilding have been performed to date in conformity with the Project Plans approved by the Mortgagee, together with appropriate evidence of payment for labor or materials furnished to the Premises, and total or partial lien waivers substantiating such payments.

(e) A waiver of subrogation from any insurer who claims that it has no claim as to the Mortgagor or the then owner or other insured under the policy of insurance in question.

(f) Such performance and payment bonds, and such insurance, in such amounts, issued by such company or companies and in such forms and substance, as are required by the Mortgagee.

In the event the Mortgagor shall fail to commence and diligently pursue the restoration, repair or rebuilding of the improvements upon the Premises, then the Mortgagee, at its option, and upon not less than thirty (30) days written notice to the Mortgagor, may commence to restore, repair or rebuild the said improvements for or on behalf of said Mortgagor, and its tenants, and for such purpose, may perform all necessary acts to accomplish such restoration, repair or rebuilding. In the event insurance proceeds or an eminent domain award shall exceed the amount necessary to complete the repair, restoration or the rebuilding of the improvements upon the Premises, such excess may, at the Mortgagee's option, be applied on account of the last maturing installments of the Indebtedness, irrespective of whether such installments are then due and payable, or be returned to the Mortgagor. In the event the Mortgagor shall fail to commence and diligently pursue the restoration, repair or rebuilding of the improvements upon the Premises, and if the Mortgagee does not restore, repair or rebuild the said improvements as herein provided, then the

Mortgagee may, at its option, apply all or any part of the insurance proceeds or condemnation or eminent domain award on account of the last maturing installments of the Indebtedness.

## ARTICLE 6.
## LEASES AND RENTS

### SECTION 6.1 Leases.

The Mortgagor will, at its own cost and expense, perform, comply with and discharge all of the obligations of the Mortgagor under any leases, including, without limitation, the Project Lease, and use its best efforts to enforce or secure the performance of each obligation and undertaking of the respective tenants under any such leases and will appear in and defend, at its own cost and expense, any action or proceeding arising out of or in any manner connected with the Mortgagor's interest in any leases of the Premises. The Mortgagor will not modify, extend, renew, terminate, accept a surrender of, or in any way alter the terms of the leases, nor borrow against, pledge or assign any rentals due under the leases nor consent to a subordination or assignment of the interest of the tenants thereunder to any party other than the Mortgagee, nor anticipate the rents thereunder for more than one (1) month in advance or reduce the amount of rents and other payments thereunder, nor waive, excuse, condone or in any manner release or discharge the tenants of or from their obligations, covenants, conditions and agreements to be performed, nor to incur any indebtedness to the tenants, nor enter into any additional leases of all or any part of the Premises without the prior written consent of the Mortgagee.

### SECTION 6.2 Mortgagee's Right to Perform Under Leases.

Should Mortgagor fail to perform, comply with or discharge any obligations of Mortgagor under any lease of all or any part of the Premises, including, without limitation, the Project Lease, or should Mortgagee become aware of or be notified by any tenant under any such lease of a failure on the part of Mortgagor to so perform, comply with or discharge its obligations under said lease, Mortgagee may, but shall not be obligated to, and without further demand upon Mortgagor, and without waiving or releasing Mortgagor from any obligation contained in this Mortgage, remedy such failure, and Mortgagor agrees to repay upon demand all sums incurred by Mortgagee in remedying any such failure including, without limitation, Mortgagee's attorneys' fees together with interest. All such sums, together with interest as aforesaid shall become so much additional Indebtedness, but no such advance shall be deemed to relieve Mortgagor from any default hereunder.

### SECTION 6.3 Assignment of Leases and Rents.

Mortgagor does hereby unconditionally and absolutely sell, assign and transfer unto Mortgagee all of the leases, rents, issues, income and profits now due and which may hereafter become due under or by virtue of any lease, including, without limitation, the Project Lease, whether written or verbal, or any agreement or license for the use or occupancy of the Premises, whether now existing or entered into at any time during the term of this Mortgage, all guaranties of any lessee's obligations under any such lease and all security deposits, it being the intention of this Mortgage to establish an absolute transfer and assignment of all such leases and agreements and all of the rents and profits from the Premises and/or Mortgagor's operation or ownership

thereof unto Mortgagee and Mortgagor does hereby appoint irrevocably Mortgagee as Mortgagor's true and lawful attorney in Mortgagor's name and stead, which appointment is coupled with an interest, to collect all of said rents and profits; provided, Mortgagor shall have the right to collect and retain such rents and profits unless and until an Event of Default exists under this Mortgage. Mortgagor assigns to Mortgagee all guarantees of lessee's obligation under leases and all proceeds from settlements relating to terminations of leases and all claims for damages arising from rejection of any lease under the bankruptcy laws.

SECTION 6.4 Remedies.

Upon an Event of Default and whether before or after the institution of legal proceedings to foreclose the lien hereof or before or after sale thereunder or during any period of redemption, the Mortgagee, without regard to waste, adequacy of the security or solvency of the Mortgagor, may revoke the privilege granted the Mortgagor hereunder to collect the rents and profits, and may, at its option, without notice, either: (a) in person or by agent, with or without taking possession of or entering the Premises, with or without bringing any action or proceeding, give, or require the Mortgagor to give, notice to any or all tenants under any lease authorizing and directing the tenant to pay such rents and profits to the Mortgagee; collect all of the rents and profits; enforce the payment thereof and exercise all of the rights of the landlord under the leases and all of the rights of the Mortgagee hereunder; may enter upon, take possession of, manage and operate said Premises, or any part thereof; may cancel, enforce or modify the leases, and fix or modify rents, and do any acts which the Mortgagee deems proper to protect the security hereof with or without taking possession of the Premises; or (b) apply for the appointment of a receiver in accordance with the statutes and law made and provided for, which receivership the Mortgagor hereby consents to, who shall collect the rents and profits, and all other income of any kind; manage the Premises so as to prevent waste; execute leases within or beyond the period of receivership, and perform the terms of this Mortgage and apply the rents and profits as hereinafter provided.

The entering upon and taking possession of the Premises, the appointment of a receiver, the collection of such rents and profits and the application thereof as aforesaid shall not cure or waive any Event of Default under this Mortgage nor in any way operate to prevent the Mortgagee from pursuing any other remedy which it may now or hereafter have under the terms of this Mortgage nor shall it in any way be deemed to constitute the Mortgagee a mortgagee-in-possession. The rights and powers of the Mortgagee hereunder shall remain in full force and effect both prior to and after any foreclosure of this Mortgage and any sale pursuant thereto and until expiration of the period of redemption from said sale, regardless of whether a deficiency remains from said sale. The rights hereunder shall in no way be dependent upon and shall apply without regard to whether the Premises are in danger of being lost, materially injured or damaged or whether the Premises are adequate to discharge the Indebtedness.

SECTION 6.5 Application of Rents.

Any rents collected by a receiver pursuant to the terms of Section 6.4 hereof shall be applied as follows: the receiver shall collect the rents, profits, and all other income of any kind. The receiver, after providing for payment of its reasonable fees and expenses, shall, to the extent

possible under applicable law and in the order determined by the receiver to preserve the value of the Premises: (1) manage the Premises so as to prevent waste; (2) execute contracts and leases within the period of the receivership, or beyond the period of the receivership if approved by the court; (3) apply tenant security deposits as required or permitted by law; (4) pay when due prior or current real estate taxes or special assessments with respect to the Premises or any periodic escrow for the payment of the taxes or special assessments; (5) pay when due premiums for insurance of the type required by the Mortgage or the periodic escrow for the payment of such premiums (6) pay all expenses for normal maintenance of the Premises; (7) perform the terms of any assignment of rents as permitted under applicable law and as set out herein.

Any rents, profits and income collected that remain in the possession of the receiver at the termination of the receivership shall be paid to the Mortgagor; and in the event termination of the receivership occurs at the end of the period of redemption without redemption by the Mortgagor or any other party entitled to redeem, interest accrued upon the sale price shall be paid to the purchaser at the foreclosure sale. Any net sum remaining shall be paid to the Mortgagor, except if the receiver was enforcing an assignment of rents in accordance with this Mortgage, in which case any net sum remaining shall be paid pursuant to the terms of the assignment.. Any rents remaining after application of the above items shall be applied to the Indebtedness. If the Premises shall be foreclosed and sold pursuant to a foreclosure sale, then:

    (a)    if the Mortgagee is the purchaser at the foreclosure sale, the rents shall be paid to the Mortgagee to be applied to the extent of any deficiency remaining after the sale, the balance to be retained by the Mortgagee, and if the Premises be redeemed by the Mortgagor or any other party entitled to redeem, to be applied as a credit against the redemption price with any remaining excess rents to be paid to the Mortgagor, provided, if the Premises not be redeemed, any remaining excess rents to belong to the Mortgagee, whether or not a deficiency exists.

    (b)    if the Mortgagee is not the purchaser at the foreclosure sale, the rents shall be paid to the Mortgagee to be applied first, to the extent of any deficiency remaining after the sale, the balance to be retained by the purchaser, and if the Premises be redeemed by the Mortgagor or any other party entitled to redeem, to be applied as a credit against the redemption price with any remaining excess rents to be paid to the Mortgagor, provided, if the Premises not be redeemed any remaining excess rents shall be paid first, to the purchaser at the foreclosure sale in an amount equal to the interest accrued upon the sale price pursuant to North Dakota Century Code § 32-19-18, then to the Mortgagee to the extent of any deficiency remaining unpaid and the remainder to the purchaser.

ARTICLE 7.
RIGHTS OF MORTGAGEE

SECTION 7.1 Right to Cure Event of Default.

If Mortgagor shall fail to comply with any of the covenants or obligations of this Mortgage, Mortgagee may, but shall not be obligated to, without demand upon Mortgagor, and

without waiving or releasing Mortgagor from any obligation in this Mortgage contained, remedy such failure, and Mortgagor agrees to repay upon demand all sums incurred by Mortgagee in remedying any such failure together with expenses and attorneys' fees and with interest thereon. All such sums, together with interest as aforesaid shall become Indebtedness. No such advance shall be deemed to relieve Mortgagor from any failure hereunder.

SECTION 7.2 No Claim Against Mortgagee.

Nothing contained in this Mortgage shall constitute any consent or request by Mortgagee, express or implied, for the performance of any labor or services or for the furnishing of any materials or other property in respect of the Premises or any part thereof, nor as giving Mortgagor or any party in interest with Mortgagor any right, power or authority to contract for or permit the performance of any labor or services or the furnishing of any materials or other property in such fashion as would create any personal liability against Mortgagee in respect thereof or would permit the making of any claim that any lien based on the performance of such labor or services or the furnishing of any such materials or other property in such fashion as would create any personal liability against Mortgagee in respect thereof or would permit the making of any claim that any lien based on the performance of such labor or services or the furnishing of any such materials or other property is prior to the lien of this Mortgage.

SECTION 7.3 Inspection.

Mortgagor will permit Mortgagee or its authorized representatives to enter the Premises at all times during normal business hours for the purpose of inspecting the same; provided Mortgagee shall have no duty to make such inspections and shall not incur any liability or obligation for making or not making any such inspections.

SECTION 7.4 Waivers, Releases, Resort to Other Security, Etc.

Without affecting the liability of any party liable for payment of any Indebtedness or performance of any obligation contained herein, and without affecting the rights of Mortgagee with respect to any security not expressly released in writing, Mortgagee may, at any time, and without notice to or the consent of Mortgagor or any party in interest with respect to the Premises or the Loan Documents: (a) release any person liable for payment of all or any part of the Indebtedness or for performance of any obligation herein; (b) make any agreement extending the time or otherwise altering the terms of payment of all or any part of the Indebtedness or modifying or waiving any obligation, or subordinating, modifying or otherwise dealing with the lien or charge hereof; (c) accept any additional security; (d) release or otherwise deal with any property, real or personal, including any or all of the Premises, including making partial releases of the Premises; or (e) resort to any security agreements, pledges, contracts of guarantee, assignments of rents and leases or other securities, and exhaust any one or more of said securities and the security hereunder, either concurrently or independently and in such order as it may determine.

SECTION 7.5 Rights Cumulative.

Each right, power or remedy herein conferred upon Mortgagee is cumulative and in addition to every other right, power or remedy, express or implied, now or hereafter arising,

available to Mortgagee, at law or in equity, or under the Code, or under any other agreement, and each and every right, power and remedy of Mortgagee herein set forth or otherwise so existing shall be cumulative to the maximum extent permitted by law and may be exercised from time to time as often and in such order as may be deemed expedient by Mortgagee and any such exercise shall not be a waiver of the right to exercise at any time thereafter any other right, power or remedy. No delay or omission by Mortgagee in the exercise of any right, power or remedy arising hereunder or arising otherwise shall impair any such right, power or remedy or the right of Mortgagee to resort thereto at a later date or be construed to be a waiver of any Event of Default under this Mortgage or any other Loan Document.

SECTION 7.6 Subsequent Agreements.

Any agreement hereafter made by Mortgagor and Mortgagee pursuant to this Mortgage shall be superior to the rights of the holder of any intervening lien or encumbrance.

SECTION 7.7 Waiver of Appraisement, Homestead, Marshaling.

Mortgagor hereby waives to the full extent lawfully allowed the benefit of any homestead, appraisement, evaluation, stay and extension laws now or hereinafter in force. Mortgagor hereby waives any rights available with respect to marshaling of assets so as to require the separate sales of any portion of the Premises, or as to require Mortgagee to exhaust its remedies against a specific portion of the Premises before proceeding against the other and does hereby expressly consent to and authorize the sale of the Premises or any part thereof as a single unit or parcel. Mortgagor also hereby waives any and all rights of reinstatement and redemption from sale under any order or decree of foreclosure pursuant to rights herein granted, on behalf of Mortgagor, and each and every person acquiring any interest in, or title to, the Premises described herein subsequent to the date of this Mortgage, and on behalf of all other persons to the extent permitted by applicable law.

SECTION 7.8 Business Loan Representation.

Mortgagor represents and warrants to Mortgagee that the Indebtedness evidenced by the Note is a business loan transacted solely for the purpose of carrying on the business of the Borrower and not a consumer transaction and that the Premises does not constitute the homestead of Mortgagor.

ARTICLE 8.
EVENTS OF DEFAULT AND REMEDIES

SECTION 8.1 Events of Default.

The occurrence of any of the following shall be deemed an event of default under this Mortgage (hereinafter referred to as an **"Event of Default"**):

(a)     Mortgagor, any Guarantor, or any other co-maker, guarantor or surety shall fail to pay any principal or interest on the Note when and as the same becomes due (whether at the stated maturity or at a date fixed for any installment payment or any accelerated payment date or otherwise); or

(b)    Mortgagor shall fail to pay when due any other Indebtedness; or

(c)    Mortgagor shall fail to comply with or perform any other term, condition or covenant of this Mortgage, and the continuance of such default for thirty (30) days after written notice; or

(d)    Any certification, representation or warranty made by Mortgagor herein, shall be false, breached or dishonored; or

(e)    The Mortgagor shall fail to comply with the terms of Sections 2.9, 2.10 or 3.1; or

(f)    The occurrence of an Event of Default as set forth in Section 9.4 hereof; or

(g)    The occurrence of an "Event of Default" as set defined in the Credit Agreement.

SECTION 8.2 Mortgagee's Right to Accelerate.

Upon the occurrence of an Event of Default, Mortgagee may immediately and without notice to Mortgagor declare the entire unpaid principal balance of the Note together with all other Indebtedness to be immediately due and payable and thereupon all such unpaid principal balance of the Note together with all accrued interest thereon, and all other Indebtedness shall be and become immediately due and payable.

SECTION 8.3 Remedies of Mortgagee and Right to Foreclose.

Upon the occurrence of an Event of Default, Mortgagor hereby authorizes and fully empowers Mortgagee to foreclose this Mortgage by judicial proceedings or by advertisement, or by such other statutory procedures available in the state in which the Premises are located, at the option of Mortgagee, with full authority to sell the Premises at public auction and convey the same to the purchaser in fee simple, all in accordance with and in the manner prescribed by law, and out of the proceeds arising from sale and foreclosure to retain the principal, and interest due on the Note and all other Indebtedness together with all sums of money as Mortgagee shall have expended or advanced pursuant to this Mortgage or pursuant to statute together with interest thereon as herein provided and all costs and expenses of such foreclosure, including lawful attorneys' fees, with the balance, if any, to be paid to the persons entitled thereto by law.

SECTION 8.4 Receiver.

Upon the occurrence of an Event of Default, the Mortgagee shall be entitled as a matter of right to apply for the appointment of a receiver as set out in North Dakota Century Code § 32-10-01 or under any other applicable statute or law who shall have all the rights, powers and remedies as provided by such statute or law, including without limitation the rights of receiver pursuant to North Dakota Century Code § 32-10-04, as amended, and who shall from the date of his appointment through any period of redemption existing at law collect the rents, and all other income of any kind; manage the Premises so as to prevent waste; execute leases within or beyond the use of receivership; and perform the terms of this Mortgage and apply the rents, issues and profits to the payment of the expenses enumerated in Section 6.5 hereof and to all expenses for maintenance of the Premises and to the costs and expenses of the receivership,

including attorney's fees, to the repayment of the Indebtedness and as further provided in any assignment of leases and rents executed by the Mortgagor to the Mortgagee whether contained in this Mortgage or in a separate instrument. The Mortgagor does hereby irrevocably consent to such appointment.

SECTION 8.5 <u>Rights Under Uniform Commercial Code.</u>

In addition to the rights available to a mortgagee of real property, Mortgagee shall also have all the rights, remedies and recourse available to a secured party under the Code including the right to proceed under the provisions of the Code governing default as to any Collateral as defined in this Mortgage which may be included on the Premises or which may be deemed nonrealty in a foreclosure of this Mortgage or to proceed as to such Collateral in accordance with the procedures and remedies available pursuant to a foreclosure of real estate.

SECTION 8.6 <u>Right to Discontinue Proceedings.</u>

In the event Mortgagee shall have proceeded to invoke any right, remedy or recourse permitted under this Mortgage and shall thereafter elect to discontinue or abandon the same for any reason, Mortgagee shall have the unqualified right to do so and in such event Mortgagor and Mortgagee shall be restored to their former positions with respect to the Indebtedness in which case this Mortgage and all rights, remedies and recourse of Mortgagee shall continue as if such action or exercise of a right had not been invoked.

SECTION 8.7 <u>Waivers.</u>

Mortgagor also waives the benefit of all laws now existing or that may hereinafter be enacted providing for (i) any appraisal before sale of any portion of the Premises, and (ii) in any way extending the time for the enforcement and collection of the Note or this Mortgage or creating or extending a period of redemption from any sale made in collecting said debt. To the full extent Mortgagor may do so, Mortgagor agrees that Mortgagor will not at any time insist upon, plead, claim or take the benefit or advantage of any law now or hereafter enforced providing for any appraisal, evaluation, stay, extension or redemption and Mortgagor, to the extent permitted by law, waives and releases all rights of redemption, valuation, appraisal, stay of execution, notice of election to mature or declare due the whole of this Mortgage and marshaling in the event of foreclosure of the liens hereby created.

SECTION 8.8 <u>Acknowledgment of Waiver of Hearing Before Sale.</u>

The Mortgagor understands and agrees that if an Event of Default shall occur, the Mortgagee has the right, <u>inter alia</u>, to foreclose this Mortgage by advertisement, as hereafter amended, or pursuant to any similar or replacement statute hereafter enacted; that if the Mortgagee elects to foreclose by advertisement, it may cause the Premises, or any part thereof, to be sold at public auction; that notice of such sale must be published for six (6) successive weeks at least once a week in a newspaper of general circulation and that no personal notice is required to be served upon the Mortgagor. The Mortgagor further understands that upon the occurrence of an Event of Default, the Mortgagee may also elect its rights under the Uniform Commercial Code and take possession of the Collateral and dispose of the same by sale or

otherwise in one or more parcels provided that at least ten (10) days' prior notice of such disposition must be given, all as provided for by the Uniform Commercial Code, as hereafter amended or by any similar or replacement statute hereafter enacted. The Mortgagor further understands that under the Constitution of the United States and the Constitution of the State of North Dakota it may have the right to notice and hearing before the Premises may be sold and that the procedure for foreclosure by advertisement described above does not ensure that notice will be given to the Mortgagor and neither said procedure for foreclosure by advertisement nor the Uniform Commercial Code requires any hearing or other judicial proceeding. THE MORTGAGOR HEREBY EXPRESSLY CONSENTS AND AGREES THAT THE PREMISES MAY BE FORECLOSED BY ADVERTISEMENT AND THAT THE PERSONAL PROPERTY MAY BE DISPOSED OF PURSUANT TO THE UNIFORM COMMERCIAL CODE, ALL AS DESCRIBED ABOVE. THE MORTGAGOR ACKNOWLEDGES THAT IT IS REPRESENTED BY LEGAL COUNSEL; THAT BEFORE SIGNING THIS DOCUMENT THIS SECTION AND THE MORTGAGOR'S CONSTITUTIONAL RIGHTS WERE FULLY EXPLAINED BY SUCH COUNSEL AND THAT THE MORTGAGOR UNDERSTANDS THE NATURE AND EXTENT OF THE RIGHTS WAIVED HEREBY AND THE EFFECT OF SUCH WAIVER.

ARTICLE 9.
HAZARDOUS MATERIALS

SECTION 9.1 Definitions.

The term **"Hazardous Materials or Wastes"** shall mean any hazardous or toxic materials, pollutants, chemicals, or contaminants, including without limitation asbestos, polychlorinated biphenyls (PCBs) and petroleum products as defined, determined or identified as such in any Laws, as hereinafter defined. The term **"Laws"** means any federal, state or local laws, rules or regulations (whether now existing or hereinafter enacted or promulgated) including, without limitation, the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.* (1972), the Clean Air Act, 42 U.S.C. §§ 7401 *et seq.* (1970), the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. § 9601 *et seq.*, and the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.*, the Toxic Substances Control Act, or other similar laws, as well as implementing regulations enacted or promulgated to protect the public health, welfare or the environment, including state or local laws, regulations or ordinances, as well as any judicial or administrative interpretation thereof, including any judicial or administrative orders or judgments.

SECTION 9.2 Representations by Mortgagor.

The Mortgagor hereby represents to the Mortgagee that the Mortgagor has made a diligent inquiry and to the best of its knowledge: (a) all or any part of the Premises has never been used either by previous owners or occupants or by the Mortgagor or current occupants to generate, manufacture, refine, transport, treat, store, handle or dispose of any Hazardous Materials or Wastes and no such Hazardous Material or Waste currently exists on the Premises or in its soil or groundwater; (b) no portion of the improvements on the Premises has been constructed with asbestos, asbestos-containing materials, urea formaldehyde insulation or any other chemical material or substance that may be a material hazard to health or the environment;

(c) there are no transformers, capacitors or other electrical or hydraulic equipment which have dielectric fluid-containing PCBs located in, on or under the Premises; (d) the Premises has never contained any underground storage tanks; and (e) neither the Mortgagor nor its predecessor in interest has received nor has any knowledge of any summons, citation, directive, letter or other communication, written or oral, from any local, state or federal governmental agency concerning (i) the existence of Hazardous Materials or Wastes on the Premises or in the immediate vicinity or (ii) any releasing, spilling, leaking, pumping, pouring, emitting, emptying, or dumping of Hazardous Materials or Wastes, whether intentional, unintentional or otherwise, onto the Premises or into waters or other lands at any time.

SECTION 9.3 Covenants of Mortgagor.

Mortgagor hereby covenants to Mortgagee that: (a) Mortgagor shall (i) comply and shall cause all occupants of the Premises to comply with all federal, state and local laws, rules, regulations and orders with respect to the discharge, generation, removal, transportation, storage and handling of Hazardous Materials or Wastes, (ii) remove any Hazardous Materials or Wastes immediately upon discovery of same, in accordance with applicable laws, ordinances and orders of governmental authorities having jurisdiction thereof, and (iii) pay or cause to be paid all costs associated with such removal; (b) Mortgagor shall keep the Premises free of any lien imposed pursuant to any state or federal law, rule, regulation or order in connection with the existence of Hazardous Materials or Wastes on the Premises; (c) Mortgagor shall not install or permit to be installed or to exist in or on the Premises any asbestos, asbestos-containing materials, urea formaldehyde insulation or any other chemical or substance which has been determined to be a hazard to health and/or the environment; and (d) Mortgagor shall not cause or permit to exist, as a result of an intentional or unintentional act or omission on the part of Mortgagor or any occupant of the Premises, a releasing, spilling, leaking, pumping, emitting, pouring, emptying or dumping of any Hazardous Materials or Wastes onto the Premises or into waters or other lands; and (e) Mortgagor shall give all notifications and prepare all reports required by Laws or any other law with respect to Hazardous Materials or Wastes existing on, released from or emitted from the Premises.

SECTION 9.4 Events of Default and Remedies.

It shall constitute an Event of Default hereunder and Mortgagee shall be entitled to exercise all remedies available to it hereunder if: (a) any of Mortgagor's representations contained in Section 9.2 hereof prove to be false, inaccurate or misleading; (b) Mortgagor shall fail to comply with the covenants contained in Section 9.3 hereof; (c) any Hazardous Materials or Wastes are hereafter found to exist on the Premises or in its soil or groundwater; or (d) any summons, citation, directive, letter or other communication, written or oral, shall be issued by any local, state or federal governmental agency concerning the matters described in Section 9.2(e)(i) and (ii) above. Mortgagor hereby grants Mortgagee and its employees and agents an irrevocable and non-exclusive license to enter the Premises, subject to rights of tenants, in order to inspect, conduct testing and remove Hazardous Materials or Wastes. All costs of such inspection, testing and removal shall immediately become due and payable to Mortgagee, shall be secured by this Mortgage and shall constitute additional Indebtedness.

SECTION 9.5 Loss of Value.

Mortgagor hereby assures Mortgagee that Mortgagee will not suffer loss due to diminution of value of the Premises, whether during the term hereof or thereafter, due to Hazardous Material or Wastes upon the Premises, except for those Mortgagor proves were introduced on the Premises after title has passed to Mortgagee by foreclosure or otherwise and will, upon demand, reimburse Mortgagee for any such loss of value.

ARTICLE 10.
MISCELLANEOUS

SECTION 10.1 Release of Mortgage.

When all Indebtedness has been paid and Mortgagee has no further obligation to make advances or extend other financial accommodations to or for the benefit of the Borrower, this Mortgage and all assignments herein contained shall, except as otherwise provided herein, terminate and shall be released by Mortgagee at Mortgagor's expense.

SECTION 10.2 Choice of Law.

This Mortgage is made and executed under the laws of the State of North Dakota and is intended to be governed by the laws of said State.

SECTION 10.3 Successors and Assigns.

This Mortgage and each and every covenant, agreement, indemnity and other provision hereof shall be binding upon Mortgagor and its successors and assigns, including, without limitation each and every person or entity that may, from time to time, be record owner of the Premises or any other person having an interest therein, shall run with the land and shall inure to the benefit of Mortgagee and its successors and assigns. As used herein the words "successors and assigns" shall also be deemed to include the heirs, representatives, administrators and executors of any natural person who is a party to this Mortgage. Nothing in this paragraph shall be construed to constitute consent by Mortgagee to assignment by Mortgagor.

SECTION 10.4 Partial Invalidity.

All rights, powers and remedies provided herein are intended to be limited to the extent necessary so that they will not render this Mortgage invalid, unenforceable or not entitled to be recorded, registered or filed under any applicable law. If any term of this Mortgage shall be held to be invalid, illegal or unenforceable, the validity and enforceability of the other terms of this Mortgage shall in no way be affected thereby.

SECTION 10.5 Captions and Headings.

The captions and headings of the various sections of this Mortgage are for convenience only and are not to be construed as confining or limiting in any way the scope or intent of the provisions hereof. Whenever the context requires or permits the singular shall include the plural, the plural shall include the singular and the masculine, feminine and neuter shall be freely interchangeable.

SECTION 10.6 <u>Notices.</u>

Any notice which any party hereto may desire or may be required to give to any other party shall be in writing and either (a) mailed by certified mail, return receipt requested, or (b) sent by an overnight carrier which provides for a return receipt, or (c) sent by facsimile followed up by mailing of such notice by either of the methods set forth in clause (a) or (b) above on the day of sending such facsimile or the next succeeding business day. Any such notice shall be sent to the respective party's address as set forth below or to such other address as such party may, by notice in writing, designate as its address. Any such notice shall constitute service of notice hereunder three (3) days after the mailing thereof by certified mail, one (1) day after the sending thereof by overnight carrier, and on the same day as the sending of a facsimile pursuant to the terms hereof.

If to the Mortgagor:

Pipeline Foods Real Estate Holding Company, LLC
c/o Pipeline Foods, LLC
1250 E. Moore Lake Road
Minneapolis, MN 55432
Attention: Neil Juhnke
Facsimile No.: 763-496-1006
E-mail Address: njuhnke@pipelinefoods.com

If to the Mortgagee:

Compeer Financial,PCA
14800 Galaxie Ave
Suite 205
Apple Valley, MN 55124
Attention: Aaron Knewtson
E-mail Address: Aaron.Knewtson@compeer.com

SECTION 10.7 <u>Indemnity.</u>

Mortgagor agrees to indemnify, protect, hold harmless and defend Mortgagee from and against any and all losses, liabilities, suits, actions, obligations, fines, damages, judgments, penalties, claims, causes of action, charges, costs and expenses (including attorneys' fees, disbursements and court costs prior to trial, at trial and on appeal) which may be imposed on, incurred or paid by, or asserted against Mortgagee by reason or on account of, or in connection with, (i) any willful misconduct of Mortgagor or any default or event of default hereunder, (ii) the construction, reconstruction or alteration of the Premises, (iii) any negligence of Mortgagor or any negligence or willful misconduct of any lessee of the Premises or any part thereof, or any of their respective agents, contractors, subcontractors, servants, directors, officers, employees, licensees or invitees, or (iv) any accident, injury, death or damage to any person or property occurring in, on or about the Premises or any street, drive, sidewalk, curb or passageway adjacent thereto, except to the extent that the same results directly from the willful misconduct of Mortgagee. Any amount payable to Mortgagee under this Section 10.7 shall be due and

payable upon demand therefor and receipt by Mortgagor of a statement from Mortgagee setting forth in reasonable detail the amount claimed and the basis therefor. Mortgagor's obligations under this Section 10.7 shall survive the repayment or any other satisfaction of the Indebtedness and shall not be affected by the absence or unavailability of insurance covering the same or by the failure or refusal of any insurance carrier to perform any obligation on its part under any such policy of insurance. If any claim, action or proceeding is made or brought against Mortgagee which is subject to the indemnity set forth in this Section 10.7, Mortgagor shall resist or defend against the same, in its own name or, if necessary, in the name of Mortgagee, by attorneys for Mortgagor's insurance carrier (if the same is covered by insurance) approved by Mortgagee or otherwise by attorneys retained by Mortgagor and approved by Mortgagee. Notwithstanding the foregoing, Mortgagee, in its discretion, if it disapproves of the attorneys provided by Mortgagor or Mortgagor's insurance carrier, may engage its own attorneys to resist or defend, or to assist therein, and Mortgagor shall pay, or, on demand, shall reimburse Mortgagee for the payment of, all fees and disbursements of said attorneys.

SECTION 10.8 Building Use.

During the entire term of the Credit Agreement, the Note and this Mortgage, the Mortgagor agrees not to (a) convert the Premises to condominium units of any kind and (b) convert the Premises to any use other than as set forth in the Credit Agreement or the Mortgagor/Compeer Credit Agreement. In that connection, the Mortgagor covenants that the sale of units and/or recording of condominium documents on the Premises or any part thereof shall constitute an Event of Default hereunder.

SECTION 10.9 Amendment/Modification.

Amendment to, waiver of or modification of any provision of this Mortgage must be made in writing. No oral waiver, amendment, or modification may be implied.

SECTION 10.10 Representations of Mortgagor.

Mortgagor affirmatively represents and warrants that the written terms of this Mortgage, accurately reflect the mutual understanding of Mortgagor and Mortgagee, as to all matters addressed herein, and Mortgagor further represents and warrants that there are no other agreements or understandings, written or oral, which exist between Mortgagor and Mortgagee relating to the matters addressed herein.

SECTION 10.11 Mortgagee's Expense.

Should Mortgagee make any payments hereunder or under the Note, the Credit Agreement, or under any other Loan Documents or incur any liability, loss or damage under or by reason of this Mortgage, the Note, the Credit Agreement, or any other Loan Documents, or in the defense of any claims or demands, the amount thereof, and all costs and expenses, including all filing, recording, and title fees and any other expenses relating to the Indebtedness, including without limitation filing fees for UCC continuation statements and any expense involving modification thereto, attorneys' fees, and any and all costs and expenses incurred in connection with making, performing, or collecting the Indebtedness or exercising any of

Mortgagee's rights under the Note, the Credit Agreement, this Mortgage or any other Loan Documents, including attorneys' fees, the cost of appraisals and the cost of any environmental inspections in connection therewith, and all claims for brokerage and finder's fees which may be made in connection with the making of the loan, together with interest thereon, at the Default Rate as defined in the Credit Agreement, shall become part of the Indebtedness and shall be secured by this Mortgage and the other Loan Documents. Such sums, costs and expenses shall be, until so paid, part of the Indebtedness and Mortgagee shall be entitled, to the extent permitted by law, to receive and retain the full amount of the Indebtedness in any action for redemption by Mortgagor, for an accounting for the proceeds of a foreclosure sale or of insurance proceeds or for apportionment of an eminent domain damage award.

SECTION 10.12 <u>Mortgagee's Right to Counsel.</u>

If Mortgagee retains attorneys to enforce any of the terms of the Loan Documents or because of the breach by Mortgagor of any of the terms hereof, or for the recovery of any Indebtedness, Mortgagor shall pay to Mortgagee attorneys' fees and all costs and expenses, whether or not an action is actually commenced and the right to such attorneys' fees and all costs and expenses shall be deemed to have accrued on the date such attorneys are retained, shall include fees and costs in connection with litigation, arbitration, mediation, bankruptcy and/or administrative proceedings, and shall be enforceable whether or not such action is prosecuted to judgment and shall include all appeals. Attorneys' fees and expenses shall for purposes of this Mortgage include all paralegal, electronic research, legal specialists and all other costs in connection with that performance of Mortgagee's attorneys.

If Mortgagee is, by reason of being the holder of this Mortgage, made a party defendant of any litigation concerning this Mortgage or the Premises or any part thereof or therein, or the construction, maintenance, operation or the occupancy or use thereof by Mortgagor, then Mortgagor shall indemnify, defend and hold Mortgagee harmless from and against all liability by reason of said litigation, including attorneys' fees and all costs and expenses incurred by Mortgagee in any such litigation or other proceedings, whether or not any such litigation or other proceedings is prosecuted to judgment or other determination.

SECTION 10.13 [Reserved.]

SECTION 10.14 <u>Limitation of Interest.</u>

It is the intent of the Borrower, Mortgagor and Mortgagee in the execution of this Mortgage, the Note, the Credit Agreement, and the other Loan Documents, to contract in strict compliance with the usury laws of the State of North Dakota governing the Note. In furtherance thereof, Borrower, Mortgagee and Mortgagor stipulate and agree that none of the terms and provisions contained herein or in the Note, the Credit Agreement, or any Loan Documents shall ever be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate in excess of the maximum interest rate permitted to be charged by the laws of the State of North Dakota. Mortgagor, or any guarantors, endorser or other party now or hereafter becoming liable for the payment of the Note shall never be required to pay interest on the Note at a rate in excess of the maximum interest that may be lawfully charged under the laws of the State of North Dakota and the provisions of this Section shall control over

all other provisions of the Note, the Credit Agreement, and any of the other Loan Documents which may be in apparent conflict herewith. If, from any circumstances whatsoever fulfillment of any provision of the Note, the Credit Agreement, this Mortgage or any Loan Documents, at the time performance of such provision shall be due, shall involve transcending the limit on interest presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then Mortgagee may, at its option (i) reduce the obligations to be fulfilled to such limit on interest, or (ii) apply the amount that would exceed such limit on interest to the reduction of the outstanding principal balance of the Note, and not to the payment of interest, with the same force and effect as though Borrower had specifically designated such sums to be so applied to principal and Mortgagee had agreed to accept such extra payment(s) as a prepayment so that in no event shall any exaction be possible under the Note that is in excess of the applicable limit on interest.

SECTION 10.15 <u>Time of the Essence.</u>

Mortgagor agrees that time is of the essence with respect to all of the covenants, agreements and representations under this Mortgage.

SECTION 10.16 <u>Survival of Representations, Warranties and Covenants.</u>

All representations, covenants and warranties contained herein, shall survive the delivery of the Note, the Credit Agreement, this Mortgage and the provisions hereof shall continue to inure to the benefit of Mortgagee, its successors and assigns.

SECTION 10.17 **<u>Waiver of Jury Trial.</u>**

**NO PARTY TO THIS MORTGAGE OR ANY ASSIGNEE, SUCCESSOR, HEIR OR PERSONAL REPRESENTATIVE OF A PARTY SHALL SEEK A JURY TRIAL IN ANY LAWSUIT, PROCEEDING, COUNTERCLAIM, OR ANY OTHER LITIGATION PROCEEDINGS BASED UPON OR ARISING OUT OF THIS MORTGAGE, ANY RELATED AGREEMENT OR INSTRUMENT, ANY OTHER COLLATERAL FOR THE INDEBTEDNESS OR THE DEALINGS OR THE RELATIONSHIP BETWEEN OR AMONG THE PARTIES, OR ANY OF THEM. NO PARTY WILL SEEK TO CONSOLIDATE ANY SUCH ACTION, IN WHICH A JURY TRIAL HAS BEEN WAIVED, WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. THE PROVISIONS OF THIS PARAGRAPH HAVE BEEN FULLY DISCUSSED BY THE PARTIES HERETO, AND THESE PROVISIONS SHALL BE SUBJECT TO NO EXCEPTIONS. NO PARTY HAS IN ANY WAY AGREED WITH OR REPRESENTED TO ANY OTHER PARTY THAT THE PROVISIONS OF THIS PARAGRAPH WILL NOT BE FULLY ENFORCED IN ALL INSTANCES.**

SECTION 10.18 <u>Minimum Requirement.</u>

Mortgagor recognizes that the requirements imposed upon Mortgagor hereunder, including, without limitation, insurance requirements, are minimum requirements as determined by Mortgagee and do not constitute a representation that the requirements are complete or

adequate. Mortgagor understands that it is Mortgagor's duty and responsibility to act prudently and responsibly at all times for Mortgagor's protection and for the protection of the Premises.

[THE REMAINDER OF THIS PAGE HAS BEEN INTENTIONALLY LEFT BLANK.]

IN WITNESS WHEREOF, the Mortgagor has caused this Mortgage and Assignment of Leases and Rents and Fixture Financing Statement to be executed as of the date first above written.

PIPELINE FOODS REAL ESTATE
HOLDING COMPANY, LLC, a
Delaware limited liability company

By: _____
Name: Eric Jackson
Title: President, Chief Manager, Secretary
        and Treasurer

STATE OF MINNESOTA          )
                            ) ss
COUNTY OF HENNEPIN )

On this 21 day of February, 2019, personally appeared before me Eric Jackson, whose identity is personally known to me or proved to me on the basis of satisfactory evidence and who by me duly sworn, did say that he is the President, Chief Manager, Secretary and Treasurer of Pipeline Foods Real Estate Holding Company, LLC, a Delaware limited liability company, and that said document was signed by him on behalf of said limited liability company.

_Andrea Billadeau_
Notary

ANDREA J BILLADEAU
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2023

CORE/3508725.0022/150782438.2

**EXHIBIT "A"**
**LEGAL DESCRIPTION**

SE 1/4 of Section 17, Township 162, Range 89 West of the 5th PM, LESS AND EXCEPT the East 75 feet thereof, excepting all that portion lying within 33 feet of the section line; Burke County, North Dakota

268679   Page 31 of 31
3/1/2019
Burke County Recorder

268679
OLD REPUBLIC NATIONAL TITLE INSURANCE CO.
400 - 2ND AVE. S.
MINNEAPOLIS, MN 55401-9071
Grant_____ Legal_____ Relates_____ Satisfy_____ Verified ✓

CORE/3508725.0022/150782438.2