**EXHIBIT A**

**Revised Plan**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| PIPELINE FOODS, LLC, *et al.*,[1] | Case No. 21-11002 (KBO) |
| Debtors. | (Jointly Administered) |

## DEBTORS' AND CREDITORS' COMMITTEE'S *AMENDED* JOINT PLAN OF LIQUIDATION

Mark Minuti (DE Bar No. 2659)
Monique B. DiSabatino (DE Bar No. 6027)
Matthew P. Milana (DE Bar No. 6681)
**SAUL EWING ARNSTEIN & LEHR LLP**
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6800
mark.minuti@saul.com
monique.disabatino@saul.com
matthew.milana@saul.com

-and-

Michael L. Gesas (admitted *pro hac vice*)
Barry A. Chatz (admitted *pro hac vice*)
David A. Golin (admitted *pro hac vice*)
Andrew J. Rudolph
**SAUL EWING ARNSTEIN & LEHR LLP**
161 North Clark St., Suite 4200
Chicago, Illinois 60601
Telephone: (312) 876-7100
michael.gesas@saul.com
barry.chatz@saul.com
david.golin@saul.com
andrew.rudolph@saul.com

*Counsel for the Debtors and Debtors in Possession*

Kevin G. Collins (DE No. 5149)
**BARNES & THORNBURG LLP**
1000 N. West Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 300-3434
kevin.collins@btlaw.com

-and-

Connie A. Lahn (admitted *pro hac vice*)
Molly N. Sigler (admitted *pro hac vice*)
**BARNES & THORNBURG LLP**
2800 Capella Tower
225 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 333-2111
connie.lahn@btlaw.com
molly.sigler@btlaw.com

-and-

Kevin C. Driscoll, Jr. (admitted *pro hac vice*)
**BARNES & THORNBURG LLP**
One N. Wacker Dr., Suite 4400
Chicago, IL 60606
Telephone (312) 214-8322
Kevin.driscoll@btlaw.com

*Counsel to the Official Committee of Unsecured Creditors*

Dated: February 24, 2022

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Pipeline Foods, LLC (5070); Pipeline Holdings, LLC (5754); Pipeline Foods Real Estate Holding Company, LLC (7057); Pipeline Foods, ULC (3762); Pipeline Foods Southern Cone S.R.L. (5978); and Pipeline Foods II, LLC (9653). The Debtors' mailing address is P.O. Box 431029, Brooklyn Park, MN 55443.

# TABLE OF CONTENTS

I. *DEFINITIONS* AND CONSTRUCTION OF TERMS ................................................................. 1

   A. DEFINITIONS ................................................................................................................. 1
   B. INTERPRETATION; APPLICATION OF DEFINITIONS AND RULES OF CONSTRUCTION ...................... 24

II. TREATMENT OF UNCLASSIFIED CLAIMS ................................................................. 25

   A. SECTION 503(B)(9) CLAIMS ........................................................................................ 25
   B. ADMINISTRATIVE EXPENSE CLAIMS .............................................................................. 25
   C. PRIORITY TAX CLAIMS ................................................................................................ 25
   D. PROFESSIONAL FEE CLAIMS ........................................................................................ 26
   E. PAYMENT OF STATUTORY FEES .................................................................................... 26

III. CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS ............... 27

   A. TREATMENT OF CLAIMS .............................................................................................. 27
       1. Class 1 –Priority Non-Tax Claims ................................................................ 27
       2. Class 2 – Rabobank Secured Claim .............................................................. 27
       3. Class 3 – Compeer Secured Claims .............................................................. 28
       4. Class 4 – Other Secured Claims ................................................................... 28
       5. Class 5 – General Unsecured Claims ............................................................ 29
       6. Class 6 – Subordinated Compeer Unsecured Claims ....................................... 30
       7. Class 7 – Intercompany Claims ................................................................... 30
       8. Class 8 –Equity Interests ............................................................................ 31
   B. MODIFICATION OF TREATMENT OF CLAIMS .................................................................... 32
   C. CRAMDOWN ............................................................................................................... 32

IV. PROVISIONS REGARDING THE POST-CONFIRMATION LIQUIDATING TRUST ............ 32

   A. APPOINTMENT OF THE LIQUIDATING TRUSTEE ................................................................ 32
   B. RIGHTS AND POWERS OF THE LIQUIDATING TRUSTEE ...................................................... 33
   C. PLAN OVERSIGHT COMMITTEE ..................................................................................... 35
   D. POST CONFIRMATION DATE EXPENSES OF THE LIQUIDATING TRUSTEE AND THE POST-
      EFFECTIVE DATE DEBTORS ........................................................................................... 35
   E. LIMITATION OF LIABILITY ............................................................................................ 35

V. PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN .................................. 36

   A. METHOD OF PAYMENT ................................................................................................ 36
   B. OBJECTIONS TO AND RESOLUTION OF CLAIMS ............................................................... 36
   C. CLAIMS OBJECTION DEADLINE ..................................................................................... 37
   D. NO DISTRIBUTION PENDING ALLOWANCE ...................................................................... 37
   E. CLAIMS RESERVE ....................................................................................................... 37
   F. ADJUSTMENTS TO CLAIMS WITHOUT OBJECTION ........................................................... 38
   G. LATE CLAIMS ............................................................................................................ 39
   H. DISTRIBUTION RECORD DATE ...................................................................................... 39
   I. DELIVERY OF DISTRIBUTIONS ...................................................................................... 39
   J. UNCLAIMED DISTRIBUTIONS ....................................................................................... 40
   K. *DE MINIMIS* DISTRIBUTIONS ..................................................................................... 40
   L. SETOFF ..................................................................................................................... 41

VI. IMPLEMENTATION AND EFFECT OF CONFIRMATION OF PLAN .............................. 41

   A. MEANS FOR IMPLEMENTATION OF THE PLAN ................................................................. 41

1. Limited Consolidation..................................................................................... 41
2. Funding of the Reserve Accounts ................................................................. 42
3. Funding of the Distribution Account ........................................................... 45
4. Implementing Actions.................................................................................... 45
5. Corporate Action; Effectuating Documents; Further Transactions.......... 46
6. Dissolution of the Creditors' Committee ..................................................... 47
7. Contribution of Rabobank D&O Claims ...................................................... 47
8. Tax-Free Repatriation of Cash Held by Pipeline Foods, ULC ................... 47

VII.    EXCULPATION, RELEASES, AND INJUNCTIONS ................................... 48

A.    EXCULPATION AND LIMITATION OF LIABILITY ................................................ 48
B.    RELEASES BY THE DEBTORS........................................................................... 49
    1.    Rabobank ............................................................................................... 49
    2.    Other Parties........................................................................................ 50
C.    INJUNCTION................................................................................................... 51

VIII.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES ......................... 52

A.    REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES................. 52
B.    DEADLINE FOR FILING PROOFS OF CLAIM RELATING TO EXECUTORY CONTRACTS AND
      UNEXPIRED LEASES REJECTED PURSUANT TO THE PLAN................................. 52
C.    DEBTORS' INSURANCE POLICIES .................................................................... 53

IX.     CONDITIONS PRECEDENT TO AND OCCURRENCE OF ........................ 55

CONFIRMATION AND THE EFFECTIVE DATE ................................................... 55

A.    CONDITIONS PRECEDENT TO CONFIRMATION .................................................. 55
B.    CONDITIONS PRECEDENT TO THE EFFECTIVE DATE........................................ 55
C.    ESTABLISHING THE EFFECTIVE DATE .............................................................. 56
D.    EFFECT OF FAILURE OF CONDITIONS .............................................................. 56
E.    WAIVER OF CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE ............... 56

X.      RETENTION OF JURISDICTION ................................................................. 56

XI.     MISCELLANEOUS PROVISIONS ................................................................ 59

A.    BOOKS AND RECORDS.................................................................................... 59
B.    TRANSFER OF DEBTORS' ASSETS ................................................................... 59
C.    INJUNCTIONS OR STAYS ................................................................................. 60
D.    AMENDMENT OR MODIFICATION OF THE PLAN ............................................... 60
E.    SEVERABILITY................................................................................................ 60
F.    REVOCATION OR WITHDRAWAL OF THE PLAN ................................................ 61
G.    BINDING EFFECT ............................................................................................ 61
H.    NOTICES ........................................................................................................ 61
I.     GOVERNING LAW ........................................................................................... 61
J.     WITHHOLDING AND REPORTING REQUIREMENTS ........................................... 61
K.    EXHIBITS/SCHEDULES.................................................................................... 62
L.    FILING OF ADDITIONAL DOCUMENTS ............................................................. 62
M.    NO ADMISSIONS ............................................................................................ 63
N.    SUCCESSORS AND ASSIGNS ........................................................................... 63
O.    RESERVATION OF RIGHTS ............................................................................... 63
P.    IMPLEMENTATION .......................................................................................... 63
Q.    INCONSISTENCY ............................................................................................. 63
R.    FINAL DECREES.............................................................................................. 63

39053677.14

S.    TERMINATION OF THE LIQUIDATING TRUSTEE .......................................................................... 64
T.    COMPROMISE OF CONTROVERSIES ................................................................................................ 64
U.    REQUEST FOR EXPEDITED DETERMINATION OF TAXES .................................................................. 64

39053677.14

The Debtors and the Creditors' Committee jointly propose the following Plan, pursuant to the provisions of chapter 11 of the Bankruptcy Code.

## I.      DEFINITIONS AND CONSTRUCTION OF TERMS

**A.      Definitions**

As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires:

1.      **"Administrative Expense Claims Bar Date"** means the first Business Day that is (30) days after the Effective Date.

2.      **"Administrative Expense Claim"** means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases under Sections 503(b) and 507(a)(2) of the Bankruptcy Code, including (a) any actual and necessary costs and expenses of preserving the Estates (including Claims under section 365(d)(3) of the Bankruptcy Code) and (b) any fees or charges assessed against the Estates under Section 1930 of title 28 of the United States Code, but excluding Professional Fee Claims and Section 503(b)(9) Claims.

3.      **"Allowed"** means, with respect to Claims: (a) any Claim, proof of which was timely filed (or for which Claim, under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court, a proof of claim is not or shall not be required to be filed); (b) any Claim that has been or hereafter is listed by the Debtors in the Schedules as liquidated in amount and not disputed or contingent and for which no proof of claim has been filed; or (c) any Claim allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; provided that any Claim described in clauses (a) and (b) shall be considered Allowed only if and to the extent that with respect to such Claim, no objection to the allowance thereof has been interposed within the applicable period fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the

Bankruptcy Court, or such objection is interposed and the Claim is subsequently Allowed by a Final Order.

4.      **"Atlantic Facility Net Sale Proceeds"** means the proceeds from the sale of the Debtors' real property and grain processing and storage facility in Atlantic, Iowa after payment of liens, brokerage fee, and other closing costs, which total $3,545,099.15.

5.      **"Avoidance Actions"** means any and all rights to recover and/or avoid transfers or liens under chapter 5 of the Bankruptcy Code, including Bankruptcy Code Sections 506(d), 522, 541, 542, 543, 544, 545, 547, 548, 549, 550, or 553, or otherwise under the Bankruptcy Code or under similar or related state or federal statutes and common law, including all preference, fraudulent conveyance, fraudulent transfer, and/or other similar avoidance claims, rights and causes of action, whether or not litigation has been commenced as of the Effective Date to prosecute such actions.

6.      **"Balloting Agent"** means Bankruptcy Management Solutions, Inc. d/b/a Stretto, in its capacity as the Bankruptcy Court-approved solicitation, claims and noticing agent.

7.      **"Bankruptcy Code"** means title 11 of the United States Code, as amended from time to time.

8.      **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Delaware.

9.      **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as amended from time to time, together with the Local Rules, as amended from time to time.

10.     **"Bar Date Order"** means the *Order (I) Establishing Deadlines for Filing Proofs of Claim, Including Section 503(B)(9) Claims, and (II) Approving the Form and Manner of*

*Notice Thereof* entered in the Chapter 11 Cases by the Bankruptcy Court on September 17, 2021 [D.I. 441].

11.    "**Bar Dates**" means the General Bar Date and the Governmental Bar Date.

12.    "**Books and Records**" means the Debtors' books and records.

13.    "**Budget**" shall have the meaning ascribed to the term "Budget" in the Final Cash Collateral Order.

14.    "**Business Day**" means any day other than a Saturday, Sunday or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

15.    "**Cash**" means legal tender of the United States of America and equivalents thereof.

16.    "**Causes of Action**" means the Avoidance Actions and all other claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims, and crossclaims of any Debtor and/or any of the Estates against any Entity, based in law or equity, including under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise, and whether asserted or unasserted, and any and all commercial tort claims against any party, including the Debtors' current and former directors and officers; and subject, however, to any releases or exculpation provisions provided in this Plan, the Confirmation Order or any other Final Order of the Bankruptcy Court.  Without limitation of the foregoing, Causes of Action include those claims and actions as shall be set forth as Retained Causes of Action in the Plan Supplement.

3

17.     **"Chapter 11 Cases"** means the jointly administered chapter 11 cases of the Debtors, styled as *In re Pipeline Foods, LLC,* Case No. 21-11002 (KBO), currently pending in the Bankruptcy Court.

18.     **"Chubb"** means, collectively, ACE American Insurance Company, Federal Insurance Company, Illinois Union Insurance Company, Penn Millers Insurance Company, Westchester Fire Insurance Company and/or each and any of their U.S.-based affiliates and successors in their capacities as Insurers.

19.     **"Chubb Settlement Agreement"** means the Settlement Agreement and Release entered into between Pipeline Foods, LLC and Illinois Union Insurance Company and approved by the Chubb Settlement Order.

20.     **"Chubb Settlement Estate Proceeds"** means $150,000 of the settlement amount received by the Debtors from Illinois Union Insurance Company pursuant to the Chubb Settlement Agreement.

21.     **"Chubb Settlement Order"** means the *Order Approving Settlement Among Pipeline Foods, LLC and Illinois Union Insurance Company Pursuant to Federal Rule of Bankruptcy Procedure 9019* entered in the Chapter 11 Cases by the Bankruptcy Court on September 17, 2021 [D.I. 438].

22.     **"Claim"** has the meaning set forth in Section 101(5) of the Bankruptcy Code.

23.     **"Claims Objection Deadline"** means the first Business Day that is one hundred and eighty (180) days after the Effective Date or such later date as may be approved by Order of the Bankruptcy Court upon motion of the Liquidating Trustee; provided, however, that the filing of a motion to extend the Claims Objection Deadline shall automatically extend the Claims Objection Deadline until a Final Order is entered on such motion; provided, further, that in the

4

event a motion to extend the Claims Objection Deadline is denied, the Clams Objection Deadline shall be the later of the then-current Claims Objection Deadline or thirty (30) days after the Bankruptcy Court's entry of an order denying the motion to extend the Claims Objection Deadline.

24.      **"Class"** means any group of substantially similar Claims or Equity Interests classified by this Plan pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code.

25.      **"Clerk"** means the clerk of the Bankruptcy Court.

26.      **"Compeer"** means, collectively, Compeer Financial, FLCA and Compeer Financial, PCA.

27.      **"Compeer Deed -in-Lieu Transaction"** means the transactions contemplated by the Bankruptcy Court's *Order Authorizing the Debtors to Deliver Deeds in Lieu of Foreclosure* [D.I. 638], pursuant to which the Compeer Secured Claim shall be fully extinguished and any deficiency claim of Compeer shall be subordinated.

28.      **"Compeer Financial, FLCA Collateral"** means all property of the Debtors granted as collateral security under the Compeer Financial, FLCA Loan Documents.

29.      **"Compeer Financial, FLCA Credit Agreement"** means the Credit Agreement, dated as of April 3, 2018, entered into between Pipeline Foods Real Estate Holding Company, LLC and Compeer Financial, FLCA.

30.      **"Compeer Financial, FLCA Loan Documents"** means the Compeer Financial, FLCA Credit Agreement and all security, pledge, intercreditor, and guaranty agreements and all other documentation executed in connection with any of the foregoing.

31.      **"Compeer Financial, FLCA Secured Claim"** means the Claim of Compeer Financial, FLCA to the extent of the value of the Compeer Financial, FLCA Collateral.

32.    **"Compeer Financial, PCA Collateral"** means all property of the Debtors granted as collateral security under the Compeer Financial, PCA Loan Documents and as to which Compeer Financial, PCA holds a senior lien under the Intercreditor Agreement.

33.    **"Compeer Financial, PCA Credit Agreement"** means the Credit Agreement, dated as of February 22, 2019, entered into between Pipeline Foods, LLC and Compeer Financial, PCA.

34.    **"Compeer Financial, PCA Loan Documents"** means the Compeer Financial, PCA Credit Agreement and all security, pledge, intercreditor, and guaranty agreements and all other documentation executed in connection with any of the foregoing.

35.    **"Compeer Financial, PCA Secured Claim"** means the Claim of Compeer Financial, PCA to the extent of the value of the Compeer Financial, PCA Collateral.

36.    **"Compeer Secured Claims"** means, collectively, the Compeer Financial, FLCA Secured Claim and the Compeer Financial, PCA Secured Claim.

37.    **"Confirmation Date"** means the date on which the Confirmation Order is entered on the Docket.

38.    **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

39.    **"Confirmation Order"** means the Order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

40.    **"Creditor"** means any Entity that is the Holder of a Claim against any of the Debtors.

41.     "**Creditors' Committee**" means and refers to the Official Committee of Unsecured Creditors appointed by the UST on July 22, 2021 in the Chapter 11 Cases [D.I. 99, 102].

42.     "**D&O Claims**" means, collectively: (a) all Causes of Action against the Debtors' current and former directors and officers, subject, however, to any releases or exculpation provisions provided in this Plan, the Confirmation Order or any other Final Order of the Bankruptcy Court; and (b) all Rabobank D&O Claims.

43.     "**Debtors**" means, collectively, Pipeline Foods, LLC, Pipeline Holdings, LLC, Pipeline Foods Real Estate Holding Company, LLC, Pipeline Foods, ULC, Pipeline Foods Southern Cone S.R.L., and Pipeline Foods II, LLC.

44.     "**Debtors' Cash**" means the Cash of the Debtors immediately prior to the Effective Date.

45.     "**Debtors' Cash Account**" means the account or accounts containing the Debtors' Cash.

46.     "**Debtors-in-Possession**" means the Debtors in their capacity as debtors-in-possession in the Chapter 11 Cases pursuant to Sections 1101, 1107(a) and 1108 of the Bankruptcy Code.

47.     "**Designated Purchase Contract Proceeds**" means the net Cash proceeds, if any, from the assignment, settlement, or other resolution of the following executory contracts, each as numbered in the Debtors' records: (i) contract number 3501101 between Pipeline Foods, LLC and Beechwood Agri Services Inc. - Parkhill; (ii) contract number 208011625 between Pipeline Foods, LLC and C&S Organics, LLC, and (iii) contract number 150110343 between Pipeline Foods, LLC and Lone Pine Enterprises LLP.

7

48.    **<u>Disallowed</u>** means, with reference to any Claim, (a) a Claim, or any portion thereof, that has been disallowed by a Final Order, (b) a Claim, or any portion thereof, that is expressly disallowed under the Plan, or (c) unless scheduled by the Debtors as a liquidated, non-contingent, and undisputed Claim, a Claim as to which a Bar Date has been established by the Bankruptcy Code, Bankruptcy Rules, or Final Order but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order.

49.    **<u>Disputed Claim</u>** means any Secured Claim, Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, Section 503(b)(9) Claim or General Unsecured Claim for which all or any portion thereof is neither an Allowed Claim nor a Disallowed Claim.

50.    **<u>Distributable Proceeds</u>** means Cash that is available for Distribution on account of Allowed Claims, in accordance with the terms of the Plan.

51.    **<u>Distribution</u>** means any distribution to the Holders of Allowed Claims made pursuant to the Plan.

52.    **<u>Distribution Account</u>** means the account of the Pipeline Foods Liquidating Trust into which Distributable Proceeds are to be deposited pursuant to the terms of the Plan.

53.    **<u>Distribution Record Date</u>** means the date of entry of the Confirmation Order or such other date designated in the Confirmation Order.

54.    **<u>Docket</u>** means the docket in the Chapter 11 Cases maintained by the Clerk.

55.    **<u>Effective Date</u>** means the date on which the conditions specified in Article IX(B) of the Plan have been satisfied or (to the extent permitted by the Plan) waived.

56.    **<u>Entity</u>** means an entity as defined in Section 101(15) of the Bankruptcy Code.

57.    **"Equity Interests"** means any equity interests in any of the Debtors, including all authorized and issued or unissued membership interests or stock interests together with any warrants, options or contract rights to acquire such interests at any time.

58.    **"Estates"** means the estates of the Debtors created upon the commencement of the Chapter 11 Cases pursuant to Section 541 of the Bankruptcy Code.

59.    **"Excess 503(b)(9) Atlantic Sale/Van Mol Proceeds"** means any excess amounts of the Section 503(b)(9) Atlantic Sale/Van Mol Proceeds that remain after satisfying Allowed Section 503(b)(9) Claims and/or reserving sufficient amounts for Disputed Section 503(b)(9) Claims.

60.    **"Exculpated Parties"** means (a) the Debtors, (b) the independent manager of the Board of Managers of Pipeline Holdings, LLC, (c) each of the Debtors' Chief Restructuring Officers, (d) the Debtors' post-petition professionals, officers, directors/managers, employees, advisors, representatives, financial advisors, investment bankers, or agents (but solely in their capacity as such), (e) the Creditors' Committee, (f) the members of the Creditors' Committee (but solely in their capacity as such), and (g) the professionals of the Creditors' Committee.  For the avoidance of doubt, the inclusion of a party as an Exculpated Party does not entitle such party to any release afforded under Article VII.B or otherwise grant such party any releases or exculpation related to any *prepetition* conduct.

61.    **"Executory Contract"** means any executory contract or unexpired lease as of the Petition Date between any of the Debtors and any other Person or Persons, specifically excluding contracts and agreements entered into pursuant to this Plan.

62.   "**Face Amount**" means (a) when used in reference to a Disputed Claim, the asserted amount of the Disputed Claim, and (b) when used in reference to an Allowed Claim, the Allowed Claim amount.

63.   "**Final Cash Collateral Order**" means and refers to the *Final Order (I) Authorizing the Debtors to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363; (II) Granting Adequate Protection to the Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 105(a), 361, 362, 363, 503, and 507; and (III) Granting Related Relief* entered in the Chapter 11 Cases by the Bankruptcy Court on August 20, 2021 [D.I. 341].

64.   "**Final Distribution Date**" means the date on which the final distribution of Distributable Proceeds is made to Holders of Allowed Claims entitled to receive Distributions under the Plan, as determined by the Liquidating Trustee in consultation with the Plan Oversight Committee.

65.   "**Final Fee Application**" means an application for final allowance of a Professional's aggregate Professional Fee Claim.

66.   "**Final Order**" means an Order of the Bankruptcy Court or a court of competent jurisdiction to hear appeals from the Bankruptcy Court that has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending; provided, however, that the possibility that a motion under Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order shall not cause such order not to be a Final Order.

67. "**General Bar Date**" means the deadline for all persons or entities to file proofs of claim based on claims against any Debtor that arose prior to the Petition Date, which was established by the Bar Date Order to be October 29, 2021 at 5:00 p.m. (ET).

68. "**General Liquidation Trust Assets**" means, collectively: (i) the Designated Purchase Contract Proceeds, if any; (ii) D&O Claims; (iii) the Lignite Facility; and (iv) Prepetition Receivables Collection Actions.

69. "**General Unsecured Claim**" means any Claim against any of the Debtors that arose or is deemed by the Bankruptcy Code or Bankruptcy Court, as the case may be, to have arisen before the Petition Date and that is not (i) an Administrative Expense Claim, (ii) a Section 503(b)(9) Claim, (iii) a Priority Tax Claim, (iv) a Secured Claim, (v) a Priority Non-Tax Claim; (vi) an Intercompany Claim; or (vii) a Subordinated Compeer Unsecured Claim.

70. "**Governmental Bar Date**" means the deadline for all Governmental Units to file proofs of claim based on claims against any Debtor that arose prior to the Petition Date, which was established by the Bar Date Order to be January 10, 2022 at 5:00 p.m. (ET).

71. "**Governmental Unit**" has the meaning set forth in Section 101(27) of the Bankruptcy Code.

72. "**Holder**" means the beneficial holder of any Claim or Equity Interest.

73. "**Impaired**" has the meaning set forth in Section 1124 of the Bankruptcy Code.

74. "**Initial Distribution Date**" means the date upon which initial Distributable Proceeds from the Distribution Account are made to Holders of Allowed Claims entitled to receive Distributions under the Plan, as determined by the Liquidating Trustee in consultation with the Plan Oversight Committee.

75.    **<u>Insurance Policies</u>** means any and all insurance policies, and any and all agreements, documents, or instruments relating thereto, issued or providing coverage at any time to any of the Debtors or any of their predecessors, including, without limitation, any general liability, property, workers compensation, casualty, umbrella or excess liability policy(ies), errors and omissions, director and officer or similar executive, fiduciary and organization liability policy(ies) (A, B or C coverage), and any tail or extended reporting requirement with respect thereto.

76.    **<u>Insurer</u>** means any company or other entity that issued or entered into an Insurance Policy (including any third party administrator) and any respective predecessors and/or affiliates thereof.

77.    **<u>Intercompany Claims</u>** means (i) any account reflecting intercompany book entries by one Debtor with respect to the other Debtor, or (ii) any Claim that is not reflected in such book entries and is held by a Debtor against another Debtor, in each case accruing before or after the Petition Date through the Effective Date, including any Claim for reimbursement, payment as guarantor or surety, or any Claim for contribution or expenses that were allocable between or among more than one of the Debtors.

78.    **<u>Intercreditor Agreement</u>** means the Intercreditor Agreement, dated as of February 22, 2019, entered into by Rabobank and Compeer Financial, PCA.

79.    **<u>Lien</u>** means any mortgage, pledge, deed of trust, assessment, security interest, lease, lien, adverse claim, levy, charge or other encumbrance of any kind, including any "lien" as defined in Section 101(37) of the Bankruptcy Code, or a conditional sale contract, title retention contract or other contract to give any of the foregoing.

80.    "**Lignite Facility**" means the approximately 3,500 metric ton grain elevator facility owned by the Debtors and located at 104 Railroad Drive, Lignite, North Dakota 58752.

81.    "**Liquidating Trust Agreement**" means an agreement providing for the establishment, and setting forth the operative terms, of the Pipeline Foods Liquidating Trust, which agreement shall be included in the Plan Supplement.

82.    "**Liquidating Trustee**" means the person appointed pursuant to Article IV of this Plan to serve as trustee of the Pipeline Foods Liquidating Trust, and to carry out the duties and responsibilities set forth herein and in the Liquidating Trust Agreement.  The identity of the Liquidating Trustee shall be set forth in the Plan Supplement.

83.    "**Local Rules**" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

84.    "**Notice Parties**" means: (i) counsel to the Debtors: Saul Ewing Arnstein & Lehr LLP, Attn: Mark Minuti, Esq. (mark.minuti@saul.com) and Monique B. DiSabatino, Esq. (monique.disabatino@saul.com), 1201 North Market Street, Suite 2300, P.O. Box 1266, Wilmington, DE 19899-1266; and Saul Ewing Arnstein & Lehr, LLP, Attn: Michael L. Gesas, Esq. (michael.gesas@saul.com) and David A. Golin, Esq. (david.golin@saul.com), 161 North Market Street, Suite 4200, Chicago, IL 60601; (ii) counsel to the Creditors' Committee, Attn: Connie A. Lahn, Esq., Barnes & Thornburg LLP, 2800 Capella Tower, 225 South Sixth Street, Minneapolis, MN 55402 (connie.lahn@btlaw.com); (iii) Counsel to Coöperatieve Rabobank, U.A., New York Branch: Norton Rose Fulbright US LLP, Attn: Stephen Castro, Esq. (stephen.castro@nortonrosefulbright.com)       and       Eric       Daucher,       Esq. (eric.daucher@nortonrosefulbright.com), 1301 Avenue of the Americas, New York, NY 10019-6022; and (iv) Office of the United States Trustee, Attn: Jane Leamy, Esq.

(jane.m.leamy@usdoj.com), J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Wilmington, DE 19801.

85.    "**Order**" means an order or judgment of the Bankruptcy Court as entered on the Docket.

86.    "**Other Secured Claims**" means all Secured Claims excluding the Rabobank Secured Claim and the Compeer Secured Claims.

87.    "**Person**" means an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated association or organization, a governmental unit or any agency or subdivision thereof, or any other Entity.

88.    "**Petition Date**" means July 8, 2021 and July 12, 2021.

89.    "**Pipeline Foods Liquidating Trust**" means a liquidating trust that shall be established pursuant to this Plan and the Liquidating Trust Agreement.

90.    "**Plan**" means this chapter 11 plan of liquidation, including, without limitation, all exhibits, supplements, appendices and schedules hereto, either in their present form or as the same may be altered, amended or modified from time to time through the Effective Date.

91.    "**Plan Documents**" means this Plan, the Plan Supplement and all of the exhibits and schedules attached to any of the foregoing and any amendments or modifications made thereto.

92.    "**Plan Oversight Committee**" means the committee appointed pursuant to Article IV(C) of this Plan.

93.    "**Plan Supplement**" means, the appendix of schedules and exhibits to be filed with the Bankruptcy Court at least seven (7) calendar days prior to the earlier of (i) the deadline to submit ballots to accept or reject the Plan, or (ii) the Confirmation Objection Deadline, unless

otherwise ordered by the Bankruptcy Court. The Plan Supplement shall include the Liquidating Trust Agreement and any other documents that the Debtors deem appropriate, provided, however, that all such documents shall be in a form and substance acceptable to Rabobank.

94.     "**Post-Effective Date Debtors**" means the Debtors after the Effective Date.

95.     "**Post-Effective Date Expenses**" means any and all reasonable post-Effective Date costs and expenses of the Post-Effective Date Debtors and the Pipeline Foods Liquidating Trust, including: (i) Taxes; (ii) the costs and expenses expected to be incurred in connection with the implementation of the Plan (including in connection with any appeal of the Confirmation Order and the prosecution of Final Fee Applications); (iii) reasonable compensation and reimbursement of expenses paid to the Liquidating Trustee and professionals and consultants retained by the Liquidating Trustee (whether in connection with the litigation and/or settlement of Causes of Action, or otherwise); (iv) the costs and expenses to administer the Chapter 11 Cases and the Pipeline Foods Liquidating Trust, including all statutory fees; (v) the costs and expenses related to the storage or destruction of Books and Records; and (vi) the costs and expenses incurred in connection with dissolving the Post-Effective Date Debtors.

96.     "**Post-Effective Date Reserve Account**" means a segregated reserve account of the Pipeline Foods Liquidating Trust funded with the Chubb Settlement Estate Proceeds on or as soon as practicable after the Effective Date and, unless otherwise specifically provided hereunder, from any Cash obtained by the Post-Effective Date Debtors or the Liquidating Trustee after the Effective Date from whatever source, for the purpose of paying Post-Effective Date Expenses and funding, in accordance with the terms of the Plan, the Distribution Account; provided, however, that any and all Cash received by the Post-Effective Date Debtors or the Liquidating Trustee that is either in excess of, or not part of, the other Reserve Accounts and

does not constitute Unsecured Creditor Post-Effective Date Distributable Assets shall be held in trust for Rabobank and paid promptly upon receipt to Rabobank; *provided*, *further*, that the Liquidating Trustee shall be entitled to reserve Cash and withhold from the Rabobank Post-Effective Date Distributable Assets and the Unsecured Creditor Post-Effective Date Distributable Assets reasonably anticipated but unaccrued or unbilled Post-Effective Date Expenses.

97. "**Prepetition Receivables Collection Actions**" means that certain adversary proceeding styled as *Pipeline Foods, LLC v. Agri Exim DCMM, et al.*, and all other adversary proceedings commenced by the Debtors with respect to the collection of prepetition receivables owed to the Debtors or otherwise that have not been resolved as of the Effective Date.

98. "**Priority Non-Tax Claim**" means a Claim that is accorded priority in right of payment under Section 507 of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Expense Claim.

99. "**Priority Tax Claim**" means a Claim that is entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

100. "**Pro Rata Share**" means, with respect to any Distribution on account of any Allowed Claim, the ratio that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims in the same Class.

101. "**Professional**" means any professional person employed in the Chapter 11 Cases pursuant to Sections 327, 328 or 1103 of the Bankruptcy Code or otherwise pursuant to an Order of the Bankruptcy Court.

102. "**Professional Fee Claim**" means a Claim under Sections 330(a), 331 or 503 of the Bankruptcy Code for compensation of a Professional or other Entity for services rendered or expenses incurred in the Chapter 11 Cases.

103.    **"Professional Fee Claims Reserve"** means a segregated reserve account of the Pipeline Foods Liquidating Trust funded from the Debtors' Cash Account on or as soon as practicable after the Effective Date in accordance with the Plan, in the amount set forth in the Plan Supplement.

104.    **"Rabobank"** means Cöoperatieve Rabobank U.A., New York Branch, as administrative agent, issuer and lender.

105.    **"Rabobank Collateral"** means, collectively, (a) all property of the Debtors granted as collateral security under the Rabobank Loan Documents and as to which Rabobank holds a senior lien under the Intercreditor Agreement and (b) all property of the Debtors granted as collateral security to Rabobank in accordance with the Final Cash Collateral Order as to which Rabobank holds a senior lien or, to the extent of any remaining value after satisfaction of liens senior the lien held by Rabobank, as to which Rabobank holds a junior lien.  For the avoidance of doubt, all property of the Debtors constitutes Rabobank Collateral except to the extent of liens on such property that are senior to the liens of Rabobank.

106.    **"Rabobank Credit Agreement"** means the Uncommitted Revolving Credit Agreement, dated June 26, 2018, as amended, supplemented or otherwise modified, entered into by the Debtors and Rabobank.

107.    **"Rabobank D&O Claims"** means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims, and crossclaims of Rabobank against the Debtors' current and former officers in their respective capacities as such.

108.    "**Rabobank Deficiency Claim**" means the balance of the Claim of Rabobank in excess of the Rabobank Secured Claim, which claim is waived under this Plan.

109.    "**Rabobank Effective Date Distributable Assets**" means all Cash held by any of the Debtors on the Effective Date, including, for the avoidance of doubt, fifty percent (50%) of the Atlantic Facility Net Sale Proceeds and fifty percent (50%) of the Van Mol Proceeds, minus an amount of Cash equal to the amount of Cash in excess of the Section 503(b)(9) Atlantic Sale/Van Mol Proceeds, if any, required to fully fund the Reserve Accounts.  For the avoidance of doubt, the Rabobank Effective Date Distributable Assets shall not include: (a) the Chubb Settlement Estate Proceeds (which shall be used to the fund the Post-Effective Date Reserve Account); (b) such Cash as is needed to fully fund the Professional Fee Claims Reserve and the SAP Claims Reserve Account; and (c) such Cash as may be required to fund the Section 503(b)(9) Claims Reserve Account to the extent the Section 503(b)(9) Atlantic Sale Proceeds are insufficient to fully fund the Section 503(b)(9) Reserve Account.

110.    "**Rabobank Liquidation Trust Assets**" means all Rabobank Collateral and any proceeds thereof, excluding: (a) General Liquidation Trust Assets; (b) Unsecured Creditor Liquidation Trust Assets; (c) Rabobank's Pro Rata Share of all actual Post-Effective Date Expenses; and (d) an amount of Cash equal to the amount of Cash in excess of the Section 503(b)(9) Atlantic Sale/Van Mol Proceeds, if any, required to fund the Reserve Accounts; provided, however, that if and to the extent any Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims and/or Other Secured Claims become Disallowed, withdrawn reduced, or resolved such that it is no longer necessary to reserve amounts on account of the Claims, the Cash reserved for such claims (excluding any Section 503(b)(9) Atlantic Sale/Van Mol Proceeds) shall immediately become Rabobank Liquidation Trust Assets and shall be

released to Rabobank as soon as practicable and in no event later than the next-occurring Subsequent Distribution Date or, in the event no Subsequent Distribution Date occurs prior to the Final Distribution Date, the Final Distribution Date.  For the avoidance of doubt, any rights of recovery, including any adversary proceedings, in respect of any postpetition receivables of the Debtors shall constitute Rabobank Liquidation Trust Assets

111.    "**Rabobank Liquidation Preference**" means the right of Rabobank to receive first-dollar distributions from the Liquidating Trust, without any sharing of such distributions, which shall (i) arise if and only to the extent that the Section 503(b)(9) Atlantic Sale/Van Mol Proceeds are insufficient to satisfy Allowed Section 503(b)(9) Claims in full, and (ii) be equal the amount funded by Rabobank from the Rabobank Collateral to cover the deficiency in the Section 503(b)(9) Atlantic Sale/Van Mol Proceeds to pay Allowed Section 503(b)(9) Claims in full

112.    "**Rabobank Loan Documents**" means the Rabobank Credit Agreement and all security, pledge, intercreditor, and guaranty agreements and all other documentation executed in connection with any of the foregoing.

113.    "**Rabobank Paydown**" means a payment by the Debtors to Rabobank of no less than $20 million of Rabobank Collateral as requested by the Debtors pursuant to the *Motion to Authorize Payment of a Portion of Cash Collateral to* Coöperatieve *Rabobank, U.A., New York Branch Filed by Pipeline Foods, LLC* [D.I. 668]

114.    "**Rabobank Paydown Order**" means the Order granting the *Motion to Authorize Payment of a Portion of Cash Collateral to* Coöperatieve *Rabobank, U.A., New York Branch Filed by Pipeline Foods, LLC* [D.I. 710] and approving the Rabobank Paydown.

115.    "**Rabobank Post-Effective Date Distributable Assets**" means, on each Subsequent Distribution Date and the Final Distribution Date, one-hundred percent (100%) undistributed Cash proceeds of: (a) the Rabobank Liquidation Trust Assets; (b) the Rabobank Liquidation Preference, if applicable; and (c) forty percent (40%) of all undistributed net Cash proceeds of the General Liquidation Trust Assets.

116.    "**Rabobank Secured Claim**" means the Claim of Rabobank to the extent of the value of the Rabobank Collateral.

117.    "**Rejection Bar Date**" means the deadline to file a proof of claim for damages relating to the rejection of an Executory Contract, which, pursuant to the Bar Date Order, is the later of (a) the General Bar Date or (b) 5:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days following the entry of the order approving the rejection of the executory contract or unexpired lease pursuant to which the entity asserting the rejection damages Claim is a party.

118.    "**Retained Causes of Action**" shall mean those claims and causes of action of the Debtors which shall be preserved and retained and vest with the Liquidating Trust on the Effective Date, which shall be set forth in the Plan Supplement, and which shall include all Causes of Action including Avoidance Actions, D&O Claims, Prepetition Receivables Collection Actions and, to the extent threatened or actual litigation is necessary to collect enforce the Liquidating Trust's rights, Designated Purchase Contract Proceeds and the Van Mol Proceeds.  No Person may rely on the absence of a specific reference in this Plan, the Plan Supplement or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Liquidating Trustee will not pursue any and all available Causes of Action against said Person.

119.    "**Reserve Accounts**" means the Professional Fee Claims Reserve, the Section 503(b)(9) Claims Reserve Account, the SAP Claims Reserve Account and the Post-Effective Date Reserve Account.

120.    "**SAP Claims Reserve Account**" means the reserve account of the Pipeline Foods Liquidating Trust funded from the Debtors' Cash Account, on or as soon as practicable after the Effective Date, in the Face Amount of (i) all Administrative Expense Claims asserted against any of the Debtors, (ii) Priority Tax Claims asserted against any of the Debtors, (iii) Class 1 Priority Non-Tax Claims asserted against any of the Debtors, and (iv) Class 4 Other Secured Claims asserted against any of the Debtors, plus the amount of any Administrative Expense Claims that the Debtors and the Liquidating Trustee anticipate will be filed prior to the Administrative Expense Claims Bar Date, to the extent not included within subsection (i) of this definition.  The SAP Claims Reserve Account shall be funded on the Effective Date in the amount set forth in the Plan Supplement.

121.    "**Schedules**" means the schedules of assets and liabilities and the statement of financial affairs filed by each Debtor on August 16, 2021 [D.I. 299, 301, 303, 307, 309 and 311] and any and all amendments and modifications thereto.

122.    "**Section 503(b)(9) Atlantic Sale Proceeds**" an amount equal to fifty percent (50%) of the Atlantic Facility Net Sale Proceeds, which amount totals $1,772,549.58.  Section 503(b)(9) Atlantic Sale Proceeds  are excluded from the Rabobank Effective Date Distributable Assets.

123.    "**Section 503(b)(9) Atlantic Sale/Van Mol Proceeds**" means, collectively, the Section 503(b)(9) Atlantic Sale Proceeds and the Section 503(b)(9) Van Mol Proceeds, which amount totals $1,907,549.58.

124.    "**Section 503(b)(9) Claim**" means a Claim arising under Section 503(b)(9) of the Bankruptcy Code.

125.    "**Section 503(b)(9) Reserve Account**" means the reserve account of the Pipeline Foods Liquidating Trust funded from the Section 503(b)(9) Atlantic Sale/Van Mol Proceeds and, only to the extent such proceeds are insufficient to satisfy Allowed Section 503(b)(9) Claims, additional amounts payable from Rabobank Collateral to permit payment of Allowed Section 503(b)(9) Claims in full, which additional amounts shall give rise to the Rabobank Liquidation Preference.  The Section 503(b)(9) Reserve Account shall be funded on the Effective Date in the amount set forth in the Plan Supplement.  For the avoidance of doubt, the Reserve Accounts shall be fully funded with Rabobank Collateral equal to the amount of Cash in excess of the Section 503(b)(9) Atlantic Sale/Van Mol Proceeds, if any, required to fully fund the Reserve Accounts, including the Section 503(b)(9) Reserve Account.

126.    "**Section 503(b)(9) Van Mol Proceeds**" means an amounts equal to 50% of the Van Mol Proceeds, which amount totals $135,000.

127.    "**Secured Claim**" means a Claim (i) that is secured by a Lien on property in which any of the Estates has an interest, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law, or a Claim that is subject to a valid right of the Creditor of setoff against amounts owed to any of the Debtors; (ii) to the extent of the value of the Holder's interest in any of the Estate's interest in such property or to the extent of the amount subject to a valid right of setoff, as applicable; and (iii) the amount of which (A) is undisputed by the Debtors or (B) if disputed by the Debtors, such dispute is settled by written agreement between the Debtors or the Liquidating Trustee and the Holder of such Claim, or determined, resolved or adjudicated by Final Order.

128.    "**Statutory Fees**" means any and all fees payable pursuant to Section 1930 of title 28 of the United States Code and any interest thereupon.

129.    "**Subordinated Compeer Unsecured Claims**" means the balance of the Claims of Compeer in excess of the Compeer Secured Claims.

130.    "**Subsequent Distribution Date**" means any date (other than the Final Distribution Date) on which Distributable Proceeds are Distributed to Holders of Allowed Claims following the Initial Distribution Date, as determined by the Liquidating Trustee in consultation with the Plan Oversight Committee.

131.    "**Tax or Taxes**" means any and all taxes, levies, imposts, assessments or other charges of whatever nature imposed at any time by any governmental authority or by any political subdivision or taxing authority thereof or therein, and all interest, penalties or similar liabilities with respect thereto.

132.    "**Unclaimed Distribution**" means a Distribution that is either returned as undeliverable or that is unclaimed by a Holder of an Allowed Claim on or prior to the Unclaimed Distribution Deadline.  For the avoidance of doubt, the term "Unclaimed Distribution" shall include, without limitation, any Distribution made by a check that is not returned as undeliverable but which remains unnegotiated as of the Unclaimed Distribution Deadline.

133.    "**Unclaimed Distribution Deadline**" means ninety (90) days from the date the Liquidating Trustee makes a Distribution of Cash or other property under the Plan to a Holder of an Allowed Claim.

134.    "**Unimpaired**" means not Impaired.

135.    "**Unsecured Creditor Liquidation Trust Assets**" means all Avoidance Actions. For the avoidance of doubt, the Liquidating Trustee shall have discretion to prosecute or not prosecute any and all Avoidance Actions.

136.    "**Unsecured Creditor Post-Effective Date Distributable Assets**" means, on each Subsequent Distribution Date and the Final Distribution Date, subject to the prior payment in full of all amounts owed, if any, in respect of the Rabobank Liquidation Preference, (a) one-hundred percent (100%) of the undistributed net Cash proceeds of the Unsecured Creditor Liquidation Trust Assets, plus (b) sixty percent (60%) of all undistributed Cash proceeds of the General Liquidation Trust Assets.

137.    "**UST**" means the Office of the United States Trustee for the District of Delaware.

138.    "**Van Mol Proceeds**" means $270,000 or such amounts actually paid to the Debtors by Van Mol Organics, LLC in accordance with the *Order, Granting, in Part, Tenth Omnibus Motion of the Debtors for Entry of an Order Authorizing the Rejection of Certain Executory Contracts as to Contract with Van Mol Organics, LLC Only* [D.I. 605].

139.    "**Voting Record Date**" means either January 20, 2022 (i.e., the date of the proposed hearing on the Debtors' motion for approval of the Disclosure Statement or (b) the date of entry of an Order approving the Disclosure Statement.

B.      **Interpretation; Application of Definitions and Rules of Construction**

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter.  Unless otherwise specified, all section, article, schedule or exhibit references in this Plan are to the respective section in, Article of, Schedule to, or Exhibit to the Plan.  The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Plan as a whole and not to

any particular section, subsection or clause contained in the Plan.  The word "including" as used in this Plan shall mean "including without limitation" or "including but not limited to" and shall not be limiting in nature.  The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the construction of this Plan.  A term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code.  The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of this Plan.

## II.      <u>TREATMENT OF UNCLASSIFIED CLAIMS</u>

A.      <u>Section 503(b)(9) Claims</u>

Each Holder of an Allowed Section 503(b)(9) Claim, if any, shall receive Cash from the Section 503(b)(9) Reserve Account in an amount equal to such Allowed Section 503(b)(9) Claim on, or as soon as reasonably practicable after, the later of (i) the Effective Date, if the Allowed Section 503(b)(9) Claim is an Allowed Section 503(b)(9) Claim on the Effective Date, or (ii) the date such Claim becomes an Allowed Section 503(b)(9) Claim.

B.      <u>Administrative Expense Claims</u>

Each Holder of an Allowed Administrative Expense Claim, if any, shall receive Cash from the SAP Claims Reserve Account in an amount equal to such Allowed Administrative Expense Claim on, or as soon as reasonably practicable after, the later of (i) the Effective Date, if the Administrative Expense Claim is an Allowed Administrative Expense Claim on the Effective Date, or (ii) the date such Claim becomes an Allowed Administrative Expense Claim.

C.      <u>Priority Tax Claims</u>

Each Holder of an Allowed Priority Tax Claim, if any, shall receive Cash from the SAP Claims Reserve Account in an amount equal to such Allowed Priority Tax Claim on, or as soon as reasonably practicable after, the later of (i) the Effective Date, if the Priority Tax Claim is an

Allowed Priority Tax Claim on the Effective Date, or (ii) the date such Claim becomes an Allowed Priority Tax Claim.

**D.**    **Professional Fee Claims**

All final requests for Professional Fee Claims incurred prior to the Effective Date shall be filed and served on the Notice Parties by no later than forty-five (45) days after the Effective Date, unless otherwise agreed by the Debtors or the Liquidating Trustee.  Upon the Effective Date, any requirement that Professionals comply with Sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and Professionals may be employed and paid in the ordinary course of business without any further notice to, or action, Order, or approval of, the Bankruptcy Court.

On or as soon as reasonably practicable after the later of (i) the Effective Date or (ii) the date a Professional Fee Claim becomes an Allowed Professional Fee Claim, a Holder of an Allowed Professional Fee Claim shall, to the extent such Allowed Professional Fee Claim is consistent with the Final Cash Collateral Order, and the Budget, receive Cash from the Professional Fee Claims Reserve equal to the unpaid portion of the Allowed Professional Fee Claim.

**E.**    **Payment of Statutory Fees**

All Statutory Fees incurred prior to the Effective Date shall be paid by the Debtors on the Effective Date.  After the Effective Date, the Liquidating Trustee shall pay any and all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the UST.  Notwithstanding the limited substantive consolidation of the Debtors called for in this Plan, each of the Debtors shall remain obligated to pay quarterly fees to the UST until the earliest of that particular Debtor's case being closed, dismissed or converted to a case under chapter 7 of the Bankruptcy Code.

### III.    CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

#### A.    Treatment of Claims

##### 1.    Class 1 –Priority Non-Tax Claims

###### a.    Classification

Class 1 consists of Priority Non-Tax Claims.

###### b.    Impairment and Voting

Class 1 is Unimpaired by the Plan.  Holders of Allowed Priority Non-Tax Claims are deemed to have accepted the Plan and therefore, are not entitled to vote to accept or reject the Plan.

###### c.    Treatment

Except to the extent that a Holder of an Allowed Priority Non-Tax Claim against the Debtors has been paid prior to the Effective Date or agrees to a different treatment, on or as soon as reasonably practicable after the later of (i) the Effective Date, if the Priority Non-Tax Claim is an Allowed Priority Non-Tax Claim on the Effective Date, or (ii) the date such Claim becomes an Allowed Priority Non-Tax Claim, the Liquidating Trustee shall pay to each Holder of an Allowed Priority Non-Tax Claim, Cash from the SAP Claims Reserve Account in an amount equal to such Allowed Priority Non-Tax Claim.

##### 2.    Class 2 – Rabobank Secured Claim

###### a.    Classification

Class 2 consists of the Rabobank Secured Claim.

###### b.    Impairment and Voting

Class 2 is Impaired.  Rabobank is entitled to vote on the Plan.

### c.      Treatment

In full satisfaction of the Allowed Rabobank Secured Claim, the Liquidating Trustee shall pay Rabobank: (1) on or as reasonably practicable after the Effective Date, the Rabobank Effective Date Distributable Assets; and (b) on each Subsequent Distribution Date and the Final Distribution Date, all then available proceeds of the Rabobank Post-Effective Date Distributable Assets, including, without limitation, any then available proceeds of the Rabobank Liquidation Preference, if any.

### 3.      Class 3 – Compeer Secured Claims

### a.      Classification

Class 3 consists of the Compeer Secured Claims.

### b.      Impairment and Voting

Class 3 is Impaired.  Holders of Allowed Compeer Secured Claims in Class 3 are entitled to vote on the Plan; *provided*, *however*, that if the Compeer Deed-in Lieu Transaction shall have closed as of the Voting Record Date, the Holders of the Allowed Compeer Secured Claim in Class 3 shall be Unimpaired and shall not be entitled to vote on the Plan.

### c.      Treatment

In full satisfaction of an Allowed Compeer Secured Claim, the Holders of Allowed Compeer Secured Claims, if any, shall receive the Compeer Collateral securing such Claims; *provided*, *however*, that upon the closing of the Compeer Deed-in-Lieu Transaction, all Compeer Secured Claims shall be extinguished.

### 4.      Class 4 – Other Secured Claims

### a.      Classification

Class 4 consists of all Other Secured Claims.

### b.    Impairment and Voting

Class 4 is Unimpaired by the Plan.  Holders of Class 4 Other Secured Claims are deemed to have accepted the Plan and therefore, are not entitled to vote to accept or reject the Plan.

### c.    Treatment

Except to the extent that a Holder of an Allowed Class 4 Other Secured Claim has been paid prior to the Effective Date or agrees to a different treatment, on or as soon as is reasonably practicable after the later of (a) the Effective Date, if the Class 4 Other Secured Claim is an Allowed Class 4 Other Secured Claim on the Effective Date or (b) the date such Claim becomes an Allowed Other Secured Claim, the Liquidating Trustee shall, taking reasonable direction from Rabobank, either: (i) pay to each Holder of an Allowed Class 4 Other Secured Claim Cash from the SAP Claims Reserve Account in an amount equal to such Allowed Class 4 Other Secured Claim; or (ii) release to such Holder the collateral securing such Allowed Class 4 Other Secured Claim.

### 5.    Class 5 – General Unsecured Claims

### a.    Classification

Class 5 consists of General Unsecured Claims.

### b.    Impairment and Voting

Class 5 is Impaired. Holders of Allowed General Unsecured Claims in Class 5 are entitled to vote on the Plan.

### c.    Treatment

Except to the extent that a Holder of an Allowed Class 5 General Unsecured Claim agrees to a different treatment, each Holder of an Allowed Class 5 General Unsecured Claim shall receive a Pro Rata Share of: (1) the Excess 503(b)(9) Atlantic Sale/Van Mol Proceeds, if any, to the extent the Liquidating Trustee deems advisable, with said funds being transferred to

the Distribution Account and earmarked for Allowed General Unsecured Claims if the Liquidating Trustee declines to make said distribution; and (2) on each Subsequent Distribution Date, to the extent the Liquidating Trustee deems advisable, and the Final Distribution Date, subject to the prior payment in full of any amounts owed to Rabobank in respect of the Rabobank Liquidation Preference, all then-available proceeds (minus all actual and anticipated Post-Effective Date Expenses) of the Unsecured Creditor Post-Effective Date Distributable Assets.

6.      **Class 6 – Subordinated Compeer Unsecured Claims**

a.      **Classification**

Class 6 consists of the Subordinated Compeer Unsecured Claims.

b.      **Impairment and Voting**

Class 6 is Impaired and deemed to reject the Plan.

c.      **Treatment**

Except to the extent that a Holder of an Allowed Subordinated Compeer Unsecured Claim agrees to different treatment, each Holder of an Allowed Subordinated Compeer Unsecured Claim shall receive a Pro Rata Share of all then-available proceeds of the Unsecured Creditor Post-Effective Date Distributable Assets once, and only to the extent that, all Allowed General Unsecured Claims have been paid in full. The Debtors and the Creditors' Committee do not anticipate that any payments will be made to the Holders of Allowed Subordinated Compeer Unsecured Claims.

7.      **Class 7 – Intercompany Claims**

a.      **Classification**

Class 7 consists of all Intercompany Claims.

### b.       Impairment and Voting

Class 7 is Impaired and deemed to reject the Plan.

### c.       Treatment

Allowed Intercompany Claims shall not receive a Distribution under the Plan; provided, however, that Intercompany Claims held by Pipeline Foods, LLC against Pipeline Foods, ULC shall be Allowed in the amount of $7,000,279.90 and Pipeline Foods, LLC shall receive, on the Effective Date and prior to making other distributions under this Plan, in full satisfaction of such Allowed Intercompany Claims, all Cash held by Pipeline Foods, ULC.  For the avoidance of doubt, all Cash received by Pipeline Foods, LLC on account of such Allowed Intercompany Claims against Pipeline Foods, ULC shall remain subject to all then-existing liens, claims, and encumbrances, and shall be immediately distributed to creditors in accordance with the terms of this Plan.  This means that, notwithstanding the allowance of its Intercompany Claims, because any and all amounts to be received by Pipeline Foods, LLC on account of such Claims will be distributed in accordance with this Plan and shall not be retained by Pipeline Foods, LLC, Pipeline Foods, LLC, in effect, will not receive a recovery on account of its Allowed Intercompany Claims.

### 8.       Class 8 –Equity Interests

### a.       Classification

Class 8 consists of all Equity Interests.

### b.       Impairment and Voting

Class 8 is impaired and deemed to reject the Plan.

   c.  **Treatment**

On the Effective Date, all Equity Interests shall be deemed canceled, extinguished and discharged and of no further force or effect, and the Holders of Equity Interests shall not be entitled to receive or retain any property on account of such Equity Interests.

**B.**  <u>**Modification of Treatment of Claims**</u>

The Liquidating Trustee reserves the right to modify the treatment of any Allowed Claim in any manner adverse only to the Holder of such Claim at any time after the Effective Date upon the consent of the Holder of the Claim whose Allowed Claim is being adversely affected.

**C.**  <u>**Cramdown**</u>

With respect to the Impaired Classes of Claims and Equity Interests that reject or that are deemed to have rejected the Plan, the Debtors hereby request, without any delay in the occurrence of the Confirmation Hearing or Effective Date, that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code with respect to such non-accepting Classes, in which case the Plan shall constitute a motion for such relief.

  **IV.**  <u>**PROVISIONS REGARDING THE POST-CONFIRMATION LIQUIDATING TRUST**</u>

**A.**  <u>**Appointment of the Liquidating Trustee**</u>

On the Effective Date, all assets of the Debtors will be transferred to the Pipeline Foods Liquidating Trust free and clear of all Liens, Claims, encumbrances and interests of any kind, except as provided otherwise in this Plan, and the Liquidating Trustee shall be appointed and thereafter serve in accordance with this Plan and the Liquidating Trust Agreement. Except as otherwise provided in the Plan or Confirmation Order, in accordance with Section 1123(a) of the Bankruptcy Code, all Causes of Action (including Avoidance Actions, D&O Claims, Prepetition Receivables Collection Actions and, to the extent threatened or actual litigation is necessary to

collect or enforce the Liquidating Trust's rights, Designated Purchase Contract Proceeds and the Van Mol Proceeds), shall automatically be transferred to and vest in the Liquidating Trustee on the Effective Date. The Liquidating Trustee shall not be required to give any bond or surety or other security for the performance of his or her duties unless otherwise directed by the Bankruptcy Court. The material terms of the Liquidating Trustee's compensation shall be included in the Liquidating Trust Agreement. Effective as of the Effective Date, and without any further action of any Person or Entity, the board of directors or managing members of each Post-Effective Date Debtor shall be comprised solely of the Liquidating Trustee. Effective as of the Effective Date, and without any further action or any Person or Entity, the members of the board of directors or the managing members of each Debtor prior to the Effective Date, in their capacities as such, shall have no continuing obligations to any of the Post-Effective Date Debtors on or after the Effective Date. Effective as of the Effective Date, the sole officer of each Post-Effective Date Debtor shall be the Liquidating Trustee.

**B.**     **Rights and Powers of the Liquidating Trustee**

Subject to the rights and duties of the Plan Oversight Committee, the Liquidating Trustee shall, in addition to any powers and authority specifically set forth in other provisions of the Plan or in the Liquidating Trust Agreement, be empowered to act on behalf of the Estates, the Post-Effective Date Debtors and the Pipeline Foods Liquidating Trust to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan or the Liquidating Trust Agreement, (ii) establish and maintain the Distribution Account and the Reserve Accounts, including the right to not transfer to the Distribution Account or withhold from distribution on account of Rabobank Post-Effective Date Liquidating Trust Assets and Unsecured Creditor Post-Effective Date Liquidating Trust Assets reasonably anticipated but unaccrued or unbilled Post-Effective Date Expenses, (iii) make Distributions in accordance with

the Plan, (iv) object to and/or settle Claims, as appropriate, (v) employ and compensate professionals, experts and consultants to represent the Liquidating Trustee with respect to his or her responsibilities, (vi) assert, not assert, abandon or settle any of the Debtors' claims, Causes of Action (including Avoidance Actions, D&O Claims, Prepetition Receivables Collection Actions and, to the extent threatened or actual litigation is necessary to collect or enforce the Pipeline Foods Liquidating Trusts' rights, Designated Purchase Contract Proceeds and the Van Mol Proceeds), rights of setoff, or other legal or equitable defenses, (vii) file tax returns and other governmental reports as may be required, and pay such taxes or other obligations of the Debtors, the Debtors' Estates and the Pipeline Foods Liquidating Trust as the Liquidating Trustee deems reasonable and prudent, and (viii) exercise such other powers as may be vested in the Post-Effective Date Debtors and/or the Liquidating Trustee by Order of the Bankruptcy Court, pursuant to this Plan, by the Liquidating Trust Agreement, or as deemed by the Liquidating Trustee to be necessary and/or desirable to implement the provisions hereof.

The Liquidating Trustee is the successor to the Debtors and the Debtors' Estates. The Liquidating Trustee may take any and all actions that he or she deems reasonably necessary or appropriate to defend against any Claim, including the right to: (a) exercise any and all judgment and discretion with respect to the manner in which to defend against or settle any Claim, including the retention of professionals, experts and consultants; and (b) enter into a settlement agreement or agreements without approval of the Bankruptcy Court.

As set forth in the Liquidating Trust Agreement, and notwithstanding anything to the contrary herein, the Liquidating Trustee shall take reasonable direction from Rabobank with respect to the resolution of any Section 503(b)(9) Claims or Other Secured Claims that are

Disputed Claims.  Post-Effective Date Expenses shall be paid by the Liquidating Trustee from the Post-Effective Date Reserve Account.

**C.**     **Plan Oversight Committee**

On the Effective Date, there shall be established a Plan Oversight Committee.  The Plan Oversight Committee shall have the responsibility to oversee and advise the Liquidating Trustee with respect to the liquidation and distribution of the Debtors' assets in accordance with the Plan. The specific rights, powers and duties of the Plan Oversight Committee, the membership thereof, and the mechanics for appointment and replacement of such members, shall be set forth in the Plan Supplement.

**D.**     **Post Confirmation Date Expenses of the Liquidating Trustee and the Post-Effective Date Debtors**

Without further order of the Bankruptcy Court, the Liquidating Trustee shall, from the Post-Effective Date Reserve Account, receive reasonable compensation for services rendered to the Estates, the Post-Effective Date Debtors and/or the Pipeline Foods Liquidating Trust pursuant to the Plan and/or the Liquidating Trust Agreement.

In addition, the Liquidating Trustee may pay, from the Post-Effective Date Reserve Account, all reasonable fees and expenses incurred by the Liquidating Trustee on or after the Effective Date (including but subject to the rights of the Plan Oversight Committee, reasonable attorney and professional fees and expenses) without further order of the Bankruptcy Court.

**E.**     **Limitation of Liability**

No recourse will ever be had, directly or indirectly, against the Liquidating Trustee, or his, her, or its members, officers, directors, employees, professionals, representatives, agents, successors, or assigns, by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge, or note, nor upon any promise, contract, instrument,

35

undertaking, obligation, covenant, or agreement whatsoever executed by the Pipeline Foods Liquidating Trust under this Plan or by reason of the creation of any indebtedness by the Pipeline Foods Liquidating Trust or the Liquidating Trustee under this Plan. All such liabilities under this Plan will be enforceable only against, and will be satisfied only out of, the Unsecured Creditor Post-Effective Date Distributable Assets, and the Liquidating Trustee shall have no personal liability to satisfy any such liability.  The Liquidating Trustee and its agents shall not be deemed to be the agent for any holder of a Claim in connection with Distributions made under this Plan. The Pipeline Foods Liquidating Trust and the Liquidating Trustee and their respective officers, directors, employees, professionals, Representatives, agents, successors, or assigns will not be liable for any act they may do, or omit to do, hereunder in good faith and in the exercise of their sound judgment; provided, however, that this section will not apply to any gross negligence or willful misconduct by the Pipeline Foods Liquidating Trust and the Liquidating Trustee or their respective officers, directors, employees, professionals, Representatives, agents, successors, or assigns. In additional hereof, the Liquidating Trustee shall enjoy all of the rights, powers, immunities, and privileges available to a chapter 7 trustee.

## V.    PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN

### A.    Method of Payment

Unless otherwise expressly agreed in writing, all Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank or an electronic wire.

### B.    Objections to and Resolution of Claims

Subject to the rights and duties of the Plan Oversight Committee, the Liquidating Trustee shall have the right to file objections and/or motions to estimate any and all Claims after the Effective Date.   The Liquidating Trustee shall have the authority to compromise, settle,

otherwise resolve or withdraw any objections, without approval of the Bankruptcy Court. The Liquidating Trustee shall further have the authority to resolve and settle any and all Claims without approval of the Bankruptcy Court.

## C.    Claims Objection Deadline

Subject to the rights and duties of the Plan Oversight Committee noted above, the Liquidating Trustee, and any other party in interest to the extent permitted pursuant to Section 502(a) of the Bankruptcy Code, shall file and serve any objection to any Claims, including Administrative Expense Claims and Section 503(b)(9) Claims, no later than the Claims Objection Deadline, as such Claims Objection Deadline may be extended from time to time upon motion by the Liquidating Trustee in accordance with the terms of this Plan.

## D.    No Distribution Pending Allowance

Notwithstanding any other provision of the Plan, no payment or Distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order or as otherwise permitted by this Plan.

## E.    Claims Reserve

On any date that Distributions are to be made under the terms of the Plan, the Liquidating Trustee shall reserve Cash or property equal to one-hundred percent (100%) of the Cash or property that would be Distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim, unless otherwise Ordered by the Bankruptcy Court following notice to the affected Claim Holder. Such Cash or property, as the case may be, shall be held in reserve for the benefit of the Holders of all such Disputed Claims pending determination of their entitlement thereto. To the extent any Disputed Claims are Disallowed, withdrawn, reduced, or resolved such that it is no longer necessary to reserve amounts on account of the Disputed Claims, (i) the Cash reserved for such claims shall be released to

Rabobank as soon as practicable and in no event later than the next-occurring Subsequent Distribution Date or, in the event no Subsequent Distribution Date occurs prior to the Final Distribution Date, the Final Distribution Date; *provided*, *however*, that (ii) any Cash reserved from the Section 503(b)(9) Atlantic Sale/Van Mol Proceeds for the payment of Disputed Claims that are Section 503(b)(9) Claims shall instead, upon such Disputed Claims being Disallowed, withdrawn, reduced, or resolved such that it is no longer necessary to reserve amounts on account of the Disputed Claims shall be treated as Unsecured Creditor Post-Effective Date Distributable Assets and transferred to the Distribution Account; *provided, further*, that to the extent Rabobank's Collateral, excluding the Section 503(b)(9) Atlantic Sale/Van Mol Proceeds, has been required to fund the Section 503(b)(9) Reserve Account as a result of any insufficiency in the Section 503(b)(9) Atlantic Sale/Van Mol Proceeds, funds from the Section 503(b)(9) Claims Reserve Account shall first be released to Rabobank pursuant to clause (i) herein, resulting in a dollar-for-dollar reduction of any Rabobank Liquidation Preference, and shall only be treated as Unsecured Creditor Post-Effective Date Distributable Assets in accordance with clause (ii) herein once the Rabobank Liquidation Preference has been reduced to $0.00.  Funds attributable to Section 503(b)(9) Atlantic Sale/Van Mol Proceeds shall not be used to pay the Rabobank Liquidation Preference or otherwise released to Rabobank.

F.      **Adjustments to Claims Without Objection**

After the Effective Date, upon 10 days' written notice to the affected Claimant, any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be marked as satisfied, adjusted or expunged on the register of Claims in the Chapter 11 Cases by the Balloting Agent at the direction of the Liquidating Trustee without a Claim objection having to be filed.

G.    **Late Claims**

Except as provided herein or otherwise agreed, any and all Holders of proofs of claim filed after the applicable Bar Date, including for the avoidance of doubt, the originally applicable Bar Date with respect to any transferred Claim, including any Claim acquired by right of subrogation, shall not be treated as Creditors for purposes of Distribution pursuant to Bankruptcy Rule 3003(c)(2) and the Bar Date Order and shall be deemed disallowed without further order of the Bankruptcy Court unless, on or before the Confirmation Date, such late Claim has been deemed timely filed by a Final Order.  Even if such late Claim has been deemed timely filed by a Final Order, it still may be objected to as set forth in this Plan or the Bankruptcy Code.

H.    **Distribution Record Date**

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date will be treated as the Holders of those Claims for all purposes.  The Liquidating Trustee shall have no obligation to recognize any transfer of any Claim occurring after the Distribution Record Date.  In making any Distribution with respect to any Claim, the Liquidating Trustee shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of claim filed with respect thereto or on the Schedules as the Holder thereof as of the close of business on the Distribution Record Date and upon such other evidence or record of transfer or assignment that are actually known to the Liquidating Trustee as of the Distribution Record Date.

I.    **Delivery of Distributions**

Except as provided herein, Distributions to Holders of Allowed Claims shall be made: (1) at the addresses set forth on the respective proofs of claim filed by such Holders; (2) at the addresses set forth in any written notices of address changes delivered to the Liquidating Trustee

after the date of any related proof of claim; or (3) at the address reflected in the Schedules if no proof of claim is filed and the Liquidating Trustee has not received a written notice of a change of address.

If the Distribution to the Holder of any Claim is returned to the Liquidating Trustee as undeliverable, no further Distribution shall be made to such Holder unless and until the Liquidating Trustee is notified in writing of such Holder's then current address.  Undeliverable Distributions shall remain in the possession of the Liquidating Trustee until the earlier of (i) such time as a Distribution becomes deliverable or (ii) such time as an undeliverable Distribution becomes an Unclaimed Distribution.

Nothing contained in the Plan shall require the Liquidating Trustee to locate any Holder of an Allowed Claim.

**J.**     **Unclaimed Distributions**

Any Unclaimed Distributions that are not claimed on or before the Unclaimed Distribution Deadline shall revert to the Pipeline Foods Liquidating Trust notwithstanding any federal, state, or other escheat law to the contrary.  The Liquidating Trustee shall have no further obligation to make any Distribution to the holder of such Claim on account of such Claim, any entitlement of any holder of such Claim to any such Distributions shall be forfeited. The Pipeline Foods Liquidating Trust shall thereafter, and within one hundred twenty (120) days after the Final Distribution Date, donate such Unclaimed Distributions to a 501(c)(3) charity to be selected by the Liquidating Trustee in consultation with the Plan Oversight Committee.

**K.**     _**De Minimis** Distributions_

The Liquidating Trustee shall not distribute cash to the Holder of an Allowed Claim in an Impaired Class if the amount of Cash to be distributed on account of such Claim is less than $25.00 in the aggregate.  Any holder of an Allowed Claim on account of which the amount of

Cash to be distributed is less than $25.00 in the aggregate will be forever barred from asserting its claim for such distribution against the Liquidating Trustee, the Debtors or their property. Any Cash not distributed pursuant to this Article V of the Plan will be property of the Estates and transferred to the Pipeline Foods Liquidating Trust.

**L.**    **Setoff**

The Liquidating Trustee shall have and retain the right to reduce any Claim by way of setoff in accordance with the Debtors' Books and Records.

## VI.    IMPLEMENTATION AND EFFECT OF CONFIRMATION OF PLAN

**A.**    **Means for Implementation of the Plan**

In addition to the provisions set forth elsewhere in the Plan, the following shall constitute the means for implementation of the Plan:

**1.**    **Limited Consolidation**

Entry of the Confirmation Order shall constitute approval, pursuant to section 105(a) of the Bankruptcy Code, as of the Effective Date, of the substantive consolidation of the Debtors for all purposes related to this Plan, including voting, confirmation, distributions, and Claim determinations. On the Effective Date: (i) all assets and liabilities of the Debtors shall, solely for Distribution purposes, be treated on an aggregated basis, (ii) each Claim against any of the Debtors shall be deemed a single Claim against and a single obligation of all of the Debtors, (iii) any Claims scheduled, filed or to be filed in the Chapter 11 Cases shall be deemed single Claims against the Debtors, (iv) all guarantees of one Debtor of the payment, performance, or collection of obligations of another Debtor shall be eliminated and canceled, (v) all transfers, disbursements and Distributions on account of Claims made by or on behalf of any of the Debtors' Estates hereunder will be deemed to be made by or on behalf of all of the Debtors' Estates, and (vi) any obligation of the Debtors as to Claims will be deemed to be one obligation of all of the Debtors.

Holders of Allowed Claims entitled to Distributions under this Plan shall be entitled to their share of assets available for Distribution to such Claims without regard to which Debtor was originally liable for such Claims. Except as set forth herein, such limited consolidation shall not (other than for purposes related to this Plan) affect the legal and corporate structures of the Debtors. Moreover, notwithstanding the limited consolidation provided for herein, each and every Debtor shall remain responsible for the payment of quarterly fees pursuant to the provisions of 28 U.S.C. §1930(a)(6) until the earlier of such time that a particular case is closed, dismissed, or converted.

**This Plan shall serve as a motion seeking entry of an order consolidating the Debtors, as described and to the limited extent set forth above. Unless an objection to such consolidation is made in writing by any creditor affected by the Plan, filed with the Bankruptcy Court and served in accordance with the objection procedures established by the Bankruptcy Court, the consolidation order (which may be the Confirmation Order) may be entered by the Bankruptcy Court. In the event any such objections are timely filed, a hearing with respect thereto shall occur at or before the Confirmation Hearing.**

　　　2.　　**Funding of the Reserve Accounts**

　　　　　a.　　<u>Professional Fee Claims Reserve</u>. On or as soon as practicable after the Effective Date, the Liquidating Trustee shall fund the Professional Fee Claims Reserve from Cash in the Debtors' Cash Account, in the amount set forth in the Plan Supplement. There shall be deposited into the Professional Fee Claims Reserve an amount sufficient for the payment of all Professional Fee Claims that are anticipated to be Allowed to the extent such Professional Fee Claims did not exceed those permitted to be paid pursuant to the Final Cash Collateral Order and the Budget.

Any Cash remaining in the Professional Fee Claims Reserve after payment of all Allowed Professional Fee Claims shall be treated as Rabobank Post-Effective Date Distributable Assets and shall be promptly distributed accordingly.

The Professional Fee Claims Reserve shall be established, and at all times be maintained, as a segregated account.

b.      <u>Post-Effective Date Reserve Account</u>.  On or as soon as practicable after the Effective Date, the Liquidating Trustee shall fund the Post-Effective Date Reserve Account with the Chubb Settlement Estate Proceeds.

The Post-Effective Date Reserve Account shall be established, and at all times be maintained, as a segregated account.

Unless otherwise specifically provided hereunder, all Cash obtained by the Post-Effective Date Debtors or the Liquidating Trustee after the Effective Date from whatever source shall be deposited by the Liquidating Trustee into the Post-Effective Date Reserve Account.

The Liquidating Trustee shall, in consultation with the Plan Oversight Committee, transfer Cash in the Post-Effective Date Reserve Account to the Distribution Account only after full payment of, or other provision for, all actual and anticipated Post-Effective Date Expenses.

c.      <u>SAP Claims Reserve Account</u>.  On or as soon as practicable after the Effective Date, the Liquidating Trustee shall establish the SAP Claims Reserve Account and fund such account from the Debtors' Cash Account, in an amount equal to the Face Amount of all: (i) Administrative Expense Claims asserted against any of the Debtors; (ii) Priority Tax Claims asserted against any of the Debtors; (iii) Class 1 Priority Non-Tax Claims asserted against any of the Debtors; and (iv) Class 4 Other Secured Claims asserted against any of the Debtors, <u>plus</u> the amount of any Administrative Expense Claims that the Debtors and the

Liquidating Trustee anticipate will be filed prior to the Administrative Expense Claims Bar Date, to the extent not included within subsection (i) herein.  If and to the extent any such Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims and/or Other Secured Claims become Disallowed, withdrawn reduced, or resolved such that it is no longer necessary to reserve amounts on account of the Claims, the Cash reserved for such claims shall be released to Rabobank as soon as practicable and in no event later than the next-occurring Subsequent Distribution Date or, in the event no Subsequent Distribution Date occurs prior to the Final Distribution Date, the Final Distribution Date.

The SAP Claims Reserve Account shall be established, and at all times be maintained, as a segregated account.

> d. <u>Section 503(b)(9) Claims Reserve Account</u>. On or as soon as practicable after the Effective Date, the Liquidating Trustee shall fund the Section 503(b)(9) Claims Reserve Account, which shall be established, and at all times maintained, as a segregated account.  To the extent any Section 503(b)(9) Claims are Disallowed, withdrawn, reduced, or resolved such that it is no longer necessary to reserve amounts on account of such Section 503(b)(9) Claims, (i) the Cash reserved for such claims shall be released to Rabobank as soon as practicable and in no event later than the next-occurring Subsequent Distribution Date or, in the event no Subsequent Distribution Date occurs prior to the Final Distribution Date, the Final Distribution Date; *provided*, *however*, that (ii) any Cash reserved from the Section 503(b)(9) Atlantic Sale/Van Mol Proceeds for the payment of Section 503(b)(9) Claims shall instead, upon such Disputed Claims being Disallowed, withdrawn, reduced, or resolved such that it is no longer necessary to reserve amounts on account of the Disputed Claims, be treated as Unsecured Creditor Post-Effective Date Distributable Assets; *provided, further*, that to the extent Rabobank's Collateral, excluding

the Section 503(b)(9) Atlantic Sale/Van Mol Proceeds, has been required to fund the Section 503(b)(9) Reserve Account as a result of any insufficiency in the Section 503(b)(9) Atlantic Sale/Van Mol Proceeds, any funds released from the Section 503(b)(9) Claims Reserve Account shall first be released to Rabobank pursuant to clause (i), resulting in a dollar-for-dollar reduction of any Rabobank Liquidation Preference, and shall only be treated as Unsecured Creditor Post-Effective Date Distributable Assets in accordance with clause (ii) once the Rabobank Liquidation Preference has been reduced to $0.00.

### 3. Funding of the Distribution Account

On or as soon as practicable after the Effective Date, as Distributable Proceeds become available, the Liquidating Trustee shall transfer such Distributable Proceeds to the Distribution Account in accordance with the terms of the Plan.

The Distribution Account shall be established, and at all times be maintained, as a segregated account.

### 4. Implementing Actions

Unless otherwise provided in the Plan, on the Effective Date or as soon thereafter as practicable, the following shall occur in implementation of the Plan: (i) all actions, documents and agreements necessary to implement the Plan shall be effected or executed; (ii) the Debtors shall obtain all authorizations, consents, regulatory approvals, rulings, opinions or other documents, if any, that are determined by the Debtors to be necessary to implement the Plan; (iii) the Liquidating Trustee shall make all Distributions, if any, required to be made on the Effective Date pursuant to the Plan; and (iv) the Professional Fee Claims Reserve Account, the Post-Effective Date Reserve Account, the SAP Claims Reserve Account, and the Section 503(b)(9) Claims Reserve Account shall be established and funded in a manner consistent with Article

VI(A)(2) of the Plan.  All Cash in such accounts shall be deposited or invested in accordance with section 345 of the Bankruptcy Code and Local Rule 4001-3.

     **5.**     **Corporate Action; Effectuating Documents; Further Transactions**

From and after the Effective Date, the Post-Effective Date Debtors shall continue in existence for all purposes contemplated or required by the Plan, including (i) winding up their affairs as expeditiously as reasonably possible, (ii) filing appropriate tax returns, and (iii) dissolution.  Upon the Effective Date, all transactions and other actions provided for under the Plan shall be deemed to be authorized and approved by the Debtors without any requirement of further action by the Debtors, the Debtors' members, the Debtors' shareholders or the Debtors' boards of directors.  As of the Effective Date, the Liquidating Trustee shall be deemed to be the sole equity holder and the only duly authorized, board-appointed officer, director or manager of each of the Post-Effective Date Debtors and all by-laws, articles or certificates of incorporation or agreements and related corporate documents of the Post-Effective Date Debtors shall be deemed to have been amended by the Plan to permit and authorize such sole appointment.

After the Effective Date, to the extent consistent with the Plan Documents, the Liquidating Trustee shall be authorized to take, in his or her sole discretion, all actions reasonably necessary to dissolve one or more of the Debtors under applicable law, and, from the Post-Effective Date Reserve, to pay all reasonable costs and expenses in connection with such dissolution, including the costs of preparing or filing any necessary paperwork or documentation. Upon the Final Distribution Date, any Post-Effective Date Debtors that have not been previously dissolved shall be deemed dissolved for all purposes without the necessity for other or further actions to be taken by or on behalf of the Post-Effective Date Debtors, and the Liquidating Trustee shall be authorized to file any documents as he or she may deem necessary or desirable

in connection with such dissolution.  Further, upon the entry of a final decree or other order of the Bankruptcy Court, the Liquidating Trustee shall be authorized to discard or destroy any and all of the Post-Effective Date Debtors' Books and Records except to the extent that such books relate to open tax years, are necessary for the completion and filing of tax returns or the analysis or prosecution of Causes of Action.

6.      **Dissolution of the Creditors' Committee**

On the Effective Date, the Creditors' Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to, arising from or in connection with the Chapter 11 Cases, and the retention or employment of the Creditors' Committee's attorneys, accountants, and other agents, if any, shall terminate, except for purposes of filing and prosecuting Final Fee Applications or any appeal of the Confirmation Order.

7.      **Contribution of Rabobank D&O Claims**

On the Effective Date, Rabobank shall be deemed to have contributed to the Pipeline Foods Liquidating Trust all Rabobank D&O Claims.

8.      **Tax-Free Repatriation of Cash Held by Pipeline Foods, ULC**

As set forth in Article III.A.7(c) hereof, on the Effective Date, all Cash held by Debtor Pipeline Foods, ULC shall be repatriated to the United States through the tax-free repayment of a valid, and pre-existing intercompany obligation owed by Pipeline Foods, ULC to Pipeline Foods, LLC.  All such repatriated Cash shall then be distributed in accordance with the provisions of this Plan, resulting in no net-reduction of distributable assets to any creditor or creditor constituency.

## VII.    EXCULPATION, RELEASES, AND INJUNCTIONS

### A.    Exculpation and Limitation of Liability

EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED HEREIN, EACH OF THE EXCULPATED PARTIES SHALL NOT BE LIABLE FOR ANY CLAIM, ACTION, PROCEEDING, CAUSE OF ACTION, SUIT, ACCOUNT, CONTROVERSY, AGREEMENT, PROMISE, RIGHT TO LEGAL REMEDIES, RIGHT TO EQUITABLE REMEDIES, RIGHT TO PAYMENT OR CLAIM (AS DEFINED IN SECTION 101(5) OF THE BANKRUPTCY CODE), WHETHER KNOWN, UNKNOWN, REDUCED TO JUDGMENT, NOT REDUCED TO JUDGMENT, LIQUIDATED, UNLIQUIDATED, FIXED, CONTINGENT, MATURED, UNMATURED, DISPUTED, UNDISPUTED, SECURED OR UNSECURED AND WHETHER ASSERTED OR ASSERTABLE DIRECTLY OR DERIVATIVELY, IN LAW, EQUITY OR OTHERWISE TO ONE ANOTHER OR TO ANY HOLDER OF A CLAIM OR EQUITY INTEREST, OR ANY OTHER PARTY IN INTEREST, OR ANY OF THEIR RESPECTIVE AGENTS, EMPLOYEES, REPRESENTATIVES, FINANCIAL ADVISORS, ATTORNEYS, OR ANY OF THEIR SUCCESSORS OR ASSIGNS, FOR ANY ACT OR OMISSION ORIGINATING OR OCCURRING ON OR AFTER THE PETITION DATE THROUGH AND INCLUDING THE EFFECTIVE DATE IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF THE CHAPTER 11 CASES, THE NEGOTIATION AND FILING OF THE PLAN OR ANY PRIOR PLANS, THE FILING OF THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION OF THE PLAN OR ANY PRIOR PLANS, ANY SALE ORDER, THE CONSUMMATION OF THE PLAN, OR THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE LIQUIDATED AND/OR DISTRIBUTED UNDER THE PLAN, EXCEPT FOR WILLFUL MISCONDUCT, GROSS NEGLIGENCE

OR FRAUD AS DETERMINED BY A FINAL ORDER OF A COURT OF COMPETENT JURISDICTION.

**B.**    **Releases By the Debtors**

**1.**    **Rabobank**

ON THE EFFECTIVE DATE, THE DEBTORS (ON BEHALF OF THEMSELVES AND THEIR ESTATES), THE PIPELINE FOODS LIQUIDATING TRUST, THE LIQUIDATING TRUSTEE, AND ANY OTHER PERSON SEEKING TO EXERCISE THE DERIVATIVE RIGHTS OF THE ESTATES SHALL RELEASE UNCONDITIONALLY, AND HEREBY ARE DEEMED TO FOREVER RELEASE UNCONDITIONALLY, RABOBANK, THE LENDERS UNDER THE RABOBANK CREDIT AGREEMENT, AND RABOBANK'S AND SUCH LENDERS' CURRENT AND FORMER EMPLOYEES, AGENTS, ATTORNEYS, FINANCIAL ADVISORS, OFFICERS, DIRECTORS, AND THEIR AFFILIATES, SUBSIDIARIES, PREDECESSORS, SUCCESSORS AND ASSIGNS, AND SUCH ENTITIES' RESPECTIVE HEIRS, EXECUTORS, ESTATES, SERVANTS AND NOMINEES, IN EACH CASE, FROM ANY AND ALL CLAIMS (INCLUDING CLAIMS UNDER CHAPTER 5 OF THE BANKRUPTCY CODE), OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, RIGHTS, CAUSES OF ACTION AND LIABILITIES WHATSOEVER (OTHER THAN THE RIGHT TO ENFORCE THE PERFORMANCE OF THEIR RESPECTIVE OBLIGATIONS, IF ANY, TO THE DEBTORS UNDER THE PLAN, AND THE CONTRACTS, INSTRUMENTS, RELEASES AND OTHER AGREEMENTS DELIVERED UNDER THE PLAN), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, DIRECTLY OR DERIVATIVELY, THEN EXISTING

OR THEREAFTER ARISING, IN LAW, EQUITY OR OTHERWISE THAT ARE BASED IN WHOLE OR IN PART ON ANY ACT OR OMISSION, TRANSACTION, EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE IN ANY WAY RELATING TO THE DEBTORS, THE CHAPTER 11 CASES, THE PLAN, THE RABOBANK CREDIT AGREEMENT, OR THE RABOBANK LOAN DOCUMENTS; PROVIDED, HOWEVER, THAT NOTWITHSTANDING THE FOREGOING, NOTHING CONTAINED HEREIN IS INTENDED TO OR SHALL OPERATE AS A RELEASE OF ANY CLAIMS FOR WILLFUL MISCONDUCT OR FRAUD, AS DETERMINED BY A FINAL ORDER OF A COURT OF COMPETENT JURISDICTION; PROVIDED, FURTHER, HOWEVER, THAT NOTHING HEREIN SHALL PRESERVE, OR OTHERWISE EXTEND THE TIME TO BRING, ANY CHALLENGE (AS DEFINED IN THE FINAL CASH COLLATERAL ORDER) THAT HAS EXPIRED OR WILL OTHERWISE EXPIRE ON THE TERMS SET FORTH IN THE FINAL CASH COLLATERAL ORDER.

2.    **Other Parties**

ON THE EFFECTIVE DATE, THE DEBTORS, ON BEHALF OF THEMSELVES AND THEIR ESTATES, SHALL RELEASE UNCONDITIONALLY, AND HEREBY ARE DEEMED TO FOREVER RELEASE UNCONDITIONALLY THE DEBTORS' INDEPENDENT MANAGER, CHIEF RESTRUCTURING OFFICERS, ADVISORS, INVESTMENT BANKERS, CONSULTANTS, ATTORNEYS, THE CREDITORS' COMMITTEE, THE MEMBERS OF THE CREDITORS' COMMITTEE (BUT SOLELY IN THEIR CAPACITY AS SUCH), THE PROFESSIONALS OF THE CREDITORS' COMMITTEE SOLELY IN THEIR RESPECTIVE CAPACITIES AS SUCH, FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES,

RIGHTS, CAUSES OF ACTION AND LIABILITIES WHATSOEVER (OTHER THAN THE RIGHT TO ENFORCE THE PERFORMANCE OF THEIR RESPECTIVE OBLIGATIONS, IF ANY, UNDER THE PLAN, AND THE CONTRACTS, INSTRUMENTS, RELEASES AND OTHER AGREEMENTS DELIVERED UNDER THE PLAN), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, DIRECTLY OR DERIVATIVELY, THEN EXISTING OR THEREAFTER ARISING, IN LAW, EQUITY OR OTHERWISE THAT ARE BASED IN WHOLE OR IN PART ON ANY ACT OR OMISSION, TRANSACTION, EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE IN ANY WAY RELATING TO THE DEBTORS, THE CHAPTER 11 CASES, THE PLAN, THE RABOBANK CREDIT AGREEMENT, OR THE RABOBANK LOAN DOCUMENTS; PROVIDED, HOWEVER, THAT NOTWITHSTANDING THE FOREGOING, NOTHING CONTAINED HEREIN IS INTENDED TO OR SHALL OPERATE AS A RELEASE OF ANY CLAIMS FOR WILLFUL MISCONDUCT, GROSS NEGLIGENCE OR FRAUD, AS DETERMINED BY A FINAL ORDER OF A COURT OF COMPETENT JURISDICTION.

C.    **Injunction**

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS AGAINST OR INTERESTS IN ANY OF THE DEBTORS ARE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST ANY OF THE DEBTORS OR THEIR ESTATES, ANY DEBTOR'S PROPERTY, THE PIPELINE FOODS LIQUIDATION TRUST OR THE LIQUIDATING

**TRUSTEE, ON ACCOUNT OF ANY SUCH CLAIMS OR INTERESTS: (A) ENFORCING, ATTACHING, COLLECTING OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE OR ORDER; (B) CREATING, PERFECTING OR ENFORCING ANY LIEN OR ENCUMBRANCE; (C) ASSERTING A SETOFF OR RIGHT OF SUBROGATION OF ANY KIND AGAINST ANY DEBT, LIABILITY OR OBLIGATION DUE TO ANY DEBTOR; (D) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN; AND (E) TAKING ANY ACTION WHICH INTERFERES WITH THE IMPLEMENTATION OR CONSUMMATION OF THE PLAN; PROVIDED, HOWEVER, THAT NOTHING CONTAINED IN THE PLAN SHALL PRECLUDE SUCH PERSONS FROM EXERCISING AND/OR ENFORCING THEIR RIGHTS PURSUANT TO AND CONSISTENT WITH THE TERMS OF THE PLAN OR THE CONFIRMATION ORDER.**

## VIII.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.  Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, all Executory Contracts not determined to be assumed before the Confirmation Date, identified in the Plan Supplement as assumed contracts, or subject to a pending motion to assume as of the Confirmation Date, shall be deemed rejected.  The Confirmation Order shall constitute an Order approving such rejection as of the Effective Date.

### B.  Deadline for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan

If the rejection by the Debtors of an Executory Contract pursuant to the Plan gives rise to a Claim, a proof of claim must be submitted to **Pipeline Foods, LLC, et al. Claims Processing**

**c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602**, by no later than thirty (30) days after service of the notice of the Effective Date. Any proofs of claim not filed and served within such time period will be forever barred from assertion against the Debtors and their Estates. Unless otherwise Ordered by the Bankruptcy Court, all Claims arising from the rejection of Executory Contracts shall be treated as Class 5 Claims under the Plan. For the avoidance of doubt, any Claims arising from the rejection of an Executory Contract pursuant to a separate motion are subject to the Rejection Bar Date.

**C.     Insurance Policies**

Notwithstanding anything to the contrary contained in this Plan, the Disclosure Statement, the Plan Supplement, any other Plan Documents, the Confirmation Order or any other document related to any of the foregoing (including, without limitation, any provision that purports to be preemptory or supervening, grants an injunction, discharge or release, or confers Bankruptcy Court jurisdiction), as of the Effective Date:

(a)     all Insurance Policies in full force and effect immediately prior to the Effective Date shall remain in full force and effect on and after the Effective Date unless otherwise validly cancelled pursuant to and in accordance with the terms and provisions of such Insurance Policies;

(b)     nothing shall alter, amend, or otherwise modify the terms and conditions of the Chubb Settlement Agreement or the Chubb Settlement Order;

(c)     nothing in the Plan shall constitute or be deemed to be a waiver of any Cause of Action that the Debtors may hold against Persons, including any Insurer, under any Insurance Policy;

(d)     Insurers shall administer, handle, defend, settle, and/or pay for any claims covered by  any Insurance Policy in accordance with and subject to the terms and provisions of such

53

Insurance Policies; provided, however, that, to the extent applicable and/or otherwise required, the holders of such claims shall obtain relief from the automatic stay of section 362(a) of the Bankruptcy Code or the injunctions set forth in Article VII of the Plan to proceed with such claims;

(e)      nothing shall alter, amend, discharge, release, prejudice, impair or otherwise modify the terms and conditions of any Insurance Policy or the enforceability thereof, the rights and obligations thereunder, or the coverage provided pursuant thereto, except that, as of the Effective Date, all Insurance Policies shall vest unaltered in the Pipeline Foods Liquidating Trust and the Pipeline Foods Liquidating Trust shall succeed to all of the Debtors' rights and obligations such that the Pipeline Foods Liquidating Trust shall become and remain liable in full for all of its and the Debtors' obligations under such Insurance Policies, regardless of whether such obligations arise before or after the Effective Date and without the need for an Insurer to file a Claim or otherwise seek relief in the Chapter 11 Cases; provided, however, that the Pipeline Foods Liquidating Trust shall not be entitled to coverage as an "insured" (as defined or described in the Insurance Policies) under any Insurance Policy at any time without the express written consent of the applicable Insurer; and

(f)      the automatic stay of section 362(a) of the Bankruptcy Code and the injunctions set forth in Article VII of the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Bankruptcy Court, solely to permit: (1) claimants with direct action claims against an Insurer under applicable non-bankruptcy law to proceed with their claims against the Insurer; (2) the Insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (A) claims where a claimant asserts a direct claim against any Insurer under applicable non-bankruptcy law, or an order has

been entered by this Bankruptcy Court granting a claimant relief from the automatic stay or the injunctions set forth in Article VII of the Plan to proceed with its claim, and (B) all costs in relation to each of the foregoing; and (3) the Insurers to cancel any Insurance Policies and take other actions relating to the Insurance Policies (including effectuating a setoff), to the extent permissible under applicable non-bankruptcy law and in accordance with the terms of the Insurance Policies.

## IX.    CONDITIONS PRECEDENT TO AND OCCURRENCE OF CONFIRMATION AND THE EFFECTIVE DATE

### A.    Conditions Precedent to Confirmation

The following are conditions precedent to Confirmation that must be satisfied or waived:

(i)    The Confirmation Order shall be reasonably acceptable in form and substance to the Debtors, the Creditors' Committee, and Rabobank; and

(ii)    The Plan Supplement and any other exhibits or schedules incorporated as part of the Plan shall be reasonably acceptable in form and substance to the Debtors and the Creditors' Committee and shall be acceptable in form and substance to Rabobank in its absolute discretion.

(iii)    The Court shall have entered the Rabobank Paydown Order no later than December 22, 2021, the Rabobank Paydown Order shall not have been stayed, reversed, or be subject to any appeal, and the Rabobank Paydown shall have promptly occurred in accordance with the Rabobank Paydown Order.

### B.    Conditions Precedent to the Effective Date

The Plan shall not become effective unless and until the following conditions shall have been satisfied or, solely with respect to item (ii) below, waived:

(i)    Entry of the Confirmation Order;

(ii)    The Confirmation Order becomes a Final Order; and

55

(iii)    The Debtors shall have sufficient Cash available to fund the Reserve Accounts in accordance with the terms of the Plan.

**C.**    **Establishing the Effective Date**

The Effective Date shall be a Business Day on or promptly following the satisfaction or waiver of all conditions to the Effective Date, which date will be selected by the Debtors, the Creditors' Committee, and Rabobank.  On or within two (2) Business Days after the Effective Date, the Liquidating Trustee and/or the Debtors shall file and serve a notice of occurrence of the Effective Date.  Such notice shall contain, among other things, notice of the Administrative Expense Bar Date, the deadline by which Professionals must file and serve any Professional Fee Claims and the deadline to file a proof of claim relating to damages from the rejection of any Executory Contract pursuant to the terms of the Plan.

**D.**    **Effect of Failure of Conditions**

In the event the Effective Date does not occur, the Plan shall be null and void in all respects.

**E.**    **Waiver of Conditions to Confirmation and Effective Date**

Each of the conditions to the Effective Date that is subject to waiver may be waived, in whole or in part, by the Debtors and the Creditors' Committee, without notice to or an order of the Bankruptcy Court, but subject in each case to the consent of Rabobank in its sole and absolute discretion.

## X.    RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, following the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases, and all proceedings arising in or related to the Chapter 11 Cases, as is legally permissible, including  such jurisdiction as is necessary to ensure that the interests and purposes

of the Plan are carried out.  Without limiting the generality of the foregoing, the Bankruptcy Court shall have jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(i)      To hear and determine any objections to Claims and to address any issues relating to Disputed Claims;

(ii)     To hear and determine Causes of Action;

(iii)    To enter and implement such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(iv)    To issue such Orders in aid of execution and consummation of the Plan, to the extent authorized by Section 1142 of the Bankruptcy Code;

(v)     To consider any amendments to or modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any Order of the Bankruptcy Court, including the Confirmation Order;

(vi)    To hear and determine all requests for compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under Sections 330 or 503 of the Bankruptcy Code;

(vii)   To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

(viii)  To hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code (including any request by the Debtors or the Liquidating Trustee for an expedited determination of tax under Section 505(b) of the Bankruptcy Code);

(ix)    To hear any other matter not inconsistent with the Bankruptcy Code;

(x)    To enter a final decree closing the Chapter 11 Cases (or any of them);

(xi)    To ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(xii)    To decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

(xiii)    To issue injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of the Plan, except as otherwise provided herein;

(xiv)    To determine any other matters that may arise in connection with or related to the Plan, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created or implemented in connection with the Plan;

(xv)    To enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, exculpations, and rulings entered in connection with the Chapter 11 Cases (whether or not the Chapter 11 Cases have been closed);

(xvi)    To resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof;

(xvii)    To resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Cases, the General Bar Date, the Governmental Unit Bar Date, the Rejection Bar Date, the Administrative Expense Bar Date, and/or the hearing on the approval of the Plan for the purpose of determining whether a Claim, or Equity Interest is discharged and/or enjoined hereunder or for any other purpose; and

(xviii) To resolve any other matter or for any purpose specified in the Plan, the Confirmation Order, or any other document entered into in connection with any of the foregoing.

## XI.   **MISCELLANEOUS PROVISIONS**

### A.   **Books and Records**

On the Effective Date, the Debtors' remaining Books and Records shall be transferred to the Pipeline Foods Liquidating Trust. The Liquidating Trustee shall be free, in her discretion, to abandon, destroy or otherwise dispose of the Books and Records in compliance with applicable non-bankruptcy law at any time on and after the Effective Date, without the need for any order of the Bankruptcy Court; *provided*, *however*, that the Liquidating Trustee shall not abandon, destroy, or otherwise dispose of books and records that the Liquidating Trustee believes may be necessary to resolve any Disputed Claim; *provided*, *further, however*, that the Liquidating Trustee shall not abandon, destroy or otherwise dispose of books and records that, in his or her reasonable judgment, relate in any way to any claims covered under any Insurance Policy issued by Chubb without first providing at least thirty (30) calendar days' prior notice to Chubb.

### B.   **Transfer of Debtors' Assets**

Except as otherwise provided herein, any assets that are property of any of the Debtors' Estates on the Effective Date, including any Causes of Action, shall transfer to the Pipeline Foods Liquidating Trust on the Effective Date.  Thereafter, the Pipeline Foods Liquidating Trust (at the direction of the Liquidating Trustee) may use, acquire and dispose of such property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules or Bankruptcy Court approval. Except as specifically provided in the Plan or the Confirmation Order, as of the Effective Date, all such property of any of the Debtors transferred to the Liquidating Trust shall be free and clear of any Liens, Claims, encumbrances and interests of any kind, except as provided in this Plan.

C.    **Injunctions or Stays**

All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect.

D.    **Amendment or Modification of the Plan**

Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtors and the Creditors' Committee at any time before the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the conditions of Sections 1122 and 1123 of the Bankruptcy Code, the Debtors and the Creditors' Committee shall have complied with Section 1125 of the Bankruptcy Code, and such amendments or modifications of the Plan are acceptable to Rabobank in its sole and absolute discretion.  For the avoidance of doubt, nothing herein shall prejudice the Debtors' right to withdraw the Plan to extent permitted to do so under the Bankruptcy Code and Bankruptcy Rules.

E.    **Severability**

In the event the Bankruptcy Court determines, before the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the Holder or Holders of such Claims or Equity Interests as to which the provision is determined to be invalid, void or unenforceable.  The invalidity, voidability or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan; *provided, however*, that if any provision of the Plan is determined to be invalid, void, or unenforceable and such determination would negatively affect the legal or economic rights of Rabobank hereunder in any respect, the Plan as a whole shall be null and void unless waived by Rabobank in its sole and absolute discretion.

**F.**      <u>**Revocation or Withdrawal of the Plan**</u>

The Debtors, and the Creditors' Committee reserve the right to revoke or withdraw the Plan before the Confirmation Date.  If the Debtors and the Creditors' Committee revoke or withdraw the Plan before the Confirmation Date, the Plan shall be deemed null and void and nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtors.

**G.**      <u>**Binding Effect**</u>

The Plan shall be binding upon and inure to the benefit of the Debtors, the Holders of Claims and the Holders of Equity Interests, and their respective successors and assigns.

**H.**      <u>**Notices**</u>

All notices, requests and demands to or upon the Liquidating Trustee or the Debtors, as applicable, to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as shall be set forth in the Confirmation Order.

**I.**      <u>**Governing Law**</u>

Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent an exhibit to the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflicts of law of such jurisdiction.

**J.**      <u>**Withholding and Reporting Requirements**</u>

In connection with the consummation of the Plan, the Post-Effective Date Debtors and Liquidating Trustee shall comply with all withholding and reporting requirements imposed by

any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements. Notwithstanding the above, each Holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding and other tax obligations, on account of such Distribution. The Debtors and the Liquidating Trustee have the right, but not the obligation, to not make a Distribution until such Holder has made arrangements satisfactory to any disbursing party for payment of any such tax obligations.

The Post-Effective Date Debtors and/or Liquidating Trustee may require, as a condition to receipt of a Distribution, that the Holder of an Allowed Claim complete and return a Form W-9. If the Post-Effective Date Debtors and/or Liquidating Trustee make such a request and the Holder fails to comply before the date that is 90 days after the request is made, the amount of such Distribution shall irrevocably revert to the Liquidating Trustee and any Claim in respect of such Distribution shall be disallowed and forever barred from assertion against the Post-Effective Date Debtors or the Liquidating Trustee, or their respective property.

## K.    **Exhibits/Schedules**

All exhibits and schedules to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

## L.    **Filing of Additional Documents**

On or before substantial consummation of the Plan, the Debtors shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**M.**    **No Admissions**

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by any Entity with respect to any matter set forth herein.

**N.**    **Successors and Assigns**

The rights, benefits and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Person or Entity.

**O.**    **Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the filing of the Plan, any statement or provision contained herein, or the taking of any action by the Debtors or the Creditors' Committee with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtors, the Creditors' Committee or Holders of Claims or Equity Interests before the Effective Date.

**P.**    **Implementation**

The Debtors and the Liquidating Trustee shall take all steps, and execute all documents, necessary to effectuate the provisions contained in this Plan.

**Q.**    **Inconsistency**

In the event of any inconsistency among the Plan and any other instrument or document created or executed pursuant to the Plan, the provisions of the Plan shall govern.

**R.**    **Final Decrees**

Following the occurrence of the Effective Date and upon the filing of a certification of the Liquidating Trustee's counsel, after consultation with the Office of the United States Trustee, the Court shall enter final decrees and orders closing the Chapter 11 Cases of Pipeline Holdings,

LLC, Pipeline Foods Real Estate Holding Company, LLC, Pipeline Foods, ULC, Pipeline Foods Southern Cone S.R.L. and Pipeline Foods II, LLC (together, the "**Non-Lead Debtors**"). Following closure of the Non-Lead Debtors' Chapter 11 Cases, any and all recourse for any Claims, Equity Interests, or equitable relief with respect to the Non-Lead Debtors shall proceed exclusively in the Chapter 11 Case of Pipeline Foods, LLC, in accordance with the Plan and any Final Orders entered in the Chapter 11 Cases.

**S.      Termination of the Liquidating Trustee**

After the Chapter 11 Cases are closed and the Liquidating Trustee has completed all of the tasks necessary to fully and completely wind down, dissolve and/or terminate the Debtors and to otherwise comply with its obligations under the terms of the Plan, the Liquidating Trustee shall have fully completed its duties under the Plan and thereby shall be fully released and discharged of his duties and obligations to carry out the terms of the Plan.

**T.      Compromise of Controversies**

Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan and in these Chapter 11 Cases. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan and the Chapter 11 Cases, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors and their Estates.

**U.      Request for Expedited Determination of Taxes**

The Debtors and the Liquidating Trustee shall have the right to request an expedited determination under Section 505(b) of the Bankruptcy Code with respect to tax returns filed, or

to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

Dated:  February 24, 2022          Pipeline Foods, LLC

                                  By:  */s/ Matthew W. Smith*_____
                                  Name: Matthew W. Smith
                                  Title: Chief Restructuring Officer

Dated:  February 24, 2022          Pipeline Holdings, LLC

                                   By:  */s/ Matthew W. Smith*_____
                                  Name: Matthew W. Smith
                                  Title: Chief Restructuring Officer

Dated:  February 24, 2022          Pipeline Foods Real Estate Holding Company, LLC

                                  By:  */s/ Matthew W. Smith*_____
                                  Name: Matthew W. Smith
                                  Title: Chief Restructuring Officer

Dated:  February 24, 2022          Pipeline Foods, ULC

                                  By:  */s/ Matthew W. Smith*_____
                                  Name: Matthew W. Smith
                                  Title: Chief Restructuring Officer

Dated:  February 24, 2022          Pipeline Foods Southern Cone S.R.L.

                                  By:  */s/ Matthew W. Smith*_____
                                  Name: Matthew W. Smith
                                  Title: Chief Restructuring Officer

Dated:  February 24, 2022          Pipeline Foods II, LLC

                                  By:  */s/ Matthew W. Smith*_____
                                  Name: Matthew W. Smith
                                  Title: Chief Restructuring Officer

Dated: February 24, 2022          On Behalf of the Official Committee of Unsecured Creditors of Pipeline Foods, LLC, et al.

                                  By: */s/ Matt Holland*_____
                                  Name: Matt Holland, Richland Grains LLC
                                  Title: Committee Chair